# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Hon. Michael E. Farbiarz |
| v. | Criminal No. 24-99 |
| RAHEEL NAVIWALA, | Oral Argument Requested |
| Defendant. | |

## RAHEEL NAVIWALA'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE SUPERSEDING INDICTMENT

FORD O'BRIEN LANDY LLP

Jamie Hoxie Solano
Ifedapo Benjamin
Bryan W. McCracken
275 Madison Ave., Fl. 24
New York, NY 10016
T: (212) 858-0040
jsolano@fordobrien.com
ibenjamin@fordobrien.com
bmccracken@fordobrien.com

*Counsel for Defendant Raheel Naviwala*

**Table of Contents**

PRELIMINARY STATEMENT ....................................................................................1

LEGAL AUTHORITIES AND ARGUMENTS ...........................................................2

I.    The Superseding Indictment Should be Dismissed Because All Counts are Barred By the Statute of Limitations.................................................................................2

A.    The Original Indictment Does Not Toll the Statute of Limitations Because the Superseding Indictment Materially Broadens and Substantially Alters the Original Charges.....................................................................................................3

1.    A Comparison of the Two Indictments Reflects Plainly That the Superseding Indictment Added Factual Allegations Newly Charging Several Different Types of Conduct That Was Not Charged in the Original Indictment ....................................5

2.    The Superseding Indictment Added Several Different Coconspirators Not Similarly Situated to Those Included in the Original Indictment ............................8

3.    The Superseding Indictment Changed Completely and Vastly Expanded the Theory of Fraud ...........................................................................................9

4.    The Superseding Indictment Added Two New Substantive Wire Fraud Charges Based on Different Wires on a Different System....................................................11

B.    Courts That Have Addressed This Issue Further Support That the Statute of Limitations Was Not Tolled ...........................................................................13

II.    The Fraud Counts Must Be Dismissed Because They Fail to State Fraud Claims ......17

III.    Mr. Naviwala Incorporates the Arguments Made Regarding the Original Indictment to the Superseding Indictment............................................................................20

## <u>Table of Authorities</u>

Cases                                                                                    Page(s)

*In re Richards*,
  213 F.3d 773 (3d Cir. 2000) ................................................................. 12

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ......................................................................... 19

*Stirone v. United States*,
  361 U.S. 212 (1960) ..................................................................... 4, 15

*Toussie v. United States*,
  397 U.S. 112 (1970) .......................................................................... 3

*United States v. Abakporo*,
  959 F. Supp. 2d 382 (S.D.N.Y. 2013) ............................................. 9, 14, 15

*United States v. Aurnheimer*,
  748 F.3d 525 (3d Cir. 2014) ................................................................. 20

*United States v. Bryant*,
  556 F. Supp. 2d 378 (D.N.J. 2008) ........................................................ 19

*United States v. Carey,*
  72 F.4th 521 (3d Cir. 2023) ................................................................. 16

*United States v. Centeno,*
  793 F.3d 378 (3d Cir. 2015) ........................................................... 15, 16

*United States v. Colasurdo,*
  453 F.2d 585 (2d Cir. 1971) .................................................................. 4

*United States v. Elfenbein,*
  708 F. Supp. 3d 621 (D. Md. 2023) ........................................................ 18

*United States v. Farr,*
  536 F.3d 1174 (10th Cir. 2008) ......................................................... 16, 17

*United States v. Friedman,*
  649 F.2d 199 (3d Cir. 1981) ...................................................... 3, 13, 14, 17

*United States v. Grady,*
  544 F.2d 598 (2d Cir. 1976) ......................................................... 3, 4, 15

*United States v. Gussie,*
  51 F.4th 535 (3d Cir. 2022) .................................................................. 3

*United States v. Harra,*
    985 F.3d 196 (3d Cir. 2021) .................................................................... 18, 19

*United States v. Johnson,*
    937 F.2d 392 (8th Cir. 1991) ........................................................................ 18

*United States v. Jones,*
    471 F.3d 478 (3d Cir. 2006) ........................................................................ 17

*United States v. Marion,*
    404 U.S. 307 .............................................................................................. 2, 4

*United States v. Mattia,*
    2024 WL 2834154 (D.N.J. June 3, 2024) .................................................... 18

*United States v. McKee,*
    506 F.3d 225 (3d Cir. 2007) ............................................................... 4, 15, 17

*United States v. Migliaccio,*
    34 F.3d 1517 (10th Cir. 1994) ...................................................................... 18

*United States v. Miller,*
    891 F.3d 1220 (10th Cir. 2018) .................................................................... 16

*United States v. Oliva,*
    46 F.3d 320 (3d Cir. 1995) ......................................................................... 3, 4

*United States v. O'Neill,*
    463 F. Supp. 1205 (E.D. Pa. 1979) ...................................................... 13, 14

*United States v. Patel,*
    2023 WL 363052 (D.N.J. Jan. 23, 2023) ..................................................... 16

*United States v. Pearlstein,*
    576 F.2d 531 (3d Cir. 1978) ........................................................................ 17

*United States v. Prigmore,*
    243 F.3d 1 (1st Cir. 2001) ........................................................................... 18

*United States v. Richards,*
    925 F. Supp. 1097 (D.N.J. 1996) ................................................................ 14

*United States v. Williams,*
    553 U.S. 285 (2008) .................................................................................... 19

*United States v. Zvi,*
    168 F.3d 49 (2d Cir. 1999) ............................................................................ 4

Statutes

18 U.S.C. § 3282 ........................................................................................................... 3

Rules

Fed. R. Crim. P. 12(b) ................................................................................................. 1

Fed. R. Crim. P. 12(b)(3)(B)(v) .................................................................................. 2

Fed. R. Crim. P. 48(a) ............................................................................................... 12

Fed. R. Evid. 404(b) .................................................................................................... 5

Defendant, Raheel Naviwala, respectfully submits this memorandum of law in support of his motion to dismiss the Superseding Indictment.

### PRELIMINARY STATEMENT

Two weeks before the birth of Mr. Naviwala's son and on the eve of trial, the government has filed a superseding indictment that completely expands the scope and changes the trajectory of its case. But the government has a fatal problem. The alleged conduct upon which this new Superseding Indictment is based is stale and well past the applicable 5-year statute of limitations. The scheme allegations that form the basis of all ten of the government's counts have materially broadened and substantially amended the charges in the original Indictment. The government has added new coconspirators in other states, has included new, different, and additional conduct that it alleges is unlawful, has changed and expanded its theory of the fraud, and has added two new substantive counts (while dropping two others). Because these changes and additions materially broaden and substantially amend the scope of the charges, the original Indictment cannot be said to toll the statute of limitations for these charges. As a result, the Superseding Indictment should be dismissed under Federal Rule of Criminal Procedure 12(b).

The Fraud Charges in the Superseding Indictment should be dismissed for the additional reason that the Superseding Indictment has broadened the government's theory of fraud to a degree that it fails to state a fraud offense even more egregiously than its original deficient fraud theory. The government's Superseding Indictment alleges that medically necessary claims that were submitted to Medicare by DME Companies (i.e., not the doctors who prescribed them) "without regard for medical necessity" can constitute wire fraud and health care fraud. A fraud claim requires the specific intent to deceive and defraud, an intent that is not met with an action undertaken "without regard." And, in a case involving vague concepts like "medical necessity"

1

or "medically necessary" claims being submitted to a government agency as a part of a complex regulatory structure, it is not enough to allege that claims were made with the subjective intent for them to be wrong, the statements themselves must be objectively false. A scheme alleged to involve submitting a medically necessary claim to Medicare—something that is proper under the law—does not become the basis for federal criminal fraud prosecution if it was submitted "without regard" to its medical necessity. And it should not be, because this impossible standard is even more hopelessly vague than the theory behind the Fraud Charges in the original Indictment. Accordingly, the Fraud Charges in the Superseding Indictment should be dismissed under Rule 12(b)(3)(B)(v) because they fail to state an offense and violate due process.

Finally, Mr. Naviwala incorporates and reiterates several arguments he raised in connection with the original Indictment, which remain pending, which also apply to the Superseding Indictment.

### *LEGAL AUTHORITIES AND ARGUMENTS*

## I.    The Superseding Indictment Should be Dismissed Because All Counts are Barred By the Statute of Limitations.

The Superseding Indictment should be dismissed because all counts contained therein are barred by the statute of limitations. The Supreme Court has long been clear that "criminal statutes of limitation are to be liberally interpreted in favor of repose." *United States v. Marion*, 404 U.S. 307, 323 n. 14 (1971). The statutes "promote justice by preventing surprises" and "are primarily designed to assure fairness to defendants." *Id.* Indeed, it has long been recognized that:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. . . . and to minimize the danger of official punishment because of acts in the far-distant past.

*Toussie v. United States*, 397 U.S. 112, 114-15 (1970). Enforcing the statute of limitations "may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Id.* at 115.

Here, the Superseding Indictment was returned on January 3, 2025. It contains ten charges spanning conduct alleged to have occurred between February 2017 to April 2019. All of the charges are governed by 18 U.S.C. § 3282, which imposes a 5-year statute of limitations. On the face of the Superseding Indictment, all ten counts are barred by the statute of limitations, which expired April 30, 2024.

### A.    The Original Indictment Does Not Toll the Statute of Limitations Because the Superseding Indictment Materially Broadens and Substantially Alters the Original Charges.

The filing date of the original Indictment does not toll the charges brought in the Superseding Indictment. The Third Circuit has held that a subsequent indictment that does not change the facts and conduct alleged is permissible and meets "the primary purpose of the statute of limitations[,]" i.e., to protect defendants from defending themselves from stale allegations. *United States v. Friedman*, 649 F.2d 199, 204 (3d Cir. 1981). But the statute of limitations is not tolled when the superseding indictment "materially broaden[s] or substantially amend[s] the charges in the first." *United States v. Gussie*, 51 F.4th 535, 540 (3d Cir. 2022) (quoting *United States v. Oliva*, 46 F.3d 320, 324 (3d Cir. 1995)); *see also United States v. Grady*, 544 F.2d 598, 602 (2d Cir. 1976) (the statute of limitations is tolled "*if and only if* it does not broaden the charges made in the first indictment") (emphasis added).

The Court "must examine the two indictments carefully . . . to be certain that the second did not broaden or substantially amend the charges made in the first." *Grady*, 544 F.2d at 602. A careful "examination is particularly necessary in view of the judicial policy favoring repose in

3

close cases." *Id.* (citing *Marion*, 404 U.S. at 322 n.14). The focus is on the indictment itself, not the government's intentions or representations. *See United States v. Zvi*, 168 F.3d 49, 55 (2d Cir. 1999) (reversing district court, dismissing charges, and rejecting argument that relation back could be found based on AUSA's prior representations, as opposed to the indictment's allegations). The "issue then is whether the original *indictment* provided the defendant with timely notice" of changes to the superseding indictment. *See id.* (emphasis added) (citation omitted).

The Third Circuit has adopted the Second Circuit's view in *United States v. Grady. See Oliva*, 46 F.3d at 324. In determining whether a superseding indictment "impermissibly changed the charges," the *Grady* court was guided by "cases dealing with variances between indictments issued by a grand jury and later amendments of indictments permitted by trial courts." *Grady*, 544 F.2d at 602. In that vein, the *Grady* court differentiated between permissible "amendments to form," that are "trivial" or "innocuous," versus impermissible changes to "substance." *Id.* (citing *United States v. Colasurdo*, 453 F.2d 585, 591 (2d Cir. 1971); *Stirone v. United States*, 361 U.S. 212, 217 (1960)). The Third Circuit has, in the context of variances between indictments and proofs at trial, found error where a defendant's conviction rested "on the basis of an affirmative act" not in the indictment. *See United States v. McKee*, 506 F.3d 225, 231 (3d Cir. 2007).

As discussed further below, a comparison of the changes to, and additional conduct now alleged in, the Superseding Indictment reflect that the government has materially broadened and substantially amended the charges to a degree that the statute of limitations should not be tolled. *See* Ex. A (document reflecting changes in Superseding Indictment). These changes cannot be characterized as the sort of permissible "tweaks" to form, but instead represent entirely new

theories, newly charged conduct that is materially different from before, additional coconspirators, and additional substantive counts. It is, in short, a completely different case from what the government originally charged, and flies far afield of the permissible changes approved by the Third Circuit.[1]

> **1.    A Comparison of the Two Indictments Reflects Plainly That the Superseding Indictment Added Factual Allegations Newly Charging Several Different Types of Conduct That Was Not Charged in the Original Indictment.**

As set forth in the original Indictment, Mr. Naviwala was originally charged with the summarized in Paragraph 1.d. of the original Indictment:

> As described more fully below, NAVIWALA entered into arrangements with Williamsky, Levit, Burruss, Adams, and others whereby the Subject DME Companies paid kickbacks and bribes to the NAVIWALA Supply Companies in exchange for the NAVIWALA Supply Companies providing [the Subject DME Companies] with completed doctors' orders for DME, which the Subject DME Companies would then bill to, and be reimbursed by, Medicare and other health care benefit programs, without regard for medical necessity.

Ind. at 3 ¶ 1.d. In other words, the conduct for which he was charged was limited to Mr. Naviwala having a controlling interest in "Supply Companies," which collected information about potential patients, including a completed doctor's order or prescription for a brace. The original Indictment does not allege how Mr. Naviwala's Supply Companies obtained the doctor's orders or prescriptions, which were not alleged to be false or fraudulent. Mr. Naviwala was charged with entering into agreements whereby DME Companies—companies that provided

---

[1] If there is any question that the conduct in the Superseding Indictment is far different conduct from what was alleged in the original Indictment, it is worth noting that the government's motion *in limine* requested permission to file an untimely motion to admit evidence in connection with Rule 404(b)—extrinsic evidence, i.e., evidence that by definition is outside the offense. *See* Gov. Mot. *in Limine* at 24, ECF No. 66. The government did not submit any conduct under Rule 404(b) because they attempted instead to include these different and additional allegations in the Superseding Indictment. Because this occurred after the statute of limitations, this is precisely the type of conduct that is not permitted to be included outside the statute of limitations.

medical equipment to beneficiaries and billed Medicare—controlled by two sets of coconspirators (one set in California, the other in New Jersey) would pay his Supply Companies for those completed doctor's orders. *Id.* at 3 ¶ 1.d. The Subject DME Companies run by those four coconspirators would then allegedly submit claims to Medicare that the government alleges were false because they either were not medically necessary, the DME Company never sent the brace to the patient, the patient never requested the brace, or they were provided based on a physician's order obtained by a bribe or kickback. *Id.* at 8 ¶ 4.b. In other words, Mr. Naviwala's charged conduct in the original Indictment was limited to operating Supply Companies that were paid by DME Companies operated by the two sets of coconspirators in exchange for the patient information.

*The New DME Company Operation Allegations*

The Superseding Indictment adds new conduct far beyond Mr. Naviwala operating Supply Companies. *See generally* Ex. A. Mr. Naviwala is now charged not just with operating Supply Companies that gave information to DME Companies, *but now also with operating a DME Company that submitted allegedly false claims directly to Medicare*. *See* Superseding Ind. at 3 ¶ 1.f, 10 ¶ 4.c. In other words, the Superseding Indictment has expanded Mr. Naviwala's role and charged him with criminal liability not only for those claims that his alleged coconspirators elected to submit through the Subject DME Companies, but now also for claims that were submitted directly by other DME Companies allegedly owned by Mr. Naviwala. His conduct is no longer limited to the Subject DME Companies. This material change substantially broadens the conduct for which Mr. Naviwala has to answer for at trial. It not only increases significantly the type of evidence that will be presented at trial—the jury will now need to be presented with evidence of DME Companies that were allegedly controlled by Mr. Naviwala and how those

entities allegedly submitted claims that the government believes are false, evidence of which was not part of the originally charged conduct. These allegations also increase Mr. Naviwala's potential punishment because it increases the loss amount for which he will be responsible.

*The New Allegations Conspiring with Telemedicine Companies*

In addition to now charging Mr. Naviwala with operating one or more DME Companies directly and submitting false claims to Medicare through DME Companies, the Superseding Indictment now also charges Mr. Naviwala with operating or managing a call center which connected patients to telemedicine companies. *See id.* at 11-12 ¶ 4.f. The Superseding Indictment also newly alleges that Mr. Naviwala "worked with and paid telemedicine companies to provide prescriptions that were" not medically necessary. *Id.* The original Indictment did not include Mr. Naviwala agreeing or criminally conspiring with any telemedicine companies, much less conspiring to procure medically unnecessary prescriptions.

These new charges broaden significantly the scope of Mr. Naviwala's charged conduct. Before, he was charged with engaging in a kickback scheme with DME Companies—*not* doctors or the companies that worked with the doctors prescribing the braces. These allegations balloon the scope of the conspiracy by adding an entirely new chain of "wrongdoers" to the alleged scheme. It also adds significantly the type of evidence to be presented at trial. What originally would have been evidence of an agreement between Mr. Naviwala's Supply Companies and certain Subject DME Companies will now delve into evidence regarding a telemarketing call center, evidence about the telemedicine companies and doctors, and evidence connecting everyone together in one conspiracy.

## 2. The Superseding Indictment Added Several Different Coconspirators Not Similarly Situated to Those Included in the Original Indictment.

Here, not only did the government add two completely different, additional types of

misconduct for which Mr. Naviwala now stands charged, the Superseding Indictment vastly expands the number and type of coconspirators which, in turn, expands the scope of Mr. Naviwala's criminal exposure. A fair reading of the original Indictment alleged that Mr. Naviwala conspired with four coconspirators who ran the "Subject DME Companies"—two individuals based in California who worked together, and two other individuals based in New Jersey who worked together. *See* Ind. at 2-3 ¶ 1.b-d. The Superseding Indictment now alleges that Mr. Naviwala conspired with *another coconspirator entirely*—Ken Pitter—based out of Florida, who is not alleged to have worked with these other four. *See* Superseding Ind. at 3 ¶1.d. In other words, the government has superseded the Indictment to include an additional conspiracy involving a different coconspirator altogether in an entirely new state.

Further, the government's new inclusion of charged conduct involving Mr. Naviwala's alleged operation of DME Companies directly also now includes the inclusion of new coconspirator Kareem Memon, who agreed to cooperate with the government in December 2024, shortly before the Superseding Indictment was returned. The government has recently made clear that it intends to present evidence that Kareem Memon was Mr. Naviwala's coconspirator and worked with him in connection with one of the newly charged DME Companies, a newly charged entity that is not one of the originally identified Subject DME Companies. *See, e.g.,* Gov't Opp. to Motion to Strike at 15-16, ECF No. 74 (discussing Memon in connection with newly charged DME Company); Gov't Opp. to Mot. *in Limine* at 7, ECF No. 76 (identifying Memon as a coconspirator and making clear that "[t]he Government anticipates that Memon will testify at trial" about the newly charged DME Company Parra Health). Mr. Memon's testimony and evidence at trial will substantially broaden the scope of the originally brought charges.

In addition to Kenneth Pitter and Kareem Memon, the Superseding Indictment's

inclusion of the newly charged telemedicine company conspiracy conduct expands the scope and type of coconspirator to include not only DME Company owners, but now also owners of telemedicine companies and doctors. *See* Superseding Ind. at 11-12 ¶ 4.f. Indeed, the government says that its inclusion of telemedicine companies as coconspirators is now "a central allegation to this case" and they expect to call witnesses from the telemedicine companies themselves and a telemedicine doctor to provide evidence of "fraudulent prescriptions"—an entirely new chapter of charged conduct that appeared nowhere in the original Indictment. *See* Gov't Opp. to Mot. *in Limine* at 8-9. The new inclusion of several coconspirators and evidence explaining and supporting their newly charged roles in the alleged conspiracy materially broadens and substantially amends the original charges. *See generally United States v. Abakporo*, 959 F. Supp. 2d 382, 389 (S.D.N.Y. 2013) (superseding indictment did not relate back where new conduct was charged).

### 3. The Superseding Indictment Changed Completely and Vastly Expanded the Theory of Fraud.

In addition to adding new conduct entirely and additional, differently situated coconspirators to this case on the eve of trial, the Superseding Indictment changes the theory of the case completely. The original Indictment's theory of fraud was that the conspiracy involved knowingly submitting claims to Medicare that were medically unnecessary, notwithstanding that they were accompanied by a doctor's order or prescription not alleged to have been fake. *See generally* Def's. Mot. to Dismiss at 12, ECF Nos. 48 & 49. If there is any question that this was the case, one need look no further than the government's opposition brief to the motion to dismiss the original Indictment. The government argued that the original Indictment provided "ample factual detail to enable defendant to understand the charges and prepare his defense," which it characterized as follows:

> [The Indictment] specifies that the scheme involved fraudulently billing Medicare and other health care benefit programs for durable medical equipment ("DME"), such as "orthotic braces." ECF No. 22 ¶ 4(b). It alleges that the health care benefit programs maintained specific policies to ensure that they only paid for legitimate claims, including for DME, see ECF No. 22 ¶ 1, and that defendant and his coconspirators fraudulently violated these policies by causing the programs to pay for DME that was medically unnecessary, never requested or received by beneficiaries, and/or procured through illegal kickbacks or bribes, id. ¶¶ 4(b)-(e).

Gov. Opp. to Mot. to Dismiss at 3-4, ECF No. 58. (internal citations omitted).

*Now*, after arguing that the defense should focus on the above to prepare for trial, the Superseding Indictment changes everything and broadens the alleged conduct far further, changing the scheme to now allegedly involve submitting claims that were *medically necessary* but were submitted "without regard" to medical necessity. Superseding Ind. 10 ¶ 4.b. The original Indictment charged that the "completed doctor's orders" that Mr. Naviwala's Supply Companies allegedly provided to DME Companies each contained an actual doctor's order or prescription for the brace, but the Superseding Indictment now says it was merely a "prescription" procured fraudulently by a telemedicine company. *Id.* 2-3 ¶ 1.a, 10-13 ¶ 4. And while the original Indictment alleged that there were four bases for why these claims were fraudulent, *see* Ind. at 8 ¶ 4.b, the Superseding Indictment attempts to sweep in inconsistencies with all applicable Medicare requirements, without identifying what any of those requirements allegedly are. Superseding Ind. 10 ¶ 4.b(4). The government even changed its reasoning why the allegedly "sham" agreements were incorrect. The government's latest theory has its own problems discussed further below, but there can be no question that the originally charged scheme involving submitting medically unnecessary claims to Medicare that were accompanied by valid doctor's orders is something *very different* from the broader scheme alleged now, involving medically *necessary* claims that were accompanied with mere "prescriptions," that

might violate a host of unidentified Medicare regulations that are identified nowhere in the original Indictment. This is far broader and a substantial amendment to the charges.

The government's charging theory also changed regarding the focus of the scheme—before Counts One and Seven charged an identical "health care fraud kickback scheme"—and listed an identical purported loss amount figure that the government emphasized in its press release. Now, the Superseding Indictment has removed the specific, headlines grabbing loss amount and has removed the characterization that this is a healthcare fraud kickback scheme, permitting the government to change the characterization completely and prove whatever it wants to without notice to Mr. Naviwala.

### 4.    The Superseding Indictment Added Two New Substantive Wire Fraud Charges Based on Different Wires on a Different System.

This Superseding Indictment has also included new wire fraud charges based on different wires that traveled through a different wire system. Counts Five and Six of the original Indictment alleged crimes based on actions that did not occur, that were never supported by evidence, and over which the District of New Jersey has always lacked venue. The two counts alleged a DME Company controlled by a California-based coconspirator sent a money transfer via ACH Debit to Elite Healthcare Solutions LLC, a Florida-based company alleged controlled by Florida-based Mr. Naviwala. "ACH" is short for "automated clearing house," which is a centralized U.S. financial network through which banks and credit unions send and receive electronic payments and money transfers. ACH transfers are governed by an organization called NACHA, and ACH Debits are typically associated with recurring, automatic payments, like an automatic payment for one's monthly utility bill. All payments on the ACH network are handled according to the Natcha Operating Rules and Guidelines.

The reason why this matters is there is no evidence that DME Company 5 *ever* made an ACH transfer to Elite Healthcare Solutions, much less an ACH Debit transaction to that company. There also does not appear to be any evidence that ACH Debit transactions ever travel through the District of New Jersey. It is unclear what evidence the U.S. Attorney's Office could have used to present these charges to the grand jury. It does not appear that the U.S. Attorney's Office subpoenaed Natcha, there are two subpoena returns from The Clearing House, neither of which reflects transactions between the two entities remotely close to this time period, and while the TD Bank records from Elite Healthcare Solutions reflect two ACH debit transactions involving other entities at other times, they plainly *do not reflect <u>any</u> ACH debit transactions involving these entities*. Nor does there appear to be any evidence that the government collected that would otherwise support venue in New Jersey for an executed wire traveling by way of an ACH debit network transaction that originated in California and ended in Florida.

At some point, the government obviously became aware that it charged two very serious twenty-year counts based on transactions that never occurred and over which it could not prove venue. It is troubling that the government did not disclose this exculpatory information to the defense when it learned of it, even in light of Mr. Naviwala's motion to dismiss these charges for their obvious lack of venue in October. Def's. Mot. to Dismiss at 23-26. Nor did the government move to dismiss the charges pursuant to Rule 48(a) when it learned that it could not prove them, which would have required the government to explain to the Court that it had no evidence to support these charges. *See generally In re Richards*, 213 F.3d 773, 787-89 (3d Cir. 2000) (noting that Rule 48(a) is designed to protect criminal defendants from "prosecutorial harassment" and "serve[s] an important interest as an information- and accountability- producing vehicle" because the judge who decides such motion "has independent responsibilities that may bear on his . . .

12

decision on the requested dismissal," which allows "a court to force prosecutors to publicly reveal their reasons for not proceeding before granting a requested dismissal").

The government's Superseding Indictment has dropped the invalid ACH Debit wire fraud charges and has now added two new substantive wire fraud charges for transactions that traveled through a different network, the Fedwire Network. The original Indictment did not contain any valid substantive wire fraud counts and none of the wire fraud charges were based on wires traveling through the Fedwire Network. There was no venue for the transactions charged, nor was there evidence that supported those charges. Including the invalid counts increased Mr. Naviwala's statutory exposure by forty years' imprisonment. The government adding two new charges to replace charges for conduct for which there is no evidence to support essential elements of the offense to conduct for which the government claims there is, now, evidence is a "substantial" alteration. The essential elements of Counts Five and Six—the wire itself and where it traveled—as originally indicted, would have indisputably resulted in an acquittal of both charges. These two additional charges based on newly alleged, different wires do not relate back. *See, e.g., United States v. O'Neill*, 463 F. Supp. 1205, 1207 (E.D. Pa. 1979) (adding a new false statement about a previously charged transaction does not relate back).

**B.    Courts That Have Addressed This Issue Further Support That the Statute of Limitations Was Not Tolled.**

Here, there is no question that the Superseding Indictment does far more than tweak problems of form or provide more details to the type of conduct that forms the basis of the charge. Cases that have addressed this issue are in accord that these types of dramatic, substantive additions do not relate back to the filing of the original indictment because, as here, the Superseding Indictment does not rest on "approximately the same facts." *Friedman* itself involved no new types of allegations in the superseding indictment: "[i]nstead of five counts, one

for each of the checks converted, there is one count citing those same five checks in the same five amounts" but "the facts alleged have not been changed[.]" *Friedman*, 649 F.2d at 204.

Other cases highlight further that the statute of limitations should not be tolled for these charges. *United States v. O'Neill*, 463 F. Supp. at 1207, is illustrative. There, the government added a false statement charge beyond the applicable statute of limitations period that was about the same transaction as was charged in the original indictment but was not the same misrepresentation. *O'Neill*, 463 F. Supp. at 1207. The government argued that the superseding indictment involved "approximately the same facts" as the original indictment because the out-of-time charged misrepresentation was about the same transaction. *Id.* The court rejected that argument and dismissed the superseding indictment, noting that the similarity of the false statement being the same transaction "isn't 'approximate' enough to satisfy a statute of limitations, designed to put a defendant on notice, within a specified time, of the allegations against which he must defend himself." *Id.* And in *United States v. Richards*, the court found that the indictment did not relate back where changes to the indictment plainly "add[ed] factual allegations" and "clearly expand[ed] the charges brought against the defendant." 925 F. Supp. 1097, 1103 (D.N.J. 1996).

The changes to the Indictment here are even more dramatic than those in *United States v. Abakporo*, a case in which the court found substantive changes to the indictment reflected that the charge did not relate back to the timely filed indictment. 959 F. Supp. 2d at 389. In *Abakporo*, the superseding indictment "d[id] not allege violations of a new statute or contain different elements," there were "no new co-conspirators charged or identified and the additional transactions [were], like the transactions in the underlying indictments, part of a scheme to defraud property owners and lenders in connection with" loan transactions. *Id.* Nonetheless, the

court held that the indictment did not relate back because the new indictment charged additional transactions that led to "a substantial amount of new evidence" because the superseding indictment included allegations involving "six additional properties." *Id.* Here, the government has alleged new conduct completely that it now alleges is criminal, new coconspirators, and new theories of fraud, all of which will lead to a substantial amount of new evidence at trial.

As referenced above, the *Grady* court, in determining whether changes to an indictment were form versus substantive, sought guidance from those cases where courts evaluated changes between the indictments and variances of the proofs and arguments at trial. *See Grady*, 544 F.2d at 602. The Third Circuit has evaluated such variances as looking to see whether they "broaden the possible grounds for conviction[.]" *McKee*, 506 F.3d at 230.

A review of those cases highlights further that the Superseding Indictment's changes the type of "substance" and should not relate back. For example, in in *Stirone v. United States*, the Supreme Court reversed a conviction for an inappropriate constructive amendment where the indictment charged the defendant with violating the Hobbs Act for threats involving the performance of a contract to supply concrete, but at trial the government presented evidence relating not only to the concrete contracts, but also evidence involving interference with steel shipments at a steel plant. 361 U.S. at 213-14. Here, the Superseding Indictment is attempting to add new types of conduct to the charges as was done in *Stirone*.

In *United States v. Centeno*, the Third Circuit reversed a defendant's convictions where the prosecutor argued that the defendant could be convicted of an assault charge (something he was charged with) based on his role as a getaway driver after the assault occurred. 793 F.3d 378, 389 (3d Cir. 2015). While the driver was charged with assault, the indictment did not charge him with being an accessory after the fact, and, thus, "there [was] a substantial likelihood that the

jury may have convicted [defendant] for an offense differing from the offense the Indictment returned by the grand jury actually charged." *Id.* at 389-90. And in *United States v. Carey*, the Third Circuit found a prejudicial variance where the government's proof was for conduct that occurred at a different time in a different county from what was charged. 72 F.4th 521, 529 (3d Cir. 2023). These types of changes are no different from the changes that the government made to its Superseding Indictment.

And in *United States v. Patel*, now-Chief Judge Bumb found that the government inappropriately constructively amended the Indictment in two respects, one of which involved the government presenting several "internally inconsistent[ ] theories at trial regarding 'when' and 'how' Defendant committed the offense[]" that "directly conflict[ed] with the charging terms of the Indictment," resulting in "serious due process issues that cannot be overlooked." 2023 WL 363052, at *4, *17 (D.N.J. Jan. 23, 2023). Here, the government has now changed its theory of fraud significantly in an internally inconsistent way—it has gone from saying that the scheme involved medically unnecessary claims supported by doctor's orders to a case that medically necessary claims were submitted but with fake prescriptions. These are internally inconsistent and very different from each other.

In *United States. v. Miller*, the court vacated a doctor's conviction where he was indicted for making a false statement in connection with a state professional license but the government introduced evidence of different false statements about problems with a controlled-substance registration. 891 F.3d 1220, 1236 (10th Cir. 2018) And in *United States. v. Farr*, the court reversed a conviction on the grounds that a constructive amendment occurred where "the government opted to include in its indictment particulars about the nature of the tax at issue," rather than simply charging the defendant with tax evasion, and "the evidence and jury

instructions at trial introduced to the jury an alternative way in which the crime could have occurred" through "a different tax evaded." 536 F.3d 1174, 1181-84 (10th Cir. 2008).

For all the reasons set forth above, the Superseding Indictment does far more than tweak the form of the charging instrument. It has changed the entire case, substantially amended the allegations and conduct at issue, and unquestionably broadened the possible bases for Mr. Naviwala's conviction. *See Friedman*, 649 F.2d at 204*; McKee*, 506 F.3d at 229. Accordingly, the Superseding Indictment should be dismissed because it is barred by the applicable statute of limitations.

## II.    The Fraud Counts Must Be Dismissed Because They Fail to State Fraud Claims.

The government's new theory of fraud in its Superseding Indictment should be dismissed because its newly added language pulls the fraud charges even further away from stating a valid offense. The government has now added a new theory—that a non-medical professional can be criminally convicted for federal fraud charges based on claims submitted to Medicare that were actually medically necessary but were submitted "without regard to medical necessity." The government has repeated this theory in each of its paragraphs that explains its theory of fraud. Superseding Ind. 10-12 ¶ 4.b, 4.c, 4.f. This theory does not state a health care fraud offense or a wire fraud offense.

First, both wire fraud and health care fraud offenses require an actual misrepresentation, not something that was not actually false but was submitted "without regard" to its accuracy. *See, e.g., United States v. Jones*, 471 F.3d 478, 481 (3d Cir. 2006); *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978). Nor does this theory embrace the requisite intent to deceive and defraud required for federal fraud charges. Submitting something "without regard," essentially without intent is inconsistent with the requisite that the scheme involve an intent to

deceive and defraud—a state of mind that does not encompass negligent or absent intentions.

The government's latest charging theory also fails in light of the Third Circuit's decision in *United States v. Harra*. 985 F.3d 196, 212 (3d Cir. 2021). *Harra* has made clear that the government "must show not merely that a defendant subjectively intended to lie, but also that the statement in question was objectively false." *Id*. This requirement is in accord with several other circuits. *See id.* (citing *United States v. Prigmore*, 243 F.3d 1, 17–18 (1st Cir. 2001)) ("[T]here has been no crime if the statements were not false . . . under an objectively reasonable interpretation of the law imposing the duty."); *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994) ("[T]he government bears the burden to negate any reasonable interpretations that would make a defendant's statement factually correct where reporting requirements are ambiguous."); *United States v. Johnson*, 937 F.2d 392, 399 (8th Cir. 1991) ("[T]he government must negative any reasonable interpretation that would make the defendant's statement factually correct."). This objective falsity requirement has been applied to cases, like this one, involving healthcare fraud involving purported improper medical coding, similar to the case the government is trying to bring here. *See United States v. Elfenbein*, 708 F. Supp. 3d 621, 662-63 (D. Md. 2023) (vacating convictions where government failed to show objective falsity in medical coding healthcare fraud case and relying on *Harra*). Here, there can be no question that the term "medical necessity" is vague. *See United States v. Mattia*, 2024 WL 2834154, at *7 (D.N.J. June 3, 2024). And now, the government's new Indictment alleges that claims that *were* medically necessary but were submitted by the DME Companies "without regard" to medical necessity were nonetheless "false" claims. This theory is at odds with *Harra* and does not state an offense.

18

And the government's new charging theory—that medically necessary claims that were submitted to Medicare "without regard" to their medical necessity—violates due process. Mr. Naviwala would not have had fair notice that, as a non-doctor, he could be criminally liable for fraud on the basis that he submitted medically necessary claims to Medicare but did not give enough "due regard" about their submission to Medicare. This is particularly true where, as here, the charges appear to be based on an agency's interpretation of its own rules. *Harra*, 985 F.3d at 213 ("[f]air warning principles apply with equal force when a defendant is criminally charged as a result of noncompliance with agency regulations or guidance"). The government's new theory thus violates fair notice and due process concerns.

This theory also violates due process because this new theory is void for vagueness. *See, e.g., Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This new theory is even vaguer than what the government tried to do in *United States v. Bryant,* discussed in Mr. Naviwala's original motion to dismiss the original Indictment. 556 F. Supp. 2d 378 (D.N.J. 2008). There, the court dismissed charges that were based on a theory that the defendant engaged in fraud when he represented that he engaged in "actual work and honorable service" when he really did "little or no legitimate and meaningful work." *Id.* at 432. There, the court dismissed the charge pretrial on the grounds that it was vague and would require a jury to speculate not only about what was or was not medically necessary, but also what level of "regard" one must have when dealing with a medically necessary claim. This concept appears to be completely standardless and the government's charging decisions here illustrate "seriously discriminatory enforcement." *Harra*, 985 F.3d at 212 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Accordingly, the new charging theory violates due process because it is void for vagueness.

19

Additionally, it appears that the government has attempted to broaden the Indictment to include generally that Mr. Naviwala did not comply with "applicable Medicare requirements," without identifying what requirements the government believes were violated here. This too fails to give Mr. Naviwala appropriate notice of the charges he must defend against and is impermissibly vague. Accordingly, the Fraud Charges should be dismissed.

### III.    Mr. Naviwala Incorporates the Arguments Made Regarding the Original Indictment to the Superseding Indictment.

Mr. Naviwala respectfully incorporates the following pending arguments that he raised in connection with his motion to dismiss the original Indictment and raises them in connection with the Superseding Indictment for the reasons set forth in his original memorandum and below:

1. The Fraud Charges should be dismissed because they fail to identify a false statement. Def's. Mot. to Dismiss at 9-13 (ECF No. 49).

2. The Fraud Charges should be dismissed because they do not involve a scheme to defraud a traditional cognizable property interest, as opposed to a regulatory interest or an interest that did not go to the heart of the benefit of the bargain. *Id.* at 13-18.

3. The Fraud Charges resting on claims of "medical necessity" should be dismissed because they are void for vagueness. *Id.* at 18-23.

4. The substantive health care fraud and Anti-Kickback Statute charges should be dismissed for lack of venue. Consistent with the Third Circuit's holding in *United States v. Aurnheimer,* 748 F.3d 525, 538 (3d Cir. 2014), venue for a health care fraud claim is not proper in a jurisdiction where the only tie to that District is that a beneficiary received a brace. *Aurnheimer* made clear that a victim's presence in New Jersey is not sufficient to confer venue in New Jersey, this is even further

removed. The essential conduct of a health care fraud claim is the submission of a false claim to a federal health care program. The Superseding Indictment makes clear that none of that occurred in New Jersey. Similarly, the essential conduct of an Anti-Kickback Statute violation is not satisfied by an electronic signal circumstantially passing through a server in the District of New Jersey. *Id.* at 23-26.

5. Counts One and Seven should be dismissed because they remain multiplicitous. *Id.* at 26-28.

Dated: January 14, 2025

Respectfully submitted,

FORD O'BRIEN LANDY LLP

*/s/ Jamie Hoxie Solano*
Jamie H. Solano
Ifedapo Benjamin
Bryan McCracken
275 Madison Avenue, 24th Floor
New York, NY 10016
T: (212) 858-0040
jsolano@fordobrien.com
ibenjamin@fordobrien.com
bmccracken@fordobrien.com

*Counsel for Defendant Raheel Naviwala*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing memorandum and accompanying papers was served on counsel of record on January 14, 2025, by causing said document to be filed electronically using the Court's CM/ECF system.

*/s/ Jamie Hoxie Solano*
Jamie H. Solano