

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, 7th floor*            *973-645-2700*
*Newark, New Jersey 07102*

October 31, 2025

Hon. Matthew W. Brann
Chief United States District Judge
U.S. Courthouse and Federal Office Building
240 West Third Street
Williamsport, PA 17701

      Re:    *United States v. Raheel Naviwala*, Crim. No. 24-99

Dear Chief Judge Brann:

      The United States writes in response to defendant Raheel Naviwala's October 22, 2025 motion to dismiss the superseding indictment (the "Motion"). *See* ECF No. 257. For the reasons set forth below, the Court should deny the Motion and transfer this case in its entirety back to the Hon. Michael E. Farbiarz, U.S.D.J.

## Procedural Background

      In March 2023, Naviwala was charged by complaint. ECF No. 1. The next month, he had an initial appearance in the District of New Jersey. *See, e.g.*, ECF No. 7. Naviwala signed an order excluding time from accruing under the Speedy Trial Act. *See* ECF No. 11. Over the next several months, Naviwala signed continuances through March 22, 2024, and not a single day of excludable time accrued. *See, e.g.*, ECF Nos. 16, 17, 19, 21. These continuance orders indicated that "both the United States and [Naviwala] desire additional time to negotiate a plea agreement."

      During this time, Naviwala attempted to negotiate a plea agreement with the United States. *See, e.g.*, Jan. 24, 2025 Tr. at 64:16–78:14 (*Frye* hearing describing plea agreements in June 2023, September 2023, January 2024, and October 2024). He also proffered, hoping to obtain a cooperation agreement. *See, e.g.*, Feb 28, 2024 Tr. at 8:12–23 (arraignment transcript); Trial Tr. at 2494:11–15 (then-defense counsel's closing).

      In February 2024, a grand jury returned an indictment. ECF No. 22. At the arraignment, his then-defense counsel informed the Court they were unavailable to begin looking "at anything" related to the case until the end of May 2024 at "the

earliest" and asked for a trial date accordingly. Feb 28, 2024 Tr. at 13:7–14:3. In April 2024, the Court scheduled trial for January 2025.

Four months later, in August 2024, Naviwala moved to continue trial "at least 120 days." ECF No. 38; *see also* Aug. 6, 2024 Tr. at 18:3–19 (then-defense counsel again seeking to delay trial due to the impending birth of Naviwala's child). The Court denied Naviwala's request to push trial to May 2025 or later, *see* ECF No. 39, but eventually rescheduled trial for February 3, 2025.

Trial (on the superseding indictment) began on February 3, 2025 and ended on February 28, 2025. Naviwala was convicted of six counts, and the Court tightened Naviwala's conditions of release. ECF Nos. 123, 176 (verdict), 179 (order amending conditions of release). Sentencing was scheduled for July 29, 2025. Trial Tr. at 2645:21–24.

Naviwala filed post-trial motions in March 2025, ECF No. 186, and the United States responded in April 2025, ECF No. 199. Naviwala then retained new counsel and moved to continue the deadline for his reply brief to Tuesday, July 1, 2025 and the sentencing to "no earlier than Tuesday, September 30, 2025." ECF Nos. 203 (motion), 217 (order).

In June 2024, Naviwala moved again to continue his sentencing "to no earlier than Tuesday, September 30, 2025," and the deadline for his reply brief, citing, among other things, his failure to obtain discovery from prior counsel. ECF No. 227. The Court granted an adjournment of the deadline for Naviwala's reply brief, questioned why Naviwala didn't "simply ask the United States for any missing materials," ECF No. 230, but ultimately granted Naviwala's request and set sentencing for October 1, 2025, ECF No. 237. At Naviwala's request, the United States promptly re-produced the discovery.

Beginning September 2, 2025, Naviwala began raising issues related to the litigation in the *Giruad* and *Pina* cases, which were previously transferred to Your Honor to evaluate challenges to Alina Habba's authority to serve as Acting U.S. Attorney for the District of New Jersey. ECF No. 241. Naviwala argued that "neither Ms. Habba nor any attorneys acting pursuant to her authority or supervision may participate in any further matters in this case," including a hearing on the post-trial motions or sentencing. ECF No. 241 at 2. On September 5, 2025, Naviwala reiterated that he "most assuredly is not" waiving any challenge to Ms. Habba's authority. ECF No. 243 at 2. On September 8, 2025, he asked the Court to construe his prior filing "as a formal motion to disqualify Ms. Habba and those acting pursuant to her authority or under her supervision from participating in the prosecution of this case." ECF No. 244 at 1; *see also* ECF No. 246.

On September 11, 2025, the United States submitted its sentencing recommendation in this case. ECF No. 247.

On September 15, 2025, Judge Farbiarz transferred this case to Your Honor. ECF No. 248. Naviwala asked Your Honor for a status conference given his pending post-trial motions and sentencing, ECF No. 249, and Your Honor ordered that all proceedings and pending motions be stayed pending the exhaustion of appellate remedies in the *Giraud* and *Pina* appeals, ECF No. 250.

On October 22, 2025, Naviwala filed the Motion. ECF No. 257. The Court ordered the United States to file a response by November 10, 2025. ECF No. 258. Seeing no point in waiting that long, the Government submits its response now and respectfully requests that this Court rule on the Motion as promptly as reasonably practicable.

## Argument

Naviwala contends Ms. Habba's service as Acting U.S. Attorney and Special Attorney violates the Constitution's Appointments Clause. Naviwala also contends that the indefinite delay in his sentencing and adjudication of the Rule 29 motion, coupled with home incarceration, violates the Due Process Clause. He seeks dismissal of the superseding indictment with prejudice. He does not deserve that extraordinary remedy. Nor is a stay of his criminal case pending the ultimate disposition of the *Giraud* and *Pina* appeals necessary.

First, Naviwala does not identify an Appointments Clause violation and, for the reasons the Government explained in *Giraud* and *Pina*, there is no such violation. The Appointments Clause "divides all constitutional officers into two classes: 'inferior officers' and noninferior officers" (called "principal officers"). *United States v. Smith*, 962 F.3d 755, 763 (4th Cir. 2020). Congress may authorize the President alone or the Head of a Department to appoint inferior officers without the advice and consent of the Senate. *Id.*; *see* U.S. Const. Art. II, § 2, cl. 2. Ms. Habba is at most an inferior officer. U.S. Attorneys are inferior officers because their superior is the Attorney General (an agency head), not the President. *See, e.g.*, *United States v. Hilario*, 218 F.3d 19, 24–26 (1st Cir. 2000); *United States v. Gantt*, l94 F.3d 987, 999–1000 (9th Cir. 1999). Interim U.S. Attorneys and Acting U.S. Attorneys fit that same description. *See, e.g.*, *Hilario*, 218 F.3d at 26. Moreover, an Acting U.S. Attorney "is 'only charged with the performance of the duty of the superior for a limited time and under special and temporary conditions,'" which makes Ms. Habba at most "an inferior officer under" binding Supreme Court precedent. *Smith*, 962 F.3d at 764 (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)). And Ms. Habba is serving consistent with the Appointments Clause because she was appointed by the Attorney General, who heads the Department of Justice, pursuant to laws passed by Congress.

Second, even assuming there has been an Appointments Clause violation since July 2025 (there hasn't been), Naviwala cites no authority for dismissal of a superseding indictment in which the charges and conviction occurred months before

any Appointments Clause issue accrued (and before Ms. Habba joined this office). As Naviwala concedes, *see* Mot. at 23 n.18, there is no defect with the charging document in this case.

Third, Naviwala's Due Process Clause arguments do not withstand scrutiny. Naviwala complains of an indefinite delay before sentencing. But his sentencing had been scheduled for October 1 *at his repeated request*. *See* ECF No. 227 (June 12, 2025 defense motion asking that sentencing "be continued for at least 63 days from Tuesday, July 29, 2025, to *no earlier than Tuesday, September 30, 2025*") (emphasis added); *see also* ECF No. 203 (same). He raised an alleged violation of the Due Process Clause three weeks later, on October 22, 2025. ECF No. 257. He has not shown this additional delay beyond the one he himself sought violates the Due Process Clause, or that this delay combined with any other factors violates the Due Process Clause. *See Betterman v. Montana*, 578 U.S. 437, (2016) (affirming sentence imposed 14 months after conviction); *United States v. Small*, 2023 WL 4399212 (3d Cir. 2023), at *3–*6 (affirming sentence imposed more than 4.5 years after conviction); *United States v. Lacerda*, 958 F.3d 196, 220 (3d Cir. 2020) (affirming sentence imposed more than 2.5 years after conviction).

Further, Naviwala's complaints about the length of time proceedings against him have been pending cannot be reconciled with the time he spent before indictment trying to negotiate a plea agreement. *See, e.g.*, Jan. 24, 2025 Tr. at 64:16–78:14; ECF Nos. 11, 16, 17, 19, 21 (orders "on the joint application" of the United States and Naviwala signed by the defense counsel granting continuances in part because of ongoing plea negotiations"). Nor can those complaints be reconciled with his *repeated* attempts to postpone his trial and other proceedings. For example, had Naviwala's August 2024 request to adjourn trial been granted, his trial would not have occurred until May 2025 at the earliest. *See* ECF No. 38. Nor can those complaints be reconciled with the post-trial change of retained counsel for which the Government has no responsibility.

For the same reasons, Naviwala cannot show that any delay in resolution of his post-trial motions or appeal violates his constitutional rights.[1] Nor do his conditions of release, which he has repeatedly sought to modify, violate those rights. *See, e.g.*, ECF Nos. 218 (May 2025 motion to modify conditions of release), 251 (October 2025 motion). The magistrate judge granted Naviwala's recent modification requests. ECF No. 256. Naviwala remains free to make additional requests and—if those requests are denied—to appeal to the district court or the U.S. Court of Appeals for the Third Circuit.

---

[1] Naviwala's observations about the impact of the ongoing lapse in appropriations, *see* Mot. at 7–8, 21, do not favor the requested relief. He does not say how the lapse has affected his case, nor could he. Court staff and attorneys for the United States assigned to criminal cases have generally continued working.

Fourth and finally, Naviwala's Motion presumes that, until the *Giraud* and *Pina* appeals are conclusively resolved, his case will remain on hold. He overlooks, however, the disconnect between the statutory violation that this Court found in the *Giraud* and *Pina* cases—that Ms. Habba cannot serve as the Acting U.S. Attorney under the FVRA—and the remedy this Court imposed in those cases for that violation—disqualifying her from participating in or otherwise supervising those cases. Even if Ms. Habba cannot serve as the Acting U.S. Attorney for the District of New Jersey under the FVRA, she is still the designated First Assistant U.S. Attorney (FAUSA) for this Office. In that role, she can do anything any other FAUSA could—including supervise prosecutions. There is no reason to treat Ms. Habba differently than any other supervisor currently serving in this Office.

This week's opinion in *United States v. Ramirez*, __ F. Supp. __, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025), shows why that is so. Like *Giraud* and *Pina*, *Ramirez* held that Bilal A. Essayli, a FAUSA similarly situated to Alina Habba, could not serve as Acting U.S. Attorney for the Central District of California under the FVRA because he was not the FAUSA when the last Senate-confirmed U.S. Attorney resigned. 2025 WL 3019248 at *2–*10. And like *Giraud* and *Pina*, *Ramirez* also held that under 5 U.S.C. § 3347, the Attorney General could not use general appointment-and-delegation statutes to install Mr. Essayli as the Acting U.S. Attorney and therefore disqualified him from participating in or supervising the consolidated cases in that capacity. 2025 WL 3019248 at *10–*12, *18.

But unlike *Giraud* and *Pina*, *Ramirez* further held that because Mr. Essayli "was properly appointed as a Special Attorney and designated as the FAUSA," the "court has no basis to preclude" him "from performing the lawful duties of a FAUSA." 2025 WL 3019248 at *18. In "*that* capacity, he could supervise these prosecutions (even though he cannot do so as Acting United States Attorney)." *Id*. He "would not be doing so in violation of the FVRA," because "that statute precludes him from serving as Acting United States Attorney" but "says nothing about other duly-authorized positions." *Id*. Furthermore, "the statutes and regulations" that "define the Attorney General's duties and powers" authorize FAUSAs "to perform duties that are not exclusive to the office of the United States Attorney." *Id*. at 19. "The result"—that Mr. Essayli "may perform certain functions and duties as the FAUSA—stems from the power of the Attorney General to delegate authority." *Id*.

When a First Assistant U.S. Attorney who is serving as Acting U.S. Attorney's time expires under 5 U.S.C. § 3346, she is not expelled from the office. She does not become uniquely unable—among all the other AUSAs in the office—to supervise other lawyers, or to participate in the prosecution of criminal cases. She has the same authority from the Attorney General to prosecute cases as any other member of the office. The same would be true if, as the Court has found with Ms. Habba, her acting-officer time never began because she was not eligible to serve as the Acting U.S. Attorney under § 3345(a)(1). She is still a Department of Justice attorney, and she is still this Office's FAUSA.

Executive officials routinely carry out the delegable functions of a vacant PAS (Presidential Appointee with Senate confirmation) office where no acting official is available. *See, e.g.*, Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 634 (2020); Letter from Gary L. Kepplinger, General Counsel, GAO (Jun. 13, 2008), *available at* https://go.usa.gov/xtEQP (noting that Steven Bradbury led OLC for years as Principal Deputy Assistant Attorney General once the FVRA's time limits precluded him from serving as the Acting Assistant Attorney General).[2] Numerous Main Justice litigating components have been led for years by Principal Deputy Assistant Attorneys General, following the expiration of their Acting time limits under § 3346.[3] So too with First Assistants in U.S. Attorney's Offices.[4] Indeed, the Senate Report for the FVRA expressly recognized that when there is no validly serving acting officer, "[d]elegable functions of the office could still be performed by other officers or employees, but the functions and duties to be performed only by the officer whose appointment is by the President by and with the advice and consent of the Senate could be performed solely by the head of the executive agency." S. Rep. No. 105-250 at 18. In short, a principal deputy remains a principal deputy, and a FAUSA remains a FAUSA.

The Attorney General's power to run the Department of Justice and delegate functions to subordinates does not render the FVRA superfluous in this context. A delegee cannot use the title of Acting U.S. Attorney or exercise any exclusive, non-delegable functions of that office. A delegee may also face litigation regarding the delegability of a particular function. *See United States v. Weyhrauch*, 544 F.3d 969,

---

[2] GAO has reiterated that understanding in subsequent decisions. *See* https://www.gao.gov/assets/880/874603.pdf (Assistant Attorney General for Office of Legal Policy, Department of Justice); https://www.gao.gov/assets/870/865197.pdf (Legal Adviser, Department of State); https://www.gao.gov/assets/870/869737.pdf (Under Secretary of Agriculture for Food, Nutrition, and Consumer Services, Department of Agriculture).

[3] *Compare, e.g.*, the Civil Division's briefs under Brian Boyton, 2021 WL 1154026 ("Acting Assistant Attorney General") *with* 2024 WL 4262497 ("Principal Deputy Assistant Attorney General"), or the Tax Division's under Caroline Ciraolo, https://www.justice.gov/osg/brief/sperrazza-v-united-states ("Acting Assistant Attorney General"), *with* https://www.justice.gov/osg/brief/baras-v-united-states ("Principal Deputy Assistant Attorney General").

[4] For example, pursuant to a delegation of authority as the First Assistant U.S. Attorney, Elizabeth A. Strange led the U.S. Attorney's Office for the District of Arizona from approximately November 2017 until May 2019, *see, e.g.*, Brief of Appellee, 2018 WL 2418885; Michelle M. Baeppler led the U.S. Attorney's Office for the Northern District of Ohio from approximately May 2022 until June 2023, *see, e.g.*, Brief of Plaintiff-Appellee, 2023 WL 2600208; and Robert J. Troester led the U.S. Attorney's Office for the Western District of Oklahoma from approximately August 2018 until June 2019, *see, e.g.*, Brief of Plaintiff-Appellee, 2018 WL 5309976.

974 (9th Cir. 2008) (certifications under 18 U.S.C. § 3731).[5] But Naviwala has not contended that the bare authority to supervise his criminal case is a nondelegable function of the office of U.S. Attorney. Moreover—and critically—the FVRA applies across the entire Executive Branch, so its meaning cannot turn on the result of its application to one specific office in one specific agency. Just as many PAS positions (unlike U.S. Attorney) have a PAS first assistant, many agencies (unlike the Department of Justice) require a PAS official to take official action. *See, e.g.*, *SW General, Inc. v. NLRB*, 796 F.3d 67, 80 (D.C. Cir. 2015), *aff'd*, 580 U.S. 288 (2017); *Hooks v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 555 (9th Cir. 2016). To the extent that the primary functions of a Department of Justice lawyer—participating in litigation and supervising others—can be delegated to any DOJ lawyer, that is a feature of the Department of Justice that has little to do with the FVRA.

       A remedy should be "tailored" to the violation. *United States v. Arthrex*, 594 U.S. 1, 25 (2021). If there is a violation of § 3345(a)(1) and Ms. Habba is not the Acting U.S. Attorney, as this Court held to be the case in *Giraud* and *Pina*, then she must take off that hat. But this Court need not—and should not—order her to remove the prosecutorial and supervisory hats that many others in this Office wear, including the undersigned Division Chief (Mark E. Coyne) and Deputy Unit Chief (Aaron L. Webman).

---

[5] *Cf.* J.M. §§ 9-11.120 (re-submission of charges before a grand jury); 9-11.140 (forthwith subpoena); 9-11.150 (subpoenas to a target, alternatively with Assistant Attorney General approval).

## Conclusion

      For all these reasons, the Court should deny the Motion and transfer this case back to Judge Farbiarz in its entirety. The Government thanks the Court for its consideration.

      Respectfully submitted,

      TODD BLANCHE
      U.S. Deputy Attorney General

      ALINA HABBA
      Acting U.S. Attorney
      First Assistant U.S. Attorney

By: _____
      Mark E. Coyne
      Chief, Appeals Division

      Aaron L. Webman
      Deputy Chief, Economic Crimes Unit

      Matthew Specht
      Assistant U.S. Attorney

cc:    Counsel of Record (via ECF)