Doug Passon
Law Offices of Doug Passon, PC
10565 N. 114th St., Suite 101
Scottsdale, AZ 85259
Telephone: 480.448.0086
Email: doug@dougpassonlaw.com

Rahul Agarwal
Friedman Kaplan Seiler Adelman & Robbins
7 Times Square
New York, NY 10036
(212) 833-1132
ragarwal@fklaw.com

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:24-CR-99 |
| Plaintiff, | |
| v. | **DEFENDANT'S OMNIBUS MOTION TO DISMISS SUPERSEDING INDICTMENT WITH PREJUDICE AND DISQUALIFY COUNSEL** |
| RAHEEL NAVIWALA, | |
| Defendant. | COURT: Hon. Matthew W. Brann |



Attorney General Pam Bondi, X Post, December 8, 2025, 1:49 P.M., available at
https://x.com/AGPamBondi/status/1998102734680318084/photo/1

.

# TABLE OF CONTENTS

Table of Authorities ............................................................................. iii

I.     Summary of Arguments................................................................2

II.    Pertinent Procedural History .........................................................5

III.   The Government is Judicially Estopped from Advancing a Position it
Previously Disavowed....................................................................14

IV.    The Government Waived the Argument that the "Executive Office" is
Not Subject to the Appointments Clause ...............................................19

V.     Whether to an Individual or an "Executive Office," a *De Facto* U.S.
Attorney May Not be Designated .........................................................20

VI.    The Government's Appointments Clause Violation is Presumed Prejudicial;
Mr. Naviwala is Entitled to a Decision on the Merits and Appropriate Relief…..27

VII.   Appointments Clause Violations So Fundamentally Impugn the Integrity of
a Criminal Proceeding That They Cannot be Waived and Will Even Defeat a
Court's Jurisdiction ......................................................................31

VIII.  An Indefinite Delay in Sentencing Violates Due Process.............................34

IX.    Additional Grounds Establishing Prejudice and Due Process Violations.....41

       A.     Mr. Naviwala is Being Precluded from Possible Vindication ...........41

       B.     Indefinite Home Confinement is Resulting in an Irrevocable Loss of
       Liberty...........................................................................43

X.     Dismissal with Prejudice is the Only Remedy Available.............................45

Conclusion .................................................................................50

Certificate of Service .......................................................................52

## TABLE OF AUTHORITIES

### Cases

*Barefoot v. Estelle*, 463 U.S. 880 (1983) .................................................38

*Barker v. Wingo*, 407 U.S. 514 (1972) ...................................................35

*Betterman v. Montana*, 578 U.S. 437 (2016)........................................ 34, 35, 41, 42

*Bhatnagar by Bhatnagar v. Surrendra Overseas*, 52 F.3d 1220 (3d Cir. 1995).......2

*Bond v. United States*, 564 U.S. 211 (2011) ........................................ 29, 30

*Boyd v. United States*, 116 U.S. 616 (1886) ...........................................41

*Burkett v. Cunningham*, 826 F.2d 1208 (3d Cir. 1987) ........................ 41, 42, 43, 48

*Burkett v. Fulcomer*, 951 F.2d 1431 (3d Cir. 1991) ("Burkett II") ........................35

*CFTC v. Schor*, 478 U.S. 833 (1986).........................................................33

*Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020) .............29

*Clinton v. City of N.Y.*, 524 U.S. 417 (1998) .........................................28

*Davis v. United States*, 564 U.S. 229 (2011) .........................................51

*Degen v. United States*, 517 U.S. 820 (1996) ...........................................46

*Dietz v. Bouldin*, 579 U.S. 40 (2016)......................................................46

*Gall v. United States*, 552 U.S. 38 (2007) ...............................................44

*Gamble v. United States*, 587 U.S. 678 (2019)........................................50

*Gayle v. Warden Monmouth Cty. Corr. Inst.*, 12 F.4th 321 (3d Cir. 2021) ............38

*G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247 (3d Cir. 2009).....................16

*Hollingsworth v. Perry*, 570 U.S. 693 (2013).........................................32

*Hunt v. United States*, 456 F.2d 582 (3d Cir. 1972) .............................................46

*Intercollegiate Broad. Sys. v. Copyright Royalty Bd. & Librarian of Cong.*, 796 F.3d 111 (D.C. Cir. 2015) ..................................................... 31, 37

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314 (3d Cir. 2003) ................................................................................18

*Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000) ...............................................31

*Lane v. Brown*, 372 U.S. 477 (1963) ................................................................48

*Lofstad v. Raimondo*, 117 F.4th 493 (3d Cir. 2024) ..................................30

*Martinez v. Illinois*, 572 U.S. 833 (2014) .....................................................50

*New Hampshire v. Maine*, 532 U.S. 742 (2001)...........................................17

*NLRB v. Canning*, 573 U.S. 513 (2014) .............................................. 28, 31, 33

*NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2022) ........................................ 28, 33, 41

*Norton v. Shelby County*, 118 U.S. 425 (1886) ...........................................39

*Off. of the United States Tr. v. John Q. Hammons Fall 2006, LLC*, 602 U.S. 487 (2024) ............................................................................................................46

*Pacemaker Diagnostic Clinic v. Instromedix*, 725 F.2d 537 (9th Cir. 1984).........33

*Perez v. Mortg. Bankers Ass'n*, 572 U.S. 92 (2015)...................................28

*Reno v. Kay*, 515 U.S. 50 (1995) ....................................................................45

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) ................................................................................................................ 16, 17

*Ryder v. United States*, 515 U.S. 177 (1995)........................................ 27, 31, 51

*Thomas v. INS*, 35 F.3d 1332 (9th Cir. 1994)...........................................21

*United States v. Alvarez*, 567 U.S. 709 (2012) .............................................38

*United States v. Biden*, 729 F. Supp. 3d 430 (D. Del. 2024) ...................16

*United States v. Donohue*, No.3:22-cr-253, 2024 U.S. Dist. LEXIS 216298, 2024 WL 4905979 (M.D. Pa. Nov. 27, 2024) ......................................................44

*United States v. Dreyer*, 533 F.2d 112 (3d Cir. 1976)...............................45

*United States v. Durham*, 941 F.2d 886 (9th Cir. 1991).........................32

*United States v. Garcia-Andrade*, No. 13-CR-993, 2013 U.S. Dist. LEXIS 110759, 2013 WL 4027859 (S.D. Cal. Aug. 6, 2013) .........................................32

*United States v. Giraud*, __ F. 4th __, 2025 U.S. App. LEXIS 31083, 2025 WL 3439752 (3d Cir. 2025)................................................................. *passim*

*United States v. Giraud*, 795 F. Supp. 3d 560, 2025 U.S. Dist. LEXIS 162451, 2025 WL 2416737 (D.N.J. 2025) ................................................................ 9, 14

*United States v. Giraud*, No. 1:24-cr-00768; No. 2:25-cr-00436, 2025 U.S. Dist. LEXIS 148014, 2025 WL 2196794 (D.N.J. Aug. 1, 2025)......................................26

*United States v. Hasting*, 461 U.S. 499 (1983)......................................46

*United States v. James*, __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 233031, 2025 WL 3266931 (E.D. Va. 2025)......................................24, 27

*United States v. Jiang*, 214 F.3d 1099 (9th Cir. 2000) ......................................47

*United States v. Kilpatrick*, 821 F.2d 1456 (10th Cir. 1987)......................................51

*United States v. Lacerda*, 958 F.3d 196 (3d Cir. 2020)......................................34, 42

*United States v. Mezzanatto*, 513 U.S. 196 (1995)......................................34, 40

*United States v. Providence Journal Co.,* 485 U.S. 693 (1988)......................................32, 34

*United States v. Sanders*, 452 F.3d 572 (6th Cir. 2006)......................................35

*United States v. Sears*, 877 F.2d 734 (9th Cir. 1989) ......................................47

*United States v. Small*, No. 22-1469, 2023 U.S. App. LEXIS 17117, 2023 WL 4399212 (3d Cir. July 7, 2023)......................................35

*United States v. Smith*, 793 F.2d 85 (3d Cir. 1986) ......................................38

*United States v. Taylor*, 487 U.S. 326 (1988)......................................49

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024)....39, 41, 46, 49, 51

*United States v. Wright*, 913 F.3d 364 (3d Cir. 2019)......................................46

*Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019) ......................................32

*Virgin Islands v. Allick*, D.C. Crim. App. No. 2004/093, 2004/092, 2004/091, 2006 U.S. Dist. LEXIS 76252, 48 V.I. 503, 511 (D.V.I. App. Div. Sept. 22, 2006).......48

*West v. Warden Fort Dix FCI*, 740 Fed. Appx. 237 (3d Cir. 2018)......................................45

*Wheat v. United States*, 486 U.S. 153 (1988) ......................................34, 40

## Statutes

5 U.S.C. § 3347......................................22

18 U.S.C. § 793......................................39

18 U.S.C. § 3624......................................44

28 U.S.C. § 509......................................21

28 U.S.C. § 510 ................................................................................21

28 U.S.C. § 516 ................................................................................31

28 U.S.C. § 541 ......................................................................... 22, 25

28 U.S.C. § 546 .................................................................... 24, 25, 27

28 U.S.C. § 547 ................................................................................32

## Other Authorities

"Order Granting Renewed Motion for Preliminary Injunction," *Newsome v. Trump*, 3:25-cv-04870 (N.D. Cal. Dec. 10, 2025), ECF No. 225 ..........................................3

"Philip Lamparello (Personal Account)," Linkedin, last visited Dec. 15, 2025 .....23

Administrative Office of U.S. Courts, United States District Courts, "National Judicial Caseload Profile" and "New Jersey Judicial Caseload Profile." ................43

Appellant's Brief, *United States v. Giraud*, 25-2635 at 53 (3d Cir. Sept. 12, 2025), ECF Doc. 25 ....................................................................................................2

Att'y Gen. Pamela Bondi, Ofc. of Att'y Gen., Order No. 6510-2025 ............. 12, 23

DOJ, U.S. Atty's Ofc. for the Dist. of Ariz., "Meet the United States Attorney" ...36

DOJ, U.S. Atty's Ofc. for the Dist. of New Jersey, "Divisions," ...........................20

DOJ, U.S. Atty's Ofc. for the Dist. of Oregon, "Meet the United States Attorney" ...........................................................................................................36

DOJ, U.S. Atty's Ofc. for the S.D.N.Y., "Meet the United States Attorney" .........36

*Ellingburg v. United States*, 24-482, Oral Arg. Trans. at 65:16-18 (Oct. 14, 2025) ...........................................................................................................51

"Judges Reject Trump's Pick for Top New Jersey Federal Prosecutor, DOJ Removes Successor," Reuters, July 22, 2025 ..........................................................37

Justin Wise, "NJ Prosecutor Fired to Make Way for Alina Habba Files Appeal," Bloomberg Law, Aug. 6, 2025 ...................................................................37

Khaleda Rahman, "Donald Trump Caught on Hot Mic Tearing Into Republicans," Newsweek, Dec. 9, 2025 ............................................................................4

Sarah N. Lynch and Andrea Shahal, "White House Seeks to Advance Lindsey Halligan's Nomination as US Attorney, but Faces Hurdles," Reuters, Dec. 11, 2025 ...........................................................................................................17

Statement of Alina Habba, X Post, Dec. 8, 2025, 1:46 p.m. ...................................11

Statement of Attorney General Pamela Bondi, X Post, December 8, 2025, 1:49 P.M. ...................................................................................................................12

U.S. Senate, Committee on the Judiciary, "Confirmed Nominations," ...................36

U.S. Sentencing Commission, *2024 Sourcebook of Federal Sentencing Statistics* 45

*United States v. Giraud*, 25-2635 (3d Cir. Dec. 11, 2025), ECF Doc. 84 ..............13

*United States v. Giraud*, 1:24cr768, "First Motion to Dismiss and for Alternative Relief" (D.N.J. July 27, 2025), ECF Doc. 99 ..........................................................37

**Rules**

Federal Rule of Criminal Procedure 32 ........................................................... 35, 42

Local Civil Rule of Procedure 7.2 ...........................................................................1

Sup. Ct. R. 13 .........................................................................................................13

Defendant RAHEEL NAVIWALA, by and through undersigned counsel, in order to clarify the many issues and arguments set forth in prior filings, and for ease of the parties and the Court, hereby files the instant Omnibus Motion to Dismiss the Superseding Indictment and Disqualify the Government's Counsel.[1] Accordingly, Mr. Naviwala's prior motion to disqualify counsel and dismiss the superseding indictment,[2] and his prior motion to strike the Government's letter brief in opposition to his motion to dismiss,[3] are replaced by the instant motion.

The Government will go to any lengths to evade the Appointments Clause and those statutes enacted to effectuate it. In the meantime, Mr. Naviwala's due process rights, which have already been irrevocably violated, continue to be ignored. The current situation thus invokes the "well-worn but nevertheless truthful

---

[1] Earlier today, Mr. Naviwala filed a motion for leave to file the instant motion in excess of the page limit set forth at L.Civ.R. 7.2(b). ECF Doc. 275. Therein, Mr. Naviwala requested a limit of 70 pages, which was a good faith estimate of the required pages at that time. The Government objected, ECF Docs. 276 & 277, and Mr. Naviwala replied stating that he required no more than 55 pages. ECF Doc. 258. As it turns out, the instant motion is only 52 pages in length. At the time of filing the instant motion, Mr. Naviwala's motion for leave to file in excess of the 40-page page limit has not been resolved, he nonetheless files the instant motion as he had represented to the Court and the Government that this motion would be filed today. Accordingly, Mr. Naviwala now requests leave to file the instant motion in excess of the 40-page page limit *instanter* for the reasons set forth in ECF Doc. 275.

[2] ECF Doc. 257.

[3] ECF Doc. 260. Mr. Naviwala reserves the right to move to strike any further filing in this matter by any Government attorney who is subject to disqualification.

1

aphorism that 'justice delayed is justice denied.'"[4] This Court should not countenance the Government's contempt for the law a moment longer and grant the motions to disqualify and dismiss the superseding indictment.

## I.    SUMMARY OF ARGUMENTS

The U.S. Court of Appeals for this Circuit has now affirmed this Court's order disqualifying Alina Habba and those acting pursuant to her authority or under her supervision.[5] This resulted in her subsequent resignation. Rather than taking the opportunity of Ms. Habba's resignation to seat a duly Senate-confirmed nominee into the position, the Government cynically designated an "Executive Office"[6] of three unconfirmed attorneys to head it in an unprecedented move the Government itself described as a "*reductio ab absurdum*" just over three months ago.[7] In its own words, "it is not evident why that distinction [between a single person and three] would be material under [this Court's] reasoning."[8] The Government is

---

[4] *Bhatnagar by Bhatnagar v. Surrendra Overseas*, 52 F.3d 1220, 1228 (3d Cir. 1995).

[5] *United States v. Giraud*, __ F.4th __, 2025 U.S. App. LEXIS 31083, 2025 WL 3439752 (3d Cir. Dec. 1, 2025).

[6] *See* U.S. Dept' of Justice, U.S. Attorney's Ofc. Dist. of New Jersey, "About the Office" (updated Dec. 17, 2025), available at https://www.justice.gov/usao-nj/about.

[7] Appellant's Brief, *United States v. Giraud*, 25-2635 at 53 (3d Cir. Sept. 12, 2025), ECF Doc. 25 (emphasis in original).

[8] Appellant's Brief, *United States v. Giraud*, 25-2635 at 53 (3d Cir. Sept. 12, 2025), ECF Doc. 25.

right. This "Executive Office" is just as illegitimate as was Alina Habba's appointment and so both the "Executive Office" and its members should be disqualified for the same reasons.

> ***Thus, this latest maneuver does not change or moot anything.*** In the words of Judge Charles Breyer of the Northern District of California recently addressing other illegal conduct of the Government, "[t]he Founders designed our government to be a system of checks and balances. [The Government], however, make[s] clear that the only check [it] want[s] is a blank one."[9] The Appointments Clause and "[t]he vesting and delegation statutes in 28 U.S.C. §§ 509 and 510,"[10] make clear that the Attorney General does not have a blank check to simply designate just anyone or any group of individuals she wishes to function as the *de facto* United States Attorney for this District. The undersigned could not find a single instance of such an "Executive Office" **ever** being designated to lead a district office as the *de facto* U.S. Attorney.

It is therefore quite notable that the Government does not even attempt to explain its about-face let alone acknowledge its prior explicit opposition to the very position it now advances. It is simply more shameless gamesmanship that this

---

[9] "Order Granting Renewed Motion for Preliminary Injunction," *Newsome v. Trump*, 3:25-cv-04870 (N.D. Cal. Dec. 10, 2025), ECF No. 225 at 1 (Breyer, J.).

[10] *Giraud*, 2025 U.S. App. LEXIS 31083, *29.

Court should no longer countenance through judicial estoppel. Removing all doubt that the Government has absolutely no intention to seat a Senate-confirmed nominee as U.S. Attorney for the District of New Jersey are the words of President Trump himself: "I guess I just have to keep appointing people for three months and then just appoint another one, another one. It's a very sad situation. We're losing tremendous, we're losing a lot of great people."[11]

This Court must continue to hold the Government accountable for its refusal to follow the Constitution and laws of the United States. Mr. Naviwala has **already** been forced to suffer an unconstitutional delay in violation of his due process rights. He should not be forced to continue enduring an ongoing violation of his due process rights solely because of the Government's litigation tactics. Indeed, there is no end in sight to this litigation because the Government simply refuses to take "no" for answer. Prejudice continues to accrue with each passing day the Executive branch chooses to run roughshod over the other two co-equal branches of government.

As the Government purposefully, wrongfully, and now desperately continues in its cynical effort to evade the Appointments Clause notwithstanding more than sufficient opportunity to comply with its requirements, this Court should grant

---

[11] Khaleda Rahman, "Donald Trump Caught on Hot Mic Tearing Into Republicans," Newsweek, Dec. 9, 2025, available at https://www.newsweek.com/donald-trump-caught-on-hot-mic-tearing-into-republicans-11178147.

the instant motion, disqualify the Government's counsel, dismiss the superseding indictment, and enjoin any Government attorney subject to disqualification from filing anything further in this matter.

## II.    PERTINENT PROCEDURAL HISTORY

On March 16, 2023, a Complaint was filed against Mr. Naviwala alleging a conspiracy to violate the anti-kickback statute with respect to Medicare patients.[12]

On March 23, 2023, Mr. Naviwala was arrested.

On April 4, 2023, Mr. Naviwala had his initial appearance where he was released on an unsecured $150,000 appearance bond and travel restrictions.[13]

Nearly a year later, on February 16, 2024, an indictment was finally issued against Mr. Naviwala alleging various counts of violations of the federal anti-kickback, wire fraud, and healthcare fraud statutes.[14]

Nearly a year after that, on January 3, 2025, a ten-count superseding indictment was issued charging Mr. Naviwala with various counts of healthcare fraud and violations of the anti-kickback statute. According to the Government, Mr. Naviwala conspired with others to defraud Medicare and other insurers through the issuance of durable medical equipment—prefabricated off-the-shelf orthotics—to

---

[12] ECF Doc. 1.

[13] ECF Docs. 7 & 9.

[14] ECF. Doc. 22.

patients that did not have *bona fide* medical needs for them.[15]

On February 6. 2025, trial commenced on the superseding indictment.[16]

On February 14, 2025, Judge Farbiarz granted the Government's motion to voluntarily dismiss two counts *with prejudice*.[17]

On February 28, 2025, nearly ***two years*** after the original Complaint was filed against him and after a three-week trial, a jury acquitted Mr. Naviwala of two counts and returned guilty verdicts on the remaining six counts.[18] Coupled with the Government's prior motion to voluntarily dismiss two counts with prejudice, the two additional acquittals plainly indicate that ***the case against Mr. Naviwala suffered from significant deficiencies***.

Also on February 28, 2025, the Court imposed significantly more onerous terms of release on Mr. Naviwala by requiring him to post a $1 million bond secured by his parents' residential property, and to be placed on "24-hour home confinement" at a pre-approved residence for which he was allowed to leave only for medical necessity, religious service, consultations with his lawyers, court appearances, and emergency childcare obligations.[19] Additionally, Mr. Naviwala was also

---

[15] ECF Doc. 73.

[16] ECF Doc. 126.

[17] ECF Doc. 133.

[18] ECF Doc. 176.

[19] After his second attempt to obtain a modification of bail allowing him the ability to leave the home to exercise, and in light of his change of residence and

placed on location monitoring.[20] These conditions of release remain in full force and effect.

On March 20, 2025, Mr. Naviwala, through his prior counsel, moved for acquittal on the six counts of conviction, or in the alternative for a new trial.[21]

On April 10, 2025, the Government filed its opposition to the motion for acquittal.[22]

The very next day, on April 11, 2025, Mr. Naviwala's primary trial counsel moved to withdraw because she was switching law firms.[23] This forced Mr. Naviwala to retain new counsel, totally unfamiliar with the case, to scramble to file a reply to the Government's opposition to his motion for acquittal, and to prepare for sentencing.

On April 24, 2025, the undersigned entered his appearance on behalf of Mr. Naviwala.[24] So that the undersigned would have sufficient time to review thousands of pages of trial transcripts, the many filings on the docket, and to obtain and

---

health concerns, Magistrate Judge Adams, over the Government's strong objections, granted the modification in part, allowing him to engage in daily exercise at the community center where he now resides with his parents. ECF Doc. 255.

[20] ECF Doc. 179.

[21] ECF Doc. 186.

[22] ECF Doc. 199.

[23] ECF Doc. 200.

[24] ECF Doc. 202.

review the voluminous discovery, the undersigned moved to continue sentencing from July 29, 2025, to no earlier than September 30, 2025; and for an extension of time to file a reply to the Government's opposition to Mr. Naviwala's motion for acquittal from May 1, 2025, to July 1, 2025.[25]

Also on April 24, 2025, Mr. Naviwala's remaining counsel all moved to withdraw.[26]

On April 25, 2025, Judge Farbiarz granted all of prior counsels' motions to withdraw.[27] That same day, Judge Farbiarz denied Mr. Naviwala's request to continue sentencing, but granted his request for an extension of time to file a reply to the Government's opposition.[28] Mr. Naviwala timely filed his reply on July 7, 2025.[29]

On July 3, 2025, Mr. Naviwala again moved to adjourn his sentencing hearing then scheduled for July 29, 2025, to no earlier than September 30, 2025, in light of *inter alia* the need for an expert evaluation to be completed and the fact the undersigned was having difficulty obtaining the entirety of discovery from the

---

[25] ECF Doc. 203.

[26] ECF Docs. 204-208.

[27] ECF Docs. 210-215.

[28] ECF Doc. 217.

[29] ECF Doc. 235.

Government, which comprised several terabytes of data.[30]

On July 11, 2025, Judge Farbiarz set sentencing in this matter for October 1, 2025, stating that "[t]here will be no further adjournments" and so Mr. Naviwala "shall prepare for sentencing on that understanding."[31]

Mr. Naviwala's fully briefed motion for acquittal was set for oral argument on July 29, 2025. The day before, undersigned counsel flew from Arizona to New Jersey to attend the hearing. Upon arrival in New Jersey, undersigned counsel received notice that Judge Farbiarz *sua sponte* adjourned the hearing *sine die*.[32] Judge Farbiarz did so in light of events that ultimately resulted in this Court's decision in *Giraud* disqualifying Alina Habba and those acting pursuant to her authority or under her supervision from further participating in the prosecution of criminal cases within this District due to an Appointments Clause violation.

On August 21, 2025, in an unrelated matter, this Court ordered the disqualification of Alina Habba and those acting pursuant to her authority or under her supervision.[33]

---

[30] ECF Doc. 231.

[31] ECF Doc. 237.

[32] ECF Doc. 239.

[33] *United States v. Giraud*, 795 F. Supp. 3d 560, 2025 U.S. Dist. LEXIS 162451, 2025 WL 2416737 (D.N.J. 2025).

9

On September 2, 5, and 8, 2025, Mr. Naviwala moved to disqualify Alina Habba and those prosecuting him pursuant to her authority or under her supervision in light of this Court's decision in *Giraud*.[34] Mr. Naviwala did **not** move for a stay in light of Judge Farbiarz's prior ruling.

On September 15, 2025, Judge Farbiarz transferred this matter to your Honor.[35]

On September 22, 2025, this Court stayed *sua sponte* all proceedings and pending motions in this matter "pending resolution of the consolidated appeal in *Giraud* and *Pina*."[36]

On October 22, 2025, Mr. Naviwala filed a motion to dismiss the superseding indictment with prejudice in light of this Court's decision in *Giraud*.[37]

On October 31, 2025, the Government filed its response in opposition to the motion to dismiss.[38]

On November 7, 2025, Mr. Naviwala filed a motion to strike the Government's response in opposition and to disqualify the Government's counsel.[39]

---

[34] ECF Docs. 241, 243, and 244.

[35] ECF Doc. 248.

[36] ECF Doc. 250 at 3.

[37] ECF Doc. 257.

[38] ECF Doc. 259.

[39] ECF Doc. 260.

On November 10, 2025, the Government filed its response in opposition to Mr. Naviwala's motion to strike and to disqualify.[40]

On November 14, 2025, Mr. Naviwala filed his reply to the Government's response in opposition to his motion to dismiss.[41]

On November 17, 2025, Mr. Naviwala filed his reply to the Government's response in opposition to his motion to strike and to disqualify.[42]

On December 1, 2025, the U.S. Court of Appeals for the Third Circuit affirmed this Court's order disqualifying Alina Habba.[43]

On December 8, 2025, Ms. Habba "decided to step down in [her] role as the United States Attorney for the District of New Jersey."[44] Shortly thereafter, rather than finally seating a Presidentially-Nominated and Senate-Confirmed ("PAS") nominee, the Government via the Attorney General instead engaged in another end-run around the Appointments Clause by delegating the functions of the United

---

[40] ECF Doc. 263.

[41] ECF Doc. 265.

[42] ECF Doc. 266. The instant omnibus motion replaces ECF Docs. 257, 260, 265, and 266.

[43] *See United States v. Giraud*, __ F. 4th __, 2025 U.S. App. LEXIS 31083, *38, 2025 WL 3439752 (3d Cir. 2025) ("Habba is not the Acting U.S. Attorney for the District of New Jersey . . . [and] the Attorney General's delegation of all the powers of a U.S. Attorney to Habba is prohibited by the FVRA's exclusivity provision. Therefore, we will affirm the District Court's disqualification order.").

[44] Statement of Alina Habba, X Post, Dec. 8, 2025, 1:46 p.m., https://x.com/AlinaHabba/status/1998101999024550125?s=20.

States Attorney to three non-PAS staff attorneys to collectively perform.[45] The Attorney General ostensibly did this to "ensure continuity in leadership in the District of New Jersey,"[46] but vowed "to seek further review of this decision" notwithstanding Ms. Habba's resignation.[47] The Attorney General further stated that the Department of Justice "is confident that [*Giraud*] will be reversed" and that Ms. Habba will "return to lead the U.S. Attorney's Office for the District of New Jersey if this occurs."[48]

Also on December 8, 2025, Mr. Naviwala filed a letter with this Court stating that the Attorney General's "designations do not solve the vacancy problem or otherwise address the Appointments Clause violation. Nor do they moot Mr. Naviwala's motion to dismiss the superseding indictment. Accordingly, I respectfully urge the Court to schedule a telephonic conference call as soon as possible to discuss next steps in the instant matter."[49]

On December 11, 2025, the Government was granted an extension of time to

---

[45] Att'y Gen. Pamela Bondi, Ofc. of Att'y Gen., Order No. 6510-2025 (hereinafter "AG's Order"), https://www.justice.gov/opa/media/1420361/dl.

[46] *Id.*

[47] Statement of Attorney General Pam Bondi, X Post, December 8, 2025, 1:49 P.M., available at https://x.com/AGPamBondi/status/1998102734680318084/photo/1.

[48] *Id.*

[49] ECF 267 at 1.

file its petition for rehearing or rehearing *en banc* until January 14, 2026.[50] Thus, it is clear that appellate remedies will not be exhausted for quite some time.[51]

On December 15, 2025, the Government filed a letter in this matter claiming that, subsequent to her resignation as "Special Attorney," Ms. Habba has been "appointed Senior Advisor to the Attorney General for U.S. Attorneys"[52] and so no longer "supervise[s] any AUSAs in the USAO-NJ, including those assigned to this case."[53] But in the very next sentence, the Government also states that Ms. Habba "may from time-to-time exercise supervision over particular cases or issues in the District of New Jersey."[54] Thus, the Government candidly states it will reinsert Ms. Habba into the position from which she was disqualified at its whim.[55]

---

[50] *United States v. Giraud*, 25-2635 (3d Cir. Dec. 11, 2025), ECF Doc. 84.

[51] The Government also has up to March 2, 2026, in which to file a petition for *certiorari*. *See* Sup. Ct. R. 13(1) ("a petition for a writ of *certiorari* . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment"). Although, that time will be extended if the Government files a petition for rehearing in the Third Circuit. *See* Sup. Ct. R. 13(3). Moreover, the Government may seek an additional extension in which to petition for *certiorari* of up to 60 days. *See* Sup. Ct. R. 13(5). Thus, the Government may not need to even file a petition for *certiorari* until next summer nearly ensuring the matter will not even be argued and decided until sometime in 2027.

[52] The Government does not explain what Ms. Habba will actually do in this position—a position that does not appear to have even existed prior to Ms. Habba's resignation—aside from supervising cases in the District of New Jersey "from time-to-time." ECF Doc. 268 at 1.

[53] ECF Doc. 268 at 1.

[54] *Id.*

[55] This begs the question as to whether, through these machinations, Ms.

On December 22, 2025, this Court consolidated this case with *United States v. Torres*, 2:24-cr-0378 (D.N.J.) for purposes of the motion to dismiss and disqualify but permitted the parties "to continue to submit separate briefs, but any independent briefing should be entirely nonduplicative."[56]

## III.   THE GOVERNMENT IS JUDICIALLY ESTOPPED FROM ADVANCING A POSITION IT PREVIOUSLY DISAVOWED

In *Giraud*, this Court held that

> once FVRA and position-specific temporary appointments statutes have been exhausted, no one may hold the vacant office in *any* capacity, and only the department head may perform the exclusive and nondelegable duties of that office. If anyone else performs such duties, those actions are forever void. As to the vacant office's nonexclusive and delegable duties—those not covered by the narrow definition of "function or duty"—they may not all be vested in a single person through delegation.[57]

With respect to the fact that the "nonexclusive and delegable duties . . . may not all be vested in a ***single person***,"[58] this Court dropped a footnote stating in *dicta* that "I do not express any opinion on the possibility of parceling out these duties to separate individuals or delegating only a clearly limited subset of

---

Habba essentially retains the position as a "shadow U.S. attorney" for the District of New Jersey, and whether her supervisory involvement in this District's prosecutions deserve greater scrutiny.

[56] ECF Doc. 274 at 1.

[57] *Giraud*, 2025 U.S. Dist. LEXIS 162451, *62-63 (emphasis in original).

[58] *Id.* (emphasis added).

nonexclusive and delegable duties."[59]

In its opening brief on appeal, the Government addressed this possibility and stated this work-around constituted a "*reductio ad absurdum* of [this Court's *Giraud*] ruling."[60] The Government also observed—correctly—that "it is not evident why that distinction [between a single person and several] would be material under [this Court's] reasoning."[61]

In affirming this Court's decision in *Giraud*, the Court of Appeals then made the following observation also in *dicta*:

> [A]s the District Court noted, our decision that the delegation of all the powers of a U.S. Attorney would run afoul of the FVRA's exclusivity provision does not necessarily mean that **some delegation** by the Attorney General to Habba—or to any First Assistant U.S. Attorney—would not be permissible. *Giraud*, 2025 U.S. Dist. LEXIS 162451, 2025 WL 2416737, at *26 n.257. The Government is dismissive of this view, claiming that delegation to multiple individuals rather than one results in a "*reductio ad absurdum*." Appellant's Br. 45. "It is not evident," it asserts, "why that distinction would be material." *Id.* But it **might** be material, as it is possible a more dispersed delegation of authority **might not** create a *de facto* U.S. Attorney and therefore **might not** run afoul of the FVRA's exclusivity provision—though we do not decide that today because those are not the facts of this case. As it stands, Habba alone is exercising all the powers of a U.S. Attorney, making her an Acting U.S. Attorney whose

---

[59] *Id.* at *63 n.257.

[60] Appellant's Brief, *United States v. Giraud*, 25-2635 (3d Cir. Sept. 12, 2025), ECF Doc. 25 at 53.

[61] *Id.*

appointment is not FVRA compliant.[62]

This Court should judicially estop the Government from trying to take advantage of a position that it previously explicitly rejected as absurd and that it asserted did not make a material difference. "Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding."[63]

> In the Third Circuit, judicial estoppel does not apply unless (1) the party to be estopped has taken two positions that are irreconcilably inconsistent, (2) the party's change in position was in bad faith - i.e., with intent to play fast and loose with the court and (3) no sanction short of judicial estoppel would adequately remedy the damage done by the litigant's misconduct. The party to be estopped need not have benefitted from the prior inconsistent position for judicial estoppel to be available.[64]

While "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position,"[65] that does not

---

[62] *Giraud*, 2025 U.S. App. LEXIS 31083, *37-38 (emphasis added).

[63] *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996).

[64] *United States v. Biden*, 729 F. Supp. 3d 430, 443-444 (D. Del. 2024) (citation modified).

[65] *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009), *as amended* (Dec. 4, 2009).

preclude a district court from exercising its discretion to invoke the doctrine.[66] In-

deed, as the Third Circuit has explained,

> Stating that benefit to the party from its prior position
> makes application of the doctrine "particularly appropri-
> ate," however, is not the equivalent of stating that such
> benefit is a necessary precondition to application of the
> doctrine. . . . [T]he critical issue is what the [party] con-
> tended in the underlying proceeding. . . . Whether the party
> sought to be estopped benefitted from its earlier position
> or was motivated to seek such a benefit may be relevant
> insofar as it evidences an intent to play fast and loose with
> the courts. It is not, however, an independent requirement
> for application of the doctrine of judicial estoppel.[67]

Obviously, to advance a position a party previously rejected as absurd makes

the two positions "irreconcilably inconsistent." As such, and especially given the

nature of the issue—i.e., whether Government's counsel is legitimately exercising

the authority of the U.S. Attorney's Office—it clearly also is in bad faith. This is

easily demonstrated by the fact that the Government is now actively seeking the

Senate confirmation of Lindsey Halligan—discussed in more detail below—who

was also recently disqualified from acting as the U.S. Attorney for the Eastern Dis-

trict of Virginia on the same grounds this Court disqualified Ms. Habba.[68] That the

---

[66] *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

[67] *Ryan Operations G.P.*, 81 F.3d at 361.

[68] *See* Sarah N. Lynch and Andrea Shahal, "White House Seeks to Advance Lindsey Halligan's Nomination as US Attorney, but Faces Hurdles," Reuters, Dec. 11, 2025, available at https://www.reuters.com/legal/government/white-house-seeks-advance-lindsey-halligans-nomination-us-attorney-faces-hurdles-2025-12-

Government also is not actively seeking the confirmation of Ms. Habba—who, by all appearances, may be functioning as a "shadow U.S. Attorney" for this District[69]—demonstrates bad faith (as also discussed in more detail below).[70]

Finally, the sanction of estoppel is the only sanction that will address the Government's bad faith in adopting diametrically opposite positions within a mere eight days of *Giraud*: a case that it had been litigating for the last five months without ever advancing such theory.

Courts invoke judicial estoppel "to prevent a litigant from playing fast and loose with the courts."[71] And that is precisely what is occurring here with the Government's cynical assertion of a position it previously contended was absurd. Accordingly, this Court should put a stop to it now and hold the Government to its prior position, which would entail that the current delegations are a nullity. Otherwise, given the Government's obstinance, once it loses on this position, it simply will develop some other outlandish theory in bad faith while continuing to operate

---

11/.

[69] ECF Doc. 268 at 1 (stating that Ms. Habba "may from time-to-time exercise supervision over particular cases or issues in the District of New Jersey")

[70] *See, e.g.*, Rahman, *supra* (quoting President Trump as stating "I guess I just have to keep appointing people for three months and then just appoint another one, another one. It's a very sad situation. We're losing tremendous, we're losing a lot of great people.").

[71] *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 319 (3d Cir. 2003) (citation omitted).

the U.S. Attorney's Office illegitimately.

## IV. THE GOVERNMENT WAIVED THE ARGUMENT THAT THE "EXECUTIVE OF-FICE" IS NOT SUBJECT TO THE APPOINTMENTS CLAUSE

Alternatively to the judicial estoppel argument but in the same vein, the Government waived any argument that an "Executive Office" could function as a *de facto* U.S. Attorney or otherwise avoid the Appointments Clause and the corresponding statutes codifying it. The Government, of course, could have raised that argument in this Court or before the Third Circuit. Not only did the Government fail to raise it in either court, but as noted in Part III above, it affirmatively disavowed it on appeal.

Now, effectively on remand, it seeks to revive that argument. The law of the case doctrine precludes the Government from doing so and this Court should hold the Government to its waiver.

> [A]n issue or factual argument waived at the trial level before a particular order is appealed, or subsequently waived on appeal, cannot be revived on remand. In essence, the party's waiver becomes the law of the case. *See Williamsburg Wax Museum v. Historic Figures*, Inc., 258 U.S. App. D.C. 124, 810 F.2d 243, 250 (D.C. Cir. 1987) ("under the law of the case doctrine, a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."); *Thyssen Steel Company v. M/V Kavo Yerakas*, 911 F. Supp. 263, 267-68 (S.D. Tex. 1996) (because party did not raise issue before summary judgment was granted by district court, and then did not raise

it on appeal, party's waiver of the issue was law of the case after remand); Wright, et al., Federal Practice and Procedure § 4478 at 801.[72]

## V.    WHETHER TO AN INDIVIDUAL OR AN "EXECUTIVE OFFICE," A *DE FACTO* U.S. ATTORNEY MAY NOT BE DESIGNATED

In all events, the "Executive Office" the Government now desperately pieces together obviously runs afoul of the FVRA even assuming *arguendo* that the Third Circuit's *dicta* regarding "dispersed delegation"[73] is sound. As the Third Circuit stated, its speculation is qualified by the presumption that only "some delegation" of what this Court described as the "nonexclusive and delegable" duties of the U.S. Attorney would be made.[74] Despite these very clear qualifiers, the Government nonetheless has delegated *all* the duties of the U.S. Attorney to this triumvirate, and not some clearly defined subset of nonexclusive and delegable duties. This is evidenced by the fact that all five divisions of the U.S. Attorney's Office[75] are divided among the three appointees and there otherwise are no limitations on the delegation, nor is there any reservation of duties in the Attorney General herself.

---

[72] *Magnesystems v. Nikken, Inc.*, 933 F. Supp. 944, 949-950 (C.D.C.A. 1996).

[73] *Giraud*, 2025 U.S. App. LEXIS 31083, *37.

[74] *Giraud*, 2025 U.S. Dist. LEXIS 162451 at *63.

[75] The Divisions of the U.S. Attorney's Office for New Jersey are listed as Appeals, Civil, Criminal, Special Prosecutions, and Administrative. *See* Dep't of Justice, U.S. Attorney's Ofc. Dist. of New Jersey, "Divisions," https://www.justice.gov/usao-nj/divisions. All five of these divisions are divvied up among the committee of three.

Thus, even under the Third Circuit's speculative *dicta* (for which it cites no authority),[76] the Government's latest delegations to an illusory "Executive Office" necessarily fail again.

As to the merits of the Attorney General's delegations, which were purportedly made pursuant to 28 U.S.C. §§ 509 and 510,[77] they do not change anything. The position of U.S. Attorney remains vacant[78]—as does the First Assistant position[79]—and the "Executive Office" and its individual members, like Ms. Habba herself, may not exercise the authority of that office in any capacity whether by committee or in a piecemeal fashion. This is so because "United States Attorneys get their authority directly from Congress, ***not by delegation from the Attorney General***."[80] This follows from the fact that "[t]he Constitution requires that 'Officers of the United States' be nominated by the President and confirmed by the

---

[76] Moreover, not that past practice can justify illegality, but the undersigned is aware of no U.S. Attorney's Office that has ever operated in such a fashion once the office became vacant. This just reinforces the Executive branch's continued bad faith as it engages in yet one more round of what amounts to nothing more than a supervisory shell game.

[77] *See* AG Order.

[78] The webpage for the U.S. Attorney for this District is now blank. *See* DOJ, U.S. Atty's Ofc. for Dist. of New Jersey, "Meet the U.S. Attorney" (updated Dec. 17, 2025), available at https://www.justice.gov/usao-nj/meet-us-attorney.

[79] Unlike Ms. Habba, none of the Executive Office designees were designated the First Assistant U.S. Attorney.

[80] *Thomas v. INS*, 35 F.3d 1332, 1338 (9th Cir. 1994) (emphasis added).

Senate."[81] Accordingly, "Congress . . . require[s] the appointment of U.S. Attorneys to follow the [Presidential appointment and Senate confirmation] process."[82] "While the Attorney General is the head of the Department of Justice, 28 U.S.C. § 503, the United States Attorney is the head federal prosecutor in his or her judicial district, 28 U.S.C. § 541(a)."[83]

While there are exceptions that provide for "acting or interim service," such exceptions are "for a 'limited time, and under special and temporary conditions.'"[84] None of the exceptions apply here and the AG's Order does not cite to any. Rather, what the AG's Order does is no different than what the Third Circuit in *Giraud* expressly invalidated in Part III(B) of its opinion.[85] The AG's Order nakedly advances the "*de facto* U.S. Attorney-by-delegation theory [that] is plainly prohibited by the FVRA's exclusivity provision."[86]

The AG's Order simply "approve[s] the prior appointment of Philip Lamprello as Senior Counsel and authorize[s] him to supervise . . . the work of the

---

[81] *Giraud*, 2025 U.S. App. LEXIS 31083 at *4 (citing 28 U.S.C. § 541(a)).

[82] *Id.*

[83] *United States v. Mambasse Koulabalo Patara*, 365 F. Supp. 3d 1085, 1092 (S.D. Cal. 2019).

[84] *Id.* at *5.

[85] *See id.* at **27-38.

[86] *Id.* at *29 (citing 5 U.S.C. § 3347(a), (b)).

district's Criminal Division;"[87] "appoint[s] Jordan Fox as Special Attorney and authorize[s] her to supervise . . . the work of the district's Civil Division and Appellate Division;" and "appoint[s] Ari Fontecchio as Executive Assistant United States Attorney and authorize[s] him to supervise . . . the work of the district's Administrative Division."[88] But such delegations are precisely what *Giraud* invalidated because it "avoid[s] the gauntlet of presidential appointment and Senate confirmation" and allows "the *de facto* U.S. Attorney [to serve] indefinitely."[89] As the Third Circuit in *Giraud* recognized, "[t]his view is so broad that it bypasses the constitutional PAS process entirely. It also essentially eliminates the requirements of the FVRA and the U.S. Attorney-specific statute, § 546."[90] Thus, whether the

---

[87] It is notable that Mr. Lamparello has only been employed by the Department of Justice since September of this year. *See* "Philip Lamparello (Personal Account)," Linkedin, last visited Dec. 15, 2025 (listing "Senior Counsel, United States Attorneys' Offices – Full-time Sep 2025 – Present"), available at https://www.linkedin.com/in/plamparello/. For, as the Third Circuit observed, "[t]he United States Attorneys' offices are some of the most critical agencies in the Federal Government. They play an important role in the criminal and civil justice systems and are vital in keeping our communities safe. The U.S. Attorney leading each office is an officer whose appointment requires Senate confirmation. Where a vacancy exists, Congress **has shown a strong preference that an acting officer be someone with a breadth of experience to properly lead the office**." *Giraud*, 2025 U.S. App. LEXIS 31083 at *2 (emphasis added). Mr. Lamparello's four-month tenure appears to be the sum total of his experience in prosecuting federal criminal offenses, which hardly constitutes the breadth of experience Congress prefers.

[88] AG's Order at 1.

[89] *Id.* at *30.

[90] *Id.* at *30.

Attorney General's delegation is in a single person as in Ms. Habba, or in three as the Attorney General's Order now attempts to do, makes absolutely no difference *as the Government itself correctly observed*. Neither configuration complies with the Appointments Clause, "the FVRA," or "the U.S. Attorney-specific statute, § 546."[91]

The nail in the coffin to this new delegation theory is the 120-day deadline. Even if the instant delegations were otherwise valid (and, to be sure, they are not), they still would be limited to the 120-day deadline for the Attorney General to designate an interim U.S. Attorney, which has long passed.[92] Last month, the purported U.S. Attorney for the Eastern District of Virgina, Lindsey Halligan, was disqualified for the same reasons that this Court disqualified Ms. Habba, namely, that she "was unlawfully appointed in violation of 28 U.S.C. § 546 and the Constitution's Appointments Clause."[93] The district court agreed with the defendant that "section 546 vests the Attorney General with 120 total days to appoint an interim

---

[91] *Id.*

[92] This Court previously ruled that the 120-day period in which to appoint an interim U.S. Attorney ran on July 1, 2025, and was not subject to renewal. *Giraud*, 2025 U.S. Dist. LEXIS 162451 at *69. As this Court held, "[S]ection 546 allows the Attorney General to make appointments of different individuals [to serve as the Interim U.S. Attorney], but for an aggregate of 120 days." *Id.* 2025 U.S. Dist. LEXIS 162451 at *23.

[93] *United States v. James*, __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 233031, *2, 2025 WL 3266931 (E.D. Va. 2025).

U.S. Attorney; *after that period, the* <u>*exclusive*</u> *authority to appoint an interim U.S. Attorney belongs to the district court.*"[94] As that 120-day period had passed—as it has here—the district court concluded as only it could, to wit, that "[t]he power to appoint an interim U.S. Attorney for the Eastern District of Virginia pursuant to 28 U.S.C. § 546 during the current vacancy lies with the district court until a U.S. Attorney is nominated by the President and confirmed by the Senate under 28 U.S.C. § 541."[95]

The same holds here, of course. "The FVRA provides that it is the ***exclusive*** means for temporarily authorizing an acting official to perform the functions and duties of a PAS office."[96] To get around the FVRA's exclusivity provision simply by making the singular "official" plural in the form of some "Executive Office" is, indeed, an exercise in absurdity—per the Government—and would logically render the term "exclusive" superfluous. Moreover, undersigned counsel is unaware of any U.S. Attorney's Office ever being operated in such a fashion.[97] Certainly the District of New Jersey never has since its inception in 1789.[98]  Only single

---

[94] *Id.* at *11-*12 (citation modified; emphasis added).

[95] *Id.* at *34.

[96] *Giraud*, 2025 U.S. App. LEXIS 31083 at *6-7 (emphasis added).

[97] It can be stated definitively that no U.S. Attorney's Office was ever lead by an "Executive Office" or more than a single individual from 1789 through 1989. *See* DOJ, Ofcs. of the U.S. Attorneys, "History of the U.S. Attorneys" (updated Feb. 24, 2023), available at https://www.justice.gov/usao/history.

[98] DOJ, U.S. Atty's Ofc. for the Dist. of New Jersey, "Office History"

individuals have ever "perform[ed] the functions and duties of [this] PAS office." The Government does not have a blank check to do whatever it wants whenever it wants with respect to designating individuals—singly or by committee—to perform the functions and duties of this PAS office most especially after the 120-day deadline has passed.

The AG's Order commits the same facial and fundamental error as it did with Ms. Habba's appointment but in triplicate. Therefore, Mr. Lamparello, Ms. Fox, and Mr. Fontecchio must be disqualified from supervising Mr. Naviwala's prosecution as must any Assistant United States Attorney acting pursuant to their authority or under their supervision individually or collectively in the guise of the Executive Office.[99] As this Court has previously held, "[i]f the facts should show that an AUSA is operating at the express direction of an official who is improperly appointed, the Court can validly bar them from doing so."[100] As the Executive Office is just as illegitimate as Ms. Habba, then no AUSA acting pursuant to its authority or direction may prosecute Mr. Naviwala. The same, of course, goes for Senior Counsel Lamparello individually. And as the Government's letter filed on

---

(updated Dec. 12, 2025), available at https://www.justice.gov/usao-nj/about/office-history.

[99] *See Giraud*, 2025 U.S. Dist. LEXIS 162451 at *74.

[100] *United States v. Giraud*, No. 1:24-cr-00768; No. 2:25-cr-00436, 2025 U.S. Dist. LEXIS 148014, *23, 2025 WL 2196794 (D.N.J. Aug. 1, 2025).

December 15, 2025, implies with Senior Counsel Lamparello's name now added to the ever-changing signature box carousel, that is exactly the case here.[101]

## VI. THE GOVERNMENT'S APPOINTMENTS CLAUSE VIOLATION IS PRESUMED PREJUDICIAL; MR. NAVIWALA IS *ENTITLED* TO A DECISION ON THE MERITS AND APPROPRIATE RELIEF

The Executive Office and its members were "unlawfully appointed in violation of 28 U.S.C. § 546 **and** the Constitution's Appointments Clause."[102] A statutory violation, after all, is tantamount to an Appointments Clause violation as the statutory scheme codifies the method for compliance with the Appointments Clause when, as here, there is a vacancy in a PAS office.[103] As argued in Part V, *supra*, the Executive Office and its members were designated in violation of 28 U.S.C. § 546, so their designations also are in violation of the Appointments Clause.

The Appointments Clause set forth within Article II, § 2, cl. 2 of the Constitution of the United States is not some mere rule of "etiquette or protocol."[104] Quite

---

[101] ECF Doc. 268.

[102] *United States v. James*, __ F.Supp.3d __, 2025 U.S. Dist. LEXIS 233031, *2, 2025 WL 3266931 (E.D. Va. 2025) (emphasis added).

[103] "The Vacancies Act generally provides 'the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate.'" Cong. Research Servs., "The Vacancies Act: A Legal Overview," *Scope and Operation of the Vacancies Act* (quoting 5 U.S.C. § 3347(a)), available at https://www.congress.gov/crs-product/R44997

[104] *Ryder v. United States*, 515 U.S. 177, 182 (1995).

to the contrary, the Appointments Clause embodies two fundamental principles inherent to our form of Government: separation of powers and checks and balances. While the President has the exclusive power to nominate and appoint principal officers such as United States Attorneys, that power is checked by the requirement that the Senate consent to any such appointment. Given the enormous power wielded by executive officers, this check is critical to preserving liberty.

"The [Appointments] Clause, like all of the Constitution's structural provisions, 'is designed first and foremost not to look after the interests of the respective branches, but **to protect individual liberty.**'"[105] The Appointments Clause "protect[s] individual liberty" by compelling the branches of government to work with each other in the exercise of their powers.[106] The Framers and Ratifiers of the Constitution understood that it was not enough to merely separate the powers of government in different branches. Maintenance of this separation also *required* "checks and balances."[107] These checks and balances enable each branch of government to enforce the separation and constitutional limit of power on the other

---

[105] *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 317 (2017) (Thomas, J., concurring) (emphasis added; quoting *NLRB v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring in judgment) (internal quotation marks and bracket omitted)).

[106] *See Clinton v. City of N.Y.*, 524 U.S. 417, 452 (1998) (Kennedy, J., concurring).

[107] *Perez v. Mortg. Bankers Ass'n*, 572 U.S. 92, 118 (2015) (Thomas, J., concurring in the judgment).

branches.

It is for this reason that the appointment of a principal officer requires the joint action of both the President and the Senate. Not only is this power of the Senate meant to be a check on the power of the President, but as even Alexander Hamilton noted, this provision in particular was meant to *reduce* the power of the President.[108]

Thus, "the President *must* obtain 'the Advice and Consent of the Senate' before appointing an 'Office[r] of the  United States.'"[109] To be sure, "the Appointments Clause is aimed at more than an abstract division of labor between the branches of government: '***The structural principles secured by the separation of powers protect the individual as well***.'"[110]

As the Third Circuit has explained:

> The importance of the Appointments Clause has been recognized since our nation's founding. In the colonial system, appointments were distributed in "support of  a despicable and dangerous system of personal influence," *The Federalist No. 77*, at 421 (Alexander Hamilton) (E.H.

---

[108] Alexander Hamilton, The Federalist No. 69 ("[T]here is no comparison between the intended power of the President and the actual power of the British sovereign. The one can perform alone what the other can do only with the concurrence of a branch of the legislature."), available at https://guides.loc.gov/federalist-papers/text-61-70#s-lg-box-wrapper-25493456.

[109] *NLRB v. Canning*, 573 U.S. 513, 518-519 (2014) (emphasis added; quoting U. S. Const., Art. II, §2, cl. 2).

[110] *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 156 (3d Cir. 2020) (emphasis added; quoting *Bond v. United States*, 564 U.S. 211, 222 (2011)).

Scott ed., 1894), that enabled officers to "harass our people, and eat out their substance," *The Declaration of Independence* para. 12 (U.S. 1776). Indeed, the "power of appointment to offices" was seen in the Founding Era as "the most insidious and powerful weapon of eighteenth century despotism." *Freytag v. Comm'r*, 501 U.S. 868, 883, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991) (quoting Gordon S. Wood, *The Creation of the American Republic 1776-1787* 79, 143 (1969)). By requiring that all "Officers of the United States" be appointed by the president, a head of department, or a court of law, see U.S. Const. art. II, § 2, cl. 2, our Founders sought to replace that "despicable and dangerous system," *The Federalist No. 77, supra*, at 421, with one that favored political accountability and neutrality, and our Supreme Court has upheld the protection of the Clause in various cases for the express purpose of "protec[ting] individual liberty," *NLRB v. Noel Canning*, 573 U.S. 513, 571, 134 S. Ct. 2550, 189 L. Ed. 2d 538 (2014) (Scalia, J., concurring) (citation omitted), and upholding the "principle of separation of powers," *Buckley v. Valeo*, 424 U.S. 1, 121, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976).[111]

Accordingly, to ensure "political accountability and neutrality,"[112] and to "protec[t] individual liberty,"[113] "[e]xecutive officials who have significant authority **must** be properly appointed."[114] After all, the Constitution's

structural provisions reflect the founding generation's deep conviction that checks and balances were the foundation of a structure of government that would protect liberty. It is for that reason that the claims of individuals— not of Government departments—have been the principal

---

[111] *Cirko*, 948 F.3d at 153-154.

[112] *Id.* at 154.

[113] *Bond*, 564 U.S. at 223.

[114] *Lofstad v. Raimondo*, 117 F.4th 493, 501 (3d Cir. 2024) (emphasis added).

> source of judicial decisions concerning separation of pow-
> ers and checks and balances. Those decisions all rest on
> the bedrock principle that the constitutional structure of
> our Government is designed first and foremost not to look
> after the interests of the respective branches, but to protect
> individual liberty.[115]

All this is to say that as "the separation of powers exists for the protection of individual liberty,"[116] "[a]n individual litigant need not show direct harm or preju-dice caused by an Appointments Clause violation. . . . *Such harm is presumed.*"[117] Moreover,

> one who makes a timely challenge to the constitutional va-
> lidity of the appointment of an officer who [prosecutes] his
> case is *entitled* to a decision on the merits of the question
> and whatever relief may be appropriate if a violation in-
> deed occurred. Any other rule would create a disincentive
> to raise Appointments Clause challenges with respect to
> questionable [prosecutor] appointments.[118]

## VII. APPOINTMENTS CLAUSE VIOLATIONS SO FUNDAMENTALLY IMPUGN THE INTEGRITY OF A CRIMINAL PROCEEDING THAT THEY CANNOT BE WAIVED AND WILL EVEN DEFEAT A COURT'S JURISDICTION

Section 516 of Title 28 of the United States Code provides that "the conduct of litigation in which the United States . . . is a party . . . is reserved to officers of

---

[115] *NLRB v. Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring, Rob-erts, C.J., Thomas and Alito, JJ., joining) (citation modified).

[116] *Id.*

[117] *Cirko*, 948 F.3d at 154 (emphasis added); *Intercollegiate Broad. Sys. v. Copyright Royalty Bd. & Librarian of Cong.*, 796 F.3d 111, 123 (D.C. Cir. 2015) (holding that "an Appointments Clause violation is a structural error that warrants reversal regardless of whether prejudice can be shown") (citing *Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000)).

[118] *Ryder v. United States*, 515 U.S. 177, 182-183 (1995) (emphasis added).

the Department of Justice, under the direction of the Attorney General." In turn, 28

U.S.C. § 547(1) provides that "each United States attorney, within his district, shall

prosecute for all offenses against the United States." Thus, only officers of the De-

partment of Justice—specifically, United States Attorneys—may prosecute of-

fenses within their respective districts. But they may only do so if properly ap-

pointed as this Court concluded in *Giraud*. Absent that, the Court does not even

have jurisdiction to proceed.[119]

So fundamental is the Appointments Clause to the integrity of a criminal

proceeding that, like jurisdiction itself, it cannot be waived.[120] That is because the

---

[119] *See United States v. Providence Journal Co.,* 485 U.S. 693, 708 (1988) (dismissing for lack of jurisdiction a writ of *certiorari* sought by a special prosecutor who lacked authorization from the Solicitor General); *United States v. Durham*, 941 F.2d 886, 891-93 (9th Cir. 1991) (if prosecution was conducted by Special Assistant United States Attorney who was not properly appointed and supervised, trial court lacked jurisdiction); *United States v. Garcia-Andrade*, No. 13-CR-993, 2013 U.S. Dist. LEXIS 110759, 2013 WL 4027859, at *5-9 (S.D. Cal. Aug. 6, 2013) (dismissing prosecution for lack of jurisdiction because prosecutor lacked active bar license as required by applicable statutes); *see also Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 664-665 (2019) (holding that Virginia House of Delegates was unauthorized to seek *certiorari* on behalf of Commonwealth and so had no standing; dismissing for lack of jurisdiction; citing *Providence Journal Co.*); *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) (holding that appellate court lacked jurisdiction to decide matter where appellant lacked standing; vacating and remanding with instructions to dismiss; citing *Providence Journal Co.*).

[120] The Government has repeatedly tried to impugn Mr. Naviwala for any delay caused in this case, and derided him for not waiving this issue and allowing sentencing to proceed. *See* ECF Doc. 252 (stating that "there would be no need to stay any aspect of this case if Naviwala waived the authority issue"). Mr. Naviwala, nor any individual, should ever be bullied into a waiver of fundamental rights.  More importantly, as argued here, the law is very clear: Mr. Naviwala

Appointments Clause "serves as 'an inseparable element of the constitutional system of checks and balances.'. . . To the extent that this structural principle is implicated in a given case, ***the parties cannot by consent cure the constitutional difficulty*** for the same reason that the parties by consent cannot confer on federal courts subject-matter jurisdiction."[121] Indeed,

> [t]he [Appointments] Clause, like all of the Constitution's structural provisions, "is designed first and foremost not to look after the interests of the respective branches, but to protect individual liberty." *NLRB v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring in judgment) (internal quotation marks and bracket omitted) It is therefore irrelevant that "the encroached-upon branch approves the encroachment." *Free Enterprise Fund*, *supra*, at 497, 130 S. Ct. 3138, 177 L. Ed. 2d 706 (internal quotation marks omitted). "***Neither Congress nor the Executive can agree to waive" the structural provisions of the Constitution any more than they could agree to disregard an enumerated right.*** *Freytag* v. *Commissioner*, 501 U.S. 868, 880, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991).[122]

Put more colorfully, "[n]o doubt there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is

---

could not waive these rights even if he wanted to.

[121] *CFTC v. Schor*, 478 U.S. 833, 850-51 (1986) (citation omitted); *see also Pacemaker Diagnostic Clinic v. Instromedix*, 725 F.2d 537, 543-44 (9th Cir. 1984) ("The component of the separation of powers rule that protects the integrity of the constitutional structure . . . cannot be waived by the parties.").

[122] *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 317-318 (2017) (Thomas, J., concurring) (emphasis added).

required by community feeling regardless of what the defendant wants or is willing to accept."[123] Likewise, "[a]bsent a proper representative of the Government . . . in this criminal prosecution, ***jurisdiction is lacking***."[124]

## VIII. AN INDEFINITE DELAY IN SENTENCING VIOLATES DUE PROCESS

As noted above, not only is prejudice presumed by an Appointments Clause violation, but it also renders a court without jurisdiction to proceed in the matter. Nonetheless, though he need not and does not waive the presumption, Mr. Navi-wala can independently establish significant and immediate prejudice from ongoing violations of his Fifth Amendment due process rights.

> ***Convicted defendants have a due process right to a speedy sentencing***. *See, e.g., Betterman v. Montana*, 578 U.S. 437, 447-48, 136 S. Ct. 1609, 194 L. Ed. 2d 723 (2016) (noting that at the sentencing stage "due process serves as a backstop against exorbitant delay"); *United States v. Lacerda*, 958 F.3d 196, 219 (3d Cir. 2020) (stating that "the convicted defendant maintains his due process rights" at the sentencing stage). To determine whether a defendant was deprived of this due process right, we consider: "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) any prejudice suffered by the defendant." *Lacerda*, 958 F.3d at 219-20. No factor is "necessary or sufficient" to find a due process deprivation, but rather they are "related

---

[123] *United States v. Mezzanatto*, 513 U.S. 196, 204 (1995) (internal quotation marks and citation omitted); *Wheat v. United States*, 486 U.S. 153, 154 (1988) (affirming district court's denial of defendant's "waiver of his right to conflict-free counsel and by refusing to permit [defendant's] proposed substitution of attorneys").

[124] *Providence Journal Co.,* 485 U.S. at 708 (emphasis added).

factors and must be considered together with such other circumstances as may be relevant." *Burkett v. Fulcomer*, 951 F.2d 1431, 1439 (3d Cir. 1991) ("Burkett II") (quoting *Barker v. Wingo*, 407 U.S. 514, 533, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)). Courts must therefore engage in a "difficult," "sensitive," and "fluid" "balancing" of the factors. *Id.* (quoting *Barker*, 407 U.S. at 533).[125]

As the Supreme Court long ago observed, "the time for sentence is of course not at the will of the judge. Rule 32(b)(1) of the Federal Rules of Criminal Procedure requires the imposition of sentence 'without unreasonable delay.'"[126] Rule 32(b)(1) currently provides that "[t]he court must impose sentence without unnecessary delay." This Rule provides "[t]he primary safeguard" against "undue delay" "between conviction and sentencing."[127] Nor is the time for sentencing at the will of the Government. Indeed, "the government's motive for the delay [in sentencing] plays an important role in determining whether a due process violation has occurred. . . . *[A]ny evidence that the delay was purposeful or due to bad faith would provide strong evidence of a due process violation*."[128]

Here, the indefinite delay in Mr. Naviwala's sentencing is solely a result of

---

[125] *United States v. Small*, No. 22-1469, 2023 U.S. App. LEXIS 17117, *7, 2023 WL 4399212 (3d Cir. July 7, 2023) (emphasis added).

[126] *Pollard v. United States*, 352 U.S. 354, 361 (1957) (quoting a prior iteration of FRCP 32(b)(1)).

[127] *Betterman*, 578 U.S. at 447.

[128] *United States v. Sanders*, 452 F.3d 572, 581 (6th Cir. 2006) (emphasis added; citations omitted).

the Government's refusal to abide by the FVRA and the Appointments Clause.

This is a problem strictly of the Government's own making—one which it inexcusably and steadfastly fails to properly remedy by simply appointing a duly nominated and confirmed U.S. Attorney. To be sure, despite his protestations to the contrary, the President has been able to nominate and have confirmed by the Senate his nominees for U.S. Attorney in districts within states with Democratic Senators.[129] The problem for the Government is not "blue slips" or politics or "activist judges", but that the President insists on nominating wholly unqualified individuals

---

[129] For example, Erin Creegan was confirmed by the Senate to be the U.S. Attorney for the District of New Hampshire, and Daniel Rosen was confirmed by the Senate to be the U.S. Attorney for the District of Minnesota. *See* U.S. Senate, Committee on the Judiciary, "Confirmed Nominations," available at https://www.judiciary.senate.gov/nominations/confirmed. Additionally, the Attorney General has been able to appoint individuals in districts within states with Democratic Senators who were subsequently appointed by the judges of that district to continue as the U.S. Attorney. *See, e.g.*, DOJ, U.S. Atty's Ofc. for the Dist. of Oregon, "Meet the United States Attorney" (updated Dec. 16, 2025) (stating that Scott E. Bradford was appointed by the Attorney General to be the U.S. Attorney on July 28, 2025, and then was appointed by the judges of that district on November 25, 2025), available at https://www.justice.gov/usao-or/staff-profile/meet-united-states-attorney; DOJ, U.S. Atty's Ofc. for the S.D.N.Y., "Meet the United States Attorney" (updated Aug. 27, 2025) (stating that Jay Clayton was appointed by the Attorney General to be the interim U.S. Attorney in April 2025, and then was appointed by the judges of that district in August 2025), available at https://www.justice.gov/usao-sdny/meet-us-attorney; DOJ, U.S. Atty's Ofc. for the Dist. of Ariz., "Meet the United States Attorney" (updated Aug. 27, 2025) (stating that Timothy Courchaine was appointed by the Attorney General to serve as the Interim United States Attorney for the District of Arizona on February 28, 2025, and the District Court of Arizona appointed him as U.S. Attorney on June 17, 2025.), available at https://www.justice.gov/usao-az/meet-us-attorney.

in some districts.

Be that as it may, the Government has had more than ample opportunity to follow the Constitution for the nearly ***five months*** since this issue was first raised in *Giraud*.[130] Indeed, "a court's holding that there has been an Appointments Clause violation does not mean that the violation cannot be remedied by a new, proper appointment."[131] But when the judges of this District appointed Desiree Leigh Grace as the United States Attorney under their statutory authority—which would have avoided the Appointments Clause violation altogether, the Government immediately thwarted that effort by firing Ms. Grace[132] and re-installing Ms. Habba in direct violation of the Appointments Clause.[133] And now it cynically continues its circumvention of law with the appointment of an unprecedented "Executive Office."

---

[130] *United States v. Giraud*, 1:24cr768, "First Motion to Dismiss and for Alternative Relief" (D.N.J. July 27, 2025), ECF Doc. 99.

[131] *Intercollegiate Broad. Sys. v. Copyright Royalty Bd. & Librarian of Cong.*, 796 F.3d 111, 124 (D.C. Cir. 2015).

[132] Ms. Grace has appealed her termination to the Merit Systems Protection Board calling it "completely unjustified." Justin Wise, *NJ Prosecutor Fired to Make Way for Alina Habba Files Appeal*, Bloomberg Law, Aug. 6, 2025, available at https://news.bloomberglaw.com/white-collar-and-criminal-law/new-jersey-judges-pick-for-top-prosecutor-challenges-firing.

[133] *See Judges Reject Trump's Pick for Top New Jersey Federal Prosecutor, DOJ Removes Successor*, Reuters, July 22, 2025, available at https://www.cnbc.com/2025/07/22/ judges-reject-trumps-pick-for-top-new-jersey-federal-prosecutor-doj-removes-successor.html.

Notwithstanding the considerable chaos that has ensued in this District, and this Court's well-reasoned decision in *Giraud* that was unanimously affirmed by the Third Circuit, the Government remains obstinate in its position that it need not comply with either the FVRA or the Appointments Clause. Such recalcitrance plainly evidences purposefulness on the part of the Government if not outright bad faith, especially now that it advances a position it previously claimed was absurd and indistinguishable from the theory it advanced with respect to Ms. Habba.

The Government has made the deliberate choice to grind the criminal justice system to a halt in order to subvert the very Constitutional protections designed to prevent this kind of abuse of power in the first place. This is not, after all, a case where the very ability of the Government to even prosecute an individual for a particular offense must be resolved before proceeding.[134] Nor does it involve a legal issue that even poses a "substantial question," i.e., "one that is 'fairly debatable' by 'jurists of reason'" especially in light of the Third Circuit's holding in *Giraud*.[135]

Rather, the President is blatantly usurping the role of the Senate by unilaterally electing to create from whole cloth some "Executive Office" without the

---

[134] *E.g.*, *United States v. Alvarez*, 567 U.S. 709 (2012) (Government appeal regarding constitutionality of Stolen Valor Act; holding Act infringed on speech protected by First Amendment).

[135] *Gayle v. Warden Monmouth Cty. Corr. Inst.*, 12 F.4th 321, 329 (3d Cir. 2021) (quoting *United States v. Smith*, 793 F.2d 85, 88-89 (3d Cir. 1986) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Senate's consent and over the Judiciary's objection to oversee prosecutions in this District, including that of Mr. Naviwala's.

The irony of this should not be lost on the Court. It was, after all, a violation of the Appointments Clause that resulted in the dismissal of a superseding indictment against the President himself for far more serious offenses than what Mr. Naviwala has been convicted of.

"On June 8, 2023, a grand jury in the Southern District of Florida returned an indictment . . . charging [then-]former President Trump with thirty-one counts of willful retention of national defense information in his Mar-a-Lago residence, in violation of 18 U.S.C. § 793(e)."[136] A superseding indictment later "increase[ed] the number of total charges to forty-two."[137] President Trump thereafter successfully brought an Appointments Clause challenge as to the Special Counsel who had been designated by the Attorney General to prosecute him.[138] As the district court framed the Appointments Clause violation, it was that the office of Special Counsel itself was invalid, i.e., "the problem is the absence of a statutorily created office to fill in the first place. As the Supreme Court has made clear, 'there can be no officer, either *de jure* or *de facto*, if there is no office to fill.'"[139] Thus, "***[a]ll actions***

_____

[136] *United States v. Trump*, 740 F. Supp. 3d 1245, 1254 (S.D. Fla. 2024).

[137] *Id.*

[138] *See id.*

[139] *Id.* at 1304 (quoting *Norton v. Shelby County*, 118 U.S. 425, 441 (1886)).

that flowed from [the Special Counsel's] defective appointment—including his seeking of the Superseding Indictment on which this proceeding currently hinges—were unlawful exercises of executive power."[140] Accordingly, "[b]ecause Special Counsel Smith's exercise of prosecutorial power has not been authorized by law, the Court sees no way forward aside from dismissal of the Superseding Indictment."[141] The exact same conclusion for the exact same reason holds here. This contrived "Executive Office" is just as unmoored from any statutory authority as was the Special Counsel's office in *Trump*.

Just as a criminal defendant does not have the absolute right to be represented by any particular individual,[142] neither does the Government even with the consent of the defendant.[143] Accordingly, that the Government continues to frivolously assert a non-existent right to unilaterally appoint whomever or whatever the President desires as United States Attorney in the face of depriving hundreds of defendants of due process—including Mr. Naviwala—unequivocally demonstrates the Government's bad faith, which this Court should not countenance a moment

---

[140] *Id.* at 1303 (emphasis added).

[141] *Id.* at 1302.

[142] *Wheat v. United States*, 486 U.S. 153, 159 (1988) ("The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects.").

[143] *See, e.g.*, *Mezzanatto*, 513 U.S. at 204 ("[T]here may be some evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably discrediting the federal courts.").

longer. "The Judicial Branch must be most vigilant in guarding the separation be-
tween the political powers precisely when those powers collude to avoid the struc-
tural constraints of our Constitution."[144] For, as the district court observed in
*Trump*, "'illegitimate and unconstitutional practices get their first footing . . . by si-
lent approaches and slight deviations from legal modes of procedure.'"[145]

## IX.    ADDITIONAL GROUNDS ESTABLISHING PREJUDICE AND DUE PROCESS VIO-LATIONS

### A.  *The Government's Conduct is Preventing Mr. Naviwala from Possible Vindication*

"The Due Process clause . . . protects not only against delays in trial, includ-
ing sentencing; it also guarantees a reasonably speedy appeal if the state has cho-
sen to give defendants the right to 'attempt[] to demonstrate that the conviction,
and the consequent drastic loss of liberty, is unlawful. Where post-verdict delays
not only impede sentencing but also the appeal as of right, the clause is doubly im-
plicated. Due process can be denied by any substantial retardation of the appellate
process."[146]

---

[144] *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 318 (2017) (Thomas, J., concur-
ring).

[145] *Trump*, 740 F. Supp. 3d at 1308-1309 (quoting *Boyd v. United States*, 116
U.S. 616, 635 (1886)).

[146] *Burkett v. Cunningham*, 826 F.2d 1208, 1221 (3d Cir. 1987) (citation
modified), rev'd on other grounds, *Betterman v. Montana*, 578 U.S. 437 (2016). To
be sure, *Burkett*'s due process jurisprudence is still good law. As the Court of Ap-
peals has observed,

As a result of the Government's Appointments Clause violation and its failure to ameliorate the same in any way, Mr. Naviwala is unable to obtain a possible acquittal from his pending Rule 29 motion. Likewise, he cannot appeal his conviction and sentence until he is sentenced. It therefore is cruelly ironic that Mr. Naviwala's right to appeal is being indefinitely and unnecessarily delayed as a result of the Government having exercised its own right to appeal, something it will absolutely do should it lose again. As noted above, this delay will be for several months at the very least, and likely for far longer, all the while with Mr. Naviwala's liberty constrained for days lost forever. Moreover, should Mr. Naviwala eventually be vindicated via his pending Rule 29 motion or on appeal, any resulting retrial also is

---

> We once recognized a right to a speedy sentencing hearing under both the Sixth Amendment and the Due Process Clause. *See Burkett v. Cunningham*, 826 F.2d 1208, 1219-21 (3d Cir. 1987). But the Supreme Court of the United States has since clarified that the Sixth Amendment guarantees a defendant the right to a speedy trial, not a speedy sentencing. *Betterman v. Montana*, 136 S. Ct. 1609, 1613, 194 L. Ed. 2d 723 (2016). "That does not mean, however, that defendants lack any protection against undue delay at [sentencing].*" Id.* at 1617. Federal Rule of Criminal Procedure 32(b)(1) requires courts to "impose sentence without unnecessary delay." *Id.* And, the Supreme Court noted, the convicted defendant maintains his due process rights. *Id.*
>
> Thus, while *Betterman* overruled our speedy sentencing precedent under the Sixth Amendment, our precedent under the Due Process Clause survives.

*United States v. Lacerda*, 958 F.3d 196, 219 (3d Cir. 2020).

being unnecessarily and indefinitely delayed, which risks spoliation of evidence and the availability of witnesses.[147]

Thus, it must be emphasized that the indefinite delay caused by the Government's Appointments Clause violation is wholly unnecessary. The Government can proceed with the prosecution at any time. It simply refuses to do so in a manner compliant with law.  Meanwhile, Mr. Naviwala is left in a legal limbo forced to suffer multiple, ongoing due process violations.

## B. Indefinite Home Confinement is Resulting in Irrevocable Loss of Liberty

Mr. Naviwala is already well into his *third year*—over 32 months—of defending himself against the Government's charges with no end in sight. For the 12-month period ending June 30, 2025, the median time from filing to disposition of felony matters in the District of New Jersey was only 15.4 months, and just 9.8 months nationwide.[148] Thus, Mr. Naviwala's case, which began on March 16, 2023, has already progressed over twice as long as a typical felony case within this

---

[147] *See Burkett*, 826 F.2d at 1225 (holding that "[d]ue process guarantees a criminal appellant certain minimum safeguards to make [any] appeal adequate and effective" and that defendant was "prejudiced by the monumental delay" which also "impaired" "defenses in case of reversal and retrial").

[148] *See* Administrative Office of U.S. Courts, United States District Courts, "National Judicial Caseload Profile" and "New Jersey Judicial Caseload Profile," available at https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile 0630.2025.pdf.

District, and over three times longer than a typical felony case nationwide. And now, due exclusively to the Government's second-round of Appointments Clause violations, resolution of Mr. Naviwala's case is being indefinitely delayed as a result of the Government's frivolous conduct and refusal to follow the law.

But if that were not enough, Mr. Naviwala has been on home confinement for nearly ten months already. While being housed in a detention center is without question more restrictive than home confinement, home confinement still constitutes a significant restriction on liberty. After all, "[i]t is technically a jail sentence in your home."[149] And to state the obvious, home confinement "is more restrictive than probation,"[150] which itself "substantially restrict[s] . . . liberty."[151]

In fact, home confinement is often imposed by courts as well as the Bureau of Prisons as an alternative to incarceration on a one-to-one basis; meaning, every day of home confinement is considered the equivalent of one day of incarceration for purposes of sentencing.[152] Thus, in effect, Mr. Naviwala has *already* served

---

[149] *United States v. Donohue*, No.3:22-cr-253, 2024 U.S. Dist. LEXIS 216298, *16 n.4, 2024 WL 4905979 (M.D. Pa Nov. 27, 2024).

[150] *Id.*

[151] *Gall v. United States*, 552 U.S. 38, 48 (2007).

[152] *See* USSG §§5C1.1(e)(3)(substituting "[o]ne day of home detention for one day of imprisonment"); 5F1.2 ("Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment."); 18 U.S.C. § 3624(c)(2) (directing the BOP to place prisoners on home confinement for up to six months as part of prerelease custody).

more than the median sentence imposed for extortion/racketeering offenses on those, like him, in Criminal History Category ("CHC") I (seven months) and for fraud/theft/embezzlement offenses also in CHC I (seven months).[153] Unfortunately for Mr. Naviwala, none of this time will ever be credited against any sentence ultimately imposed on him.[154]

Thus, every day he has served and will continue to serve on home confinement is dead time—it is a loss of liberty he will never recover that cannot be credited toward any eventual sentence.[155] All that irrevocable loss of liberty solely because the Government refuses to comply with the law is appalling.

## X.    Dismissal with Prejudice is the Only Remedy Available

As embodied in Fed. R. Crim. Proc. 48(b), this Court has the inherent authority to dismiss the Indictment due to the Government's failure to prosecute.[156] Moreover, in criminal cases, a federal court may use its "supervisory powers" to

---

[153] *See* U.S. Sentencing Commission, *2024 Sourcebook of Federal Sentencing Statistics*, tbl. 27, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2024/Table27.pdf.

[154] *West v. Warden Fort Dix FCI*, 740 Fed. Appx. 237, 238 (3d Cir. 2018) ("prior to sentencing, defendants who are released on bail to detention in a residential re-entry center or to home confinement with electronic monitoring are not in 'official detention' within the meaning of § 3585(b)") (citations omitted); *Reno v. Kay*, 515 U.S. 50, 64 (1995).

[155] *Id.*

[156] *See United States v. Dreyer*, 533 F.2d 112, 113 n.1 (3d Cir. 1976) ("Rule 48(b) is a . . . restatement of the court's inherent power to dismiss a case simply for want of prosecution.").

"implement a remedy" aimed at vindicating "recognized rights" and "deter[ring] illegal conduct."[157]

A court's exercise of its inherent authority (1) "must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice;" and (2) "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute."[158] Thus, "a court may dismiss an indictment . . . only if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice."[159]

It is hard to imagine greater "misconduct" than a willful, ongoing constitutional violation that goes to the heart of our form of government. Moreover, as noted above, prejudice here is presumed as a result of the Government's violation of the Appointments Clause. While Mr. Naviwala is presumed prejudiced, the extent of any prejudice needed to warrant dismissal of an indictment has been found

---

[157] *United States v. Hasting*, 461 U.S. 499, 505 (1983).

[158] *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Degen v. United States*, 517 U.S. 820, 823-24 (1996)).

[159] *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019); *see also Hunt v. United States*, 456 F.2d 582, 584 (3d Cir. 1972) ("An indictment should not be dismissed unless there has been deliberate or oppressive action by law enforcement officials."); *cf. Trump*, 740 F. Supp. 3d at 1307 ("'Across remedial contexts, the nature of the violation determines the scope of the remedy.'") (Quoting *Off. of the United States Tr. v. John Q. Hammons Fall 2006, LLC*, 602 U.S. 487, 494 (2024) (internal quotation marks and citation omitted)).

to be relatively modest even in non-Appointment Clause contexts.

For example, in *United States v. Jiang*, 214 F.3d 1099 (9th Cir. 2000), the prosecutor for the Government was unable to appear for trial and no other prosecutor in that office was available. Thus, on the day of trial, the district court dismissed the indictment. "[T]he court concluded that Defendants would be substantially prejudiced by postponing their trials . . . because such a postponement would result in their spending approximately ***one month*** of additional time in jail before trial."[160] While the Ninth Circuit affirmed the dismissal, it reversed and remanded with an order to enter the dismissal without prejudice.[161] In so doing, the Ninth Circuit noted that "dismissal with prejudice under Rule 48(b) is an extreme sanction that is 'appropriate only where there is delay that is purposeful or oppressive.'"[162] In that regard, "[i]t is well accepted that any purposeful or oppressive delay on the part of the government is unjustifiable and clearly 'unnecessary.'"[163] As argued above, the delay resulting from the Government's Appointments Clause violations is both purposeful and oppressive.

---

[160] *Id.* at 1102 (emphasis added).

[161] *Id.* at 1103.

[162] *Id.* (quoting *United States v. Sears*, 877 F.2d 734, 739 (9th Cir. 1989)(citation omitted)).

[163] *United States v. Hern*, 331 F. Supp. 472, 474 (E.D. PA 1971) (quoting *Dickey v. Florida*, 398 U.S. 30, 51 (1970)); *Pollard v. United States*, 352 U.S. 354, 361 (1957) ("delay must not be purposeful or oppressive").

"The normal remedy for a due process violation is not discharge; rather, a court faced with a violation should attempt to counteract any resulting prejudice demonstrated by a petitioner. However, discharge is warranted where attempting an alternate remedy would not vitiate the prejudice of the fundamental unfairness or would itself violate a petitioner's constitutional rights."[164]

"In exceptionally egregious circumstances, a delay itself may 'violate[] those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' . . . and which define 'the community's sense of fair play and decency.'"[165] "Once the time that constitutes the delay has elapsed no remedy can call it back. Where delay is so extreme as to assume constitutional proportions, discharge thus becomes less of an unlikely remedy. Moreover, discharge is a generally available remedy where lesser remedies prove ineffective in curbing a continuing due process violation."[166]

While not required, Mr. Naviwala has nevertheless established substantial, ongoing prejudice that warrants dismissal.[167] In light of the "exceptionally

---

[164] *Burkett v. Cunningham*, 826 F.2d 1208, 1221-1222 (3d Cir. 1987) (citations omitted).

[165] *Id.* at 1222 (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (citations omitted)).

[166] *Id.* (citing *inter alia Lane v. Brown*, 372 U.S. 477, 485 (1963)).

[167] *See Virgin Islands v. Allick*, D.C. Crim. App. No. 2004/093, 2004/092, 2004/091, 2006 U.S. Dist. LEXIS 76252, *16, 48 V.I. 503, 511 (D.V.I. App. Div. Sept. 22, 2006) ("house arrest and electronic monitoring is a loss of liberty which

egregious circumstances" presented by the Government's purposeful, oppressive and continuing Appointments Clause violation, as well as its failure to take any ameliorative measures, the only remedy available to this Court is dismissal of the Superseding Indictment *with prejudice*.

> One who makes a timely challenge to the constitutional validity of the appointment of an officer . . . is entitled to relief. In such cases, which necessarily involve a Government actor's exercise of power that the actor did not lawfully possess, the proper remedy is invalidation of the *ultra vires* action. Invalidation follows directly from the government actor's lack of authority to take the challenged action in the first place. That is, winning the merits of the constitutional challenge is enough. . . .
>
> Here, . . . the appropriate remedy is invalidation of the officer's *ultra vires* acts. . . . All actions that flow[] from h[er] defective appointment . . . [are] unlawful exercises of executive power. Because [the prosecutor] cannot wield executive power except as Article II provides, h[er] attempts to do so are void and must be unwound. . . . [A]ny actions taken by [the prosecutor] are *ultra vires* and the . . . Indictment must be dismissed. . . . [T]he Court sees no alternative course to cure the unconstitutional problem.[168]

Thus, as the Executive Office's "exercise of prosecutorial power has not been authorized by law," there is "no way forward aside from dismissal of the Superseding

---

may constitute prejudice warranting dismissal under [Fed. R. Crim. Proc.] 48") (citing *United States v. Taylor*, 487 U.S. 326, 340 (1988)).

[168] *United States v. Trump*, 740 F. Supp. 3d 1245, 1302-1303 (S.D. Fla. 2024) (citation modified; citations omitted).

Indictment.["169]

Here, even if there were no exceptionally egregious circumstances—and, to be sure, there are—any dismissal must still be with prejudice as Mr. Naviwala was acquitted of two counts, convicted of six, with the remaining two counts themselves previously dismissed with prejudice. It is black letter law that under no circumstances may he be tried again on those same counts.[170]

## CONCLUSION

Mr. Naviwala fully appreciates the significance of the relief he seeks in light of the jury verdict rendered against him (but also for him). However, the magnitude of the relief requested appropriately flows from the magnitude of the Government's direct assaults on due process and the foundations of our form of Government: separation of powers and checks and balances.

The Appointments Clause is, ultimately, the key structural safeguard of individual liberty that the Government continues to ignore at its peril. Just as the exclusionary rule was developed to curb Governmental abuse of an individual's liberty

---

[169] *Id.* at 1302.

[170] *Gamble v. United States*, 587 U.S. 678, 681 (2019) ("[T]he Double Jeopardy Clause of the Fifth Amendment . . . provides that no person may be 'twice put in jeopardy' 'for the same offence.'. . . [A]t its core, the Clause means that those acquitted or convicted of a particular 'offence' cannot be tried a second time for the same 'offence.'"); *Martinez v. Illinois*, 572 U.S. 833, 834 (2014) ("Our cases have repeatedly stated the bright-line rule that jeopardy attaches when the jury is empaneled and sworn.") (Internal quotation marks and citation omitted).

interests protected by the Fourth Amendment,[171] dismissal of the Superseding Indictment here will also serve as a check on Governmental abuse of an individual's liberty interests protected by the Fifth Amendment.[172] Thus, "rectifying . . . and correcting Appointments Clause violations in cases such as this one provides a suitable incentive to make such challenges"[173] to ensure the Judiciary fulfills its duty to check the Executive and, in so doing, protect individual liberty.

The Government's purposeful, oppressive, and bad faith conduct has resulted in continuing violations of Mr. Naviwala's due process rights, which leaves this Court with no other option than dismissal of the Superseding Indictment with prejudice.[174] In the words of Justice Gorsuch during a recent oral argument: "The government's made its bed. Why shouldn't we let them lie in it?"[175]

---

[171] *Davis v. United States*, 564 U.S. 229, 236-237 (2011) ("The rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations.").

[172] *See United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987) (explaining a court may dismiss an indictment when government misconduct creates a due process violation and to deter illegality and  protect judicial integrity).

[173] *Ryder v. United States*, 515 U.S. 177, 186 (1995).

[174] *See Trump*, 740 F. Supp. 3d at 1303 ("the Court sees no alternative course to cure the unconstitutional problem").

[175] *Ellingburg v. United States*, 24-482, Oral Arg. Trans. at 65:16-18 (Oct. 14, 2025), available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-482_j5fl.pdf.

IN LIGHT OF THE ABOVE, Mr. Naviwala respectfully requests that this honorable Court grant the instant motion, disqualify the Government's counsel, dismiss the Superseding Indictment with prejudice, and enjoin any Government attorney subject to disqualification from filing anything further in this matter.

RESPECTFULLY SUBMITTED,

Dated:  December 24, 2025.

DOUG PASSON

/s/ DOUG PASSON
Attorney for Defendant
RAHEEL NAVIWALA

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2025, the foregoing DEFENDANT'S OMNIBUS MOTION TO DISMISS SUPERSEDING INDICTMENT WITH PREJUDICE AND DISQUALIFY COUNSEL was filed electronically and a copy was served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Doug Passon
DOUG PASSON