### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAHEEL NAVIWALA,<br>       Defendant | Crim. No. 24-099 (MWB) |
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL TORRES,<br>       Defendant | Crim. No. 24-378 (MWB) |

### CONSOLIDATED BRIEF OPPOSING MOTIONS TO DISQUALIFY GOVERNMENT COUNSEL AND DISMISS SUPERSEDING INDICTMENTS

Todd Blanche
U.S. Deputy Attorney General

Philip Lamparello
Senior Counsel

Mark E. Coyne
Supervisory Assistant U.S. Attorney
Chief, Appeals Division
U.S. Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102
(973) 297-2002

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ........................................................................ 1

BACKGROUND ......................................................................... 2

    A.    Authority in the Department of Justice Flows from the Attorney General.................................................................. 2

    B.    The USAO-NJ's Current Supervisory Structure. ............................... 5

    C.    The Prosecution of These Two Cases. ............................................ 7

ARGUMENT .......................................................................... 11

I.    The USAO-NJ's Current Supervisory Structure Violates Neither the FVRA Nor the Appointments Clause. .......................................... 11

    A.    No One in the USAO-NJ Has Been Delegated All the Powers of a U.S. Attorney...................................................... 13

    B.    The Attorney General Appointed Ms. Fox and Messrs. Lamparello and Fontecchio in a Manner Consistent with the Appointments Clause............................................. 16

    C.    The Defendants' Arguments to the Contrary All Fail................ 17

II.    None of the Relief the Defendants Seek Is Warranted for the "Violations" They Allege. ................................................... 32

    A.    No Disqualifications Are Warranted Here, and Certainly Not Ones As Broad As the Defendants Demand. ............................ 33

    B.    There Is No Basis to Dismiss Naviwala's Superseding Indictment.................................................................. 35

    C.    There Is No Basis to Dismiss Torres's Superseding Indictment Either. ...................................................................... 42

CONCLUSION ........................................................................ 47

## TABLE OF AUTHORITIES

<u>**Cases**</u> <u>**Page(s)**</u>

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
   35 F.4th 1328 (Fed. Cir. 2022) ..........................................................40, 41

*Bank of Nova Scotia v. United States*,
   487 U.S. 250 (1988) ........................................................................... 45

*Berkowitz v. United States*,
   90 F.2d 881 (8th Cir. 1937) ................................................................ 40

*Betterman v. Montana*,
   578 U.S. 437 (2016) ........................................................................... 37

*Burkett v. Fulcomer*,
   951 F.2d 1431 (3d Cir. 1991)............................................................. 38

*Costello v. United States*,
   350 U.S. 359 (1956) ........................................................................... 45

*Edmond v. United States*,
   520 U.S. 651 (1997) ........................................................................... 16

*Ex parte United States*,
   101 F.2d 870 (7th Cir. 1939) ............................................................. 40

*Fleming v. Mohawk Wrecking & Lumber Co.*,
   331 U.S. 111 (1947) ........................................................................... 20

*Freytag v. C.I.R.*,
   501 U.S. 868 (1991) ........................................................................... 23

*In re ESML Holdings Inc.*,
   135 F.4th 80 (3d Cir. 2025) ............................................................... 30

*In re Persico*,
   522 F.2d 41 (2d Cir. 1975) .............................................................. 2, 25

*Jones v. Mississippi*,
   593 U.S. 98 (2021).............................................................................. 28

*Kajmowicz v. Whitaker,*
　42 F.4th 138 (3d Cir. 2020) ................................................................. 20

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.,*
　337 F.3d 314 (3d Cir. 2003)................................................................. 30

*Lott v. United States,*
　309 F.2d 115 (5th Cir. 1962) ............................................................... 40

*Louisiana. Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor,*
　745 F.3d 653 (3d Cir. 2014)................................................................. 20

*Lucia v. SEC,*
　585 U.S. 237 (2018) ................................................................. 4, 23, 24

*McGrain v. Daugherty,*
　273 U.S. 135 (1927)................................................................... 14, 19

*MD Mall Assocs., LLC v. CSX Transp., Inc.,*
　715 F.3d 479 (3d Cir. 2013)................................................................. 31

*New Hampshire v. Maine,*
　532 U.S. 742 (2001) ........................................................................ 31

*Peretz v. United States,*
　501 U.S. 923 (1991) ........................................................................ 23

*Pollard v. United States,*
　352 U.S. 354 (1957) ........................................................................ 40

*Ryder v. United States,*
　515 U.S. 177 (1995) ........................................................................ 23

*Stirone v. United States,*
　361 U.S. 212 (1960) ........................................................................ 45

*Texas v. United States,*
　523 U.S. 296 (1999) ........................................................................ 31

*United States v. Arthrex, Inc.,*
　594 U.S. 1 (2021)............................................................................ 16

*United States v. Baldwin,*
    541 F. Supp. 2d 1184 (D.N.M. 2008) ........................................................ 21

*United States v. Bolden,*
    353 F.3d 870 (10th Cir. 2003) ........................................................... 33, 34

*United States v. Caggiano,*
    660 F.2d 184 (6th Cir. 1981) ................................................................. 33

*United States v. Colon-Munoz,*
    192 F.3d 210 (1st Cir. 1999) ................................................................. 22

*United States v. Crosthwaite,*
    168 U.S. 375 (1897) ............................................................................. 2

*United States v. Fitzhugh,*
    78 F.3d 1326 (8th Cir. 1996) ................................................................. 22

*United States v. Gantt,*
    184 F.3d 987 (9th Cir. 1991) ................................................................. 22

*United States v. Giraud,*
    160 F.4th 390 (3d Cir. 2025) .......................................................*passim*

*United States v. Giraud,*
    795 F. Supp. 3d 560 (D.N.J. 2025) ...............................................*passim*

*United States v. Giraud,*
    2025 WL 2196794 (D.N.J. Aug. 1, 2025)..........................................*passim*

*United States v. Gussie,*
    51 F.4th 535 (3d Cir. 2022) ................................................................. 45

*United States v. Hilario,*
    218 F.3d 19 (1st Cir. 2000) ................................................................. 21

*United States v. Lacerda,*
    958 F.3d 196 (3d Cir. 2020)......................................................... 37, 38, 39

*United States v. Lingala,*
    91 F.4th 685 (3d Cir. 2024) ................................................................. 34

*United States v. Nixon*,
    418 U.S. 683 (1974) ............................................................................. 17

*United States v. Pelullo*,
    399 F.3d 197 (3d Cir. 2005)................................................................. 31

*United States v. Prueitt*,
    540 F.2d 995 (9th Cir. 1976) .............................................................. 25

*United States v. Shah*,
    43 F.4th 356 (3d Cir. 2022) ................................................................ 33

*United States v. Small*,
    No. 22-1469, 2023 WL 4399212 (3d Cir. July 7, 2023) .................... 38

*United States v. Smith*,
    962 F.3d 755 (4th Cir. 2020) .........................................................16, 45

*United States v. Suescun*,
    237 F.3d 1284 (11th Cir. 2001)........................................................... 22

*United States v. Tanner*,
    544 F.3d 793 (7th Cir. 2008) .............................................................. 40

*United States v. Trump*,
    740 F. Supp. 3d 1245 (S.D. Fla. 2024)...........................................36, 37

*United States v. Vastola*,
    989 F.2d 1318 (3d Cir. 1993)............................................................. 30

*United States v. Vlahos*,
    33 F.3d 758 (7th Cir. 1994) ................................................................ 33

*United States v. Whittaker*,
    268 F.3d 185 (3d Cir. 2001)............................................................... 33

*United States v. Williams*,
    68 F.4th 564 (9th Cir. 2023) .............................................................. 33

*United States v. Williams*,
    504 U.S. 36 (1992)............................................................................. 45

*United States v. Winston*,
   170 U.S. 522 (1898) ................................................................ 2

*United States v. Wright*,
   913 F.3d 364 (3d Cir. 2019)...................................................... 42

*United States v. Wrigley*,
   520 F.2d 362 (8th Cir. 1975) .................................................... 25

*Vermont v. Brillon*,
   556 U.S. 81(2009)...................................................................... 38

## **Constitutional, statutory and regulatory provisions**

U.S. Const. Art. II, § 2, cl. 2 ....................................................... 16

5 U.S.C. § 315............................................................................... 3

5 U.S.C. § 3101............................................................................. 5

5 U.S.C. § 3347.......................................................................... 6, 15

5 U.S.C. § 3347(a) ...................................................................... 5, 15

5 U.S.C. § 3347(b).......................................................................15, 26

5 U.S.C. § 3348............................................................................ 14

5 U.S.C. § 3349(b) ....................................................................... 29

21 U.S.C. § 851 ........................................................................... 11

21 U.S.C. § 841(a)(1)...................................................................10, 11

21 U.S.C. § 841(b)(1)(C).............................................................10, 11

21 U.S.C. § 846 ...........................................................................10, 11

28 U.S.C. § 503........................................................... 4, 12, 17, 18

28 U.S.C. § 509.......................................................... 2, 4, 12, 18

28 U.S.C. § 510...........................................................................*passim*

28 U.S.C. § 515(a)........................................................................*passim*

28 U.S.C. § 515(b).................................................................. 3

28 U.S.C. § 518(b)...........................................................*passim*

28 U.S.C. § 541......................................................... 4, 14, 18

28 U.S.C. § 541(a)......................................................1, 4, 18

28 U.S.C. § 542.................................................... 3, 4, 12, 17

28 U.S.C. § 542(a)............................................................... 22

28 U.S.C. § 546...........................................................*passim*

28 U.S.C. § 546(a)................................................................. 5

28 U.S.C. § 546(c)(2)........................................................... 32

28 U.S.C. § 546(d)................................................................ 1

28 U.S.C. § 547......................................................19, 20, 21, 25

An Act to establish the Department of Justice, § 1, 16 Stat. 162 (1870) ...........2

Pub. L. No. 71-133.............................................................. 3

Pub. L. No. 80-773.............................................................. 3

28 C.F.R, § 0.1..................................................................... 3

28 C.F.R. § 0.15(a).........................................................17, 35

**<u>Rules</u>**

Fed. R. Crim. P. 1(b)(1)..................................................... 43

Fed. R. Crim. P. 7(c)......................................................... 43

Fed. R. Crim. P. 12(b)(3).................................................... 42

Fed. R. Crim. P. 32(b)(1).................................................... 40

Fed. R. Crim. P. 32(b)(2).................................................... 40

Fed. R. Crim. P. 48(b)....................................................... 41

## INTRODUCTION

When there is a vacancy in the office of U.S. Attorney, and no one can serve as Acting U.S. Attorney under the Federal Vacancies Reform Act or has been appointed interim U.S. Attorney, the office's work need not grind to a halt. Instead, the Attorney General and her delegees are fully empowered to continue that "critical" and "important" work, which is "vital in keeping our communities safe." *United States v. Giraud*, 160 F.4th 390, 393 (3d Cir. 2025).

After the Court of Appeals affirmed this Court's conclusion that Alina Habba" could not lead the U.S. Attorney's Office (USAO-NJ) as Acting U.S. Attorney or through being "delegated the full scope of powers of an Acting U.S. Attorney," *id.*, Ms. Habba stepped down. The Attorney General then established a new supervisory structure for the USAO-NJ that both complies with this Court's and the Third Circuit's decisions and provides "the citizens of New Jersey and the loyal employees in the U.S. Attorney's Office" with "clarity and stability." *Id.*

Defendants Raheel Naviwala and Daniel Torres, however, maintain the Attorney General's efforts aren't good enough. According to them, delegating her own authority to three different Department of Justice officials so that each can perform only some, not all, of a U.S. Attorney's supervisory duties violates multiples statutes and the Appointments Clause. They are wrong. And the relief they seek—broad disqualification orders and dismissal of superseding indictments returned by valid grand juries—wouldn't be proper even if they were right. Their motions should be denied.

**BACKGROUND**

**A.    Authority in the Department of Justice Flows from the Attorney General.**

In 1870, Congress established the Department of Justice with the Attorney General at its head. *See* An Act to establish the Department of Justice, § 1, 16 Stat. 162 (1870). The Act granted the Attorney General plenary authority over the new Department, authorizing him to "require any solicitor or officers of the Department of Justice to perform any duty required of said Department or any officer thereof." *Id.* § 14, 16 Stat. at 164. With exceptions not relevant here, that plenary authority remains today, 28 U.S.C. § 509, and can be generally delegated to subordinates, *id.* § 510.

Because the 1870 Act centralized the federal government's legal work in the Department of Justice, *id.* § 3, 16 Stat. at 162, it also provided for the hiring of "specially retained" attorneys "under the authority of the Department of Justice," § 17, 16 Stat. at 164–165, although it required a certification by the Attorney General that their services were necessary before paying them, *id.*; *see In re Persico*, 522 F.2d 41, 57–58 (2d Cir. 1975). The restriction was pecuniary: the Act limited only the Attorney General's discretion to *pay* these special attorneys, not to appoint them. *United States v. Crosthwaite,* 168 U.S. 375, 379–80 (1897) ("full power to employ counsel for the United States"); *United States v. Winston,* 170 U.S. 522, 524–25 (1898) ("the attorney general ... shall have the control and management, or, if he deems it essential, employ special counsel").

The Attorney General's authority to appoint "specially retained" attorneys or "special counsel" continued into the 20th century. In 1930, Congress amended 28 U.S.C. § 515(b)'s precursor (then codified at 5 U.S.C. § 315) to allow appointment of "special attorneys" as well as "special assistants to the Attorney General." *See* Pub. L. No. 71-133, 46 Stat. 170. Congress stylistically amended the statute in 1948. *See* Pub. L. No. 80-773, § 3, 62 Stat. 869, 985–86. But in all those years, Congress never questioned the Attorney General's authority to appoint attorneys and delegate powers to them.

Today, the Department of Justice employs more than 10,000 attorneys.[1] Thousands of those attorneys are AUSAs appointed under 28 U.S.C. § 542 to serve in one of the U.S. Attorney's Offices around the country, but thousands more work elsewhere in the Department—including the Criminal Division, Civil Division, National Security Division, Antitrust Division, Civil Rights Division, Office of the Solicitor General, Office of Legal Policy, and Office of Legal Counsel, among many others. The U.S. Attorney's Offices are but one part of that larger DOJ whole.

All these DOJ attorneys derive their authority from the Attorney General. Under the statutes in force today, the Attorney General remains "the head of the Department of Justice." 28 U.S.C. § 503. She is vested with "[a]ll functions" of the other officers, agencies, and employees of DOJ, with narrow

---

[1] *See* 28 C.F.R. § 0.1; *see also* DOJ Organization Chart, Sept. 15, 2025, https://www.justice.gov/d9/2025-09/Departmental%20Organizational%20Chart%202025%20-%20508.pdf; Office of Attorney Recruitment and Mgmt., https://www.justice.gov/oarm/about-office.

exceptions not relevant here. *Id.* § 509. Her subordinate officers include the Deputy Attorney General, *id.* § 504, the Associate Attorney General, *id.* § 504a, the Solicitor General, *id.* § 505, the Assistant Attorneys General, *id.* §§ 506-507A, and U.S. Attorneys who conduct litigation in the 94 judicial districts, *id.* § 541. She can conduct *any* legal proceeding that a U.S. Attorney can. *Id.* § 515(a). She has general authority to conduct and supervise *all* litigation on behalf of the United States. *See id.* §§ 516–519. And she has—as have her predecessors for more than a century—the authority to appoint various attorneys to carry out the Department's functions, including: "special attorneys" and "special assistants to the Attorney General," § 515; AUSAs, § 542; special attorneys to assist U.S. Attorneys, § 543; and "officials" to "detect and prosecute crimes against the United States," *id.* 533(1).

The Attorney General's power to delegate the performance of "any" of her myriad functions necessarily encompasses the ability to delegate functions involving the exercise of "significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 585 U.S. 237, 245 (2018). Such a delegation may take many forms, including the creation of a new "continuing" position, *see id.*, or the assignment of the Attorney General's duties to any "officer" or "employee," *see* 28 U.S.C. § 510, including one newly hired for that purpose, *see* 5 U.S.C. § 3101. Similarly, the Attorney General may "specifically direct[]" any DOJ officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding, civil or criminal," that "United States attorneys are authorized by law to conduct." 28 U.S.C. § 515(a); *see also* § 518(b).

– 4 –

**B.     The USAO-NJ's Current Supervisory Structure.**

In *Giraud* and *Pina*, this Court addressed Alina Habba's leadership role in the USAO-NJ. *See United States v. Giraud*, 795 F. Supp. 3d 560 (D.N.J. 2025). This Court concluded that Ms. Habba's term as interim U.S. Attorney expired on July 1, 2025. This Court also concluded that Ms. Habba's July 24, 2025 appointment as Special Attorney and designation as First Assistant U.S. Attorney (FAUSA) did not make her eligible to be Acting U.S. Attorney under the Federal Vacancies Reform Act of 1998 (FVRA). And this Court concluded that the Attorney General's delegation of authority to Ms. Habba to do anything a U.S. Attorney could do violated the FVRA's exclusivity provision (5 U.S.C. § 3347(a)). *See Giraud*, 795 F. Supp. 3d at 578–604.

Accordingly, this Court disqualified Ms. Habba (and anyone acting under her supervision and authority) from the *Giraud* and *Pina* cases. *Giraud*, 795 F. Supp. 3d at 606. This Court stayed that order, however, pending the resolution of the Government's appeal. *Id.* On December1 1, 2025, the Court of Appeals issued a precedential opinion affirming this Court's order. *See United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025). The Court of Appeals agreed that Ms. Habba could not serve as Acting U.S. Attorney and that her delegation violated § 3347.

In response to that decision, on December 8, 2025, Ms. Habba resigned from the USAO-NJ, NDE268-1,[2] and was appointed Senior Advisor to the

---

[2] "NDE__" and "TDE__" refer to the corresponding docket entry in *Naviwala* and *Torres*, respectively, using the pagination of the header on that entry.

Attorney General for U.S. Attorneys, NE268 at 1;. In her new position, Ms. Habba no longer supervises the USAO-NJ on a day-to-day basis. *Id.* Nor does she supervise any AUSAs in the USAO-NJ, including those assigned to these two cases. *Id.* Instead, Ms. Habba may from time-to-time exercise supervision over specific cases or issues in the District of New Jersey, as with any other district and no different than many other supervisors at Main Justice. *Id.* She is not a "shadow U.S. Attorney." NDE281 at 18 n.54, 22.

To ensure continuity of leadership while the Department considers next steps in the *Giraud* and *Pina* litigation, the Attorney General designated three officials to supervise the USAO-NJ. NDE268 at 1; NDE268-2 at 1. The Attorney General approved the prior appointment of Philip Lamparello as Senior Counsel and authorized him "to supervise or conduct the work of" the USAO-NJ's Criminal and Special Prosecutions Divisions, including these two cases. NDE268-2, at 1. The Attorney General appointed the other officials as Special Attorney (Jordan Fox) and Executive Assistant U.S. Attorney (Ari Fontecchio) and authorized them "to supervise or conduct the work of" the USAO-NJ's Appeals and Civil Divisions (Ms. Fox) and Administrative Division (Mr. Fontecchio).[3]

---

[3] Ms. Fox also serves as the Chief of Staff to the Deputy Attorney General and an Associate Deputy Attorney General. Mr. Fontecchio, on the other hand, has been an AUSA in the USAO-NJ since 2016, became a Unit Chief in 2023, and in September 2025 began serving as an Acting Deputy Chief in the Criminal Division.

Following Ms. Habba's resignation, this Court transferred back to the originally assigned district judges a slew of cases in which defendants had challenged (through motions to dismiss or disqualify) Ms. Habba's authority to lead the USAO-NJ. Although those motions had not become moot in the strict doctrinal sense, it made no sense for this Court to retain the cases given that Ms. Habba was no longer leading the USAO-NJ. Since then, only a handful of defendants have expressed interest in challenging the USAO-NJ's current leadership structure, and only two defendants—Raheel Naviwala and Daniel Torres—have done so by formal motion to disqualify or dismiss.

## C.    The Prosecution of These Two Cases.

*Raheel Naviwala.* From 2017 to 2019, Naviwala defrauded health insurers by submitting or causing the submission of claims for durable medical equipment ("DME") without regard to medical necessity. *See* NDE234, PSR ¶ 35. The fraud and kickback scheme caused insurers—including federal health care programs such as Medicare and Tricare—to pay more than $100 million in reimbursements for fraudulent DME. PSR ¶ 70. Naviwala personally received at least $10 million through the scheme. PSR ¶ 63.

In March 2023, Naviwala was charged by complaint. NDE1. Following his April 2024 initial appearance, *see* NDE7, Naviwala through his then-retained counsel signed orders excluding time from the Speedy Trial Act so the parties could "negotiate a plea agreement," NDE11, 16, 17, 19, 21. Naviwala also proffered to try to secure a cooperation agreement. NDE70 at 1.

Naviwala rejected the Government's proposed plea agreements and cooperation agreement. *Id.* Accordingly, in February 2024, a grand jury returned a 10-count indictment. NDE22. On at least three occasions, Naviwala's then-counsel requested additional time to prepare for trial. *See* Feb 28, 2024 Tr. at 13:7–14:3; NDE38; Aug. 6, 2024 Tr. at 18:3–19.

On January 3, 2025, the Government obtained a superseding indictment, NDE73, two counts of which the Government later dismissed, NDE121, 123, 133. The trial spanned February 3–28, 2025, NDE123 (jury selection begins); NDE178 (trial concludes), and the jury convicted Naviwala of six counts, NDE176. Judge Farbiarz scheduled sentencing for July 29, 2025.

Naviwala filed post-trial motions in March 2025, NDE186, and the Government responded in April 2025, DNE199. Naviwala then retained new counsel and moved to postpone the deadline for his reply brief to Tuesday, July 1, 2025 and the sentencing to "no earlier than Tuesday, September 30, 2025." NDE203; *see* NDE227, 231. Over the Government's objection, NDE228, 232, the Court granted both requests and set sentencing for October 1, 2025, despite noting the adjournment wasn't warranted, NDE237.

On September 11, 2025, the Government submitted its principal sentencing brief, which requests that Naviwala be sentenced to 20 years' imprisonment and ordered to forfeit $10,367,073.28 and pay $102,305,295 in restitution. In the Government's view, that sentence would account for Naviwala's central role in the fraud and kickback scheme.

Meanwhile, Naviwala began challenging Alina Habba's authority to serve as Acting U.S. Attorney for the District of New Jersey, then seeking her disqualification and the disqualification of Assistant U.S. Attorneys prosecuting the case, and then, after the case was transferred to this Court, demanding dismissal. NDE241, 243, 244, 246, 257. When the Government opposed the motion to dismiss, NDE259, Naviwala moved to strike the opposition and asked for more time to file his reply, NDE 260, 261.

After Ms. Habba resigned from the USAO-NJ on December 8, 2025, the Government asked the Court to return the case to Judge Farbiarz so the case could proceed. NDE268. Naviwala moved to strike the Government's letter, to dismiss the Superseding Indictment, and to disqualify the AUSAs prosecuting him. NDE269. At this Court's request, Naviwala filed then refiled a single omnibus motion replacing his prior motions. NDE279, 281.

***Daniel Torres***. On January 31, 2024, a confidential source (CS-1) agreed to purchase 8 kilograms of cocaine for $16,000 per kilogram from Torres's brother in Paterson, New Jersey. TDE85 at 1. The next day, the brother met another confidential source (CS-2)—who was posing as a worker for CS-1—in a parking lot in Paterson. *Id.* CS-2 verified that the cocaine was inside the brother's car and gave the arrest signal. *Id.*

While this occurred, Torres was in the same Paterson parking lot, in the passenger seat of another car. *Id.* Torres's car parked in view of the cocaine sale as his brother met up with CS-2. *Id.* at 1–2. As the brother drove out of the parking lot, Torres's car exited at the same time. *Id.* at 2.

Law enforcement arrested the brother and found eight kilograms of cocaine inside his car. *Id.* at 1. Believing that Torres had been acting as a lookout for the drug deal, officers arrested Torres too. *Id.* at 2. After receiving *Miranda* warnings, Torres admitted that the drugs belonged to him and his brother had arranged the sale to the CSs. *Id.* Torres also consented to a search of his cell phone, which turned up incriminating text messages and videos showing hundreds of kilograms of cocaine. *Id.*[4]

On February 2, 2024, Torres was charged by criminal complaint with two counts of cocaine trafficking, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and § 846. TDE 1. On June 10, 2024, a grand jury returned a two-count indictment containing the same charges. TDE 21.

On November 14, 2024, Torres moved to suppress evidence of his confession. TDE31. Judge Hayden denied that motion in mid-June 2025. TDE55–57. The Government extended Torres a formal plea offer, TDE74 at 2 n.1, but Torres made clear he wanted new counsel. Retained counsel was allowed to withdraw, and Torres's current counsel was appointed, TDE62, 64.

The Government re-extended its formal plea offer, TDE74 at 2, but Torres rejected it. On November 10, 2025, a grand jury returned a two-count superseding indictment charging Torres with trafficking in at least five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(C), and

---

[4] This wasn't Torres's first rodeo. *Id.* at 2–3. He has a 2015 Federal conviction for conspiring to distribute at least 5 kilograms of cocaine and at least 280 grams of cocaine base. *See United States v. Torres*, 14-cr-176 (E.D.N.Y.).

846. NDE77. As a result, he faces a mandatory minimum 10-year term of imprisonment on each count, which would increase if the Government files an enhanced penalty information under 21 U.S.C. § 851.

On November 18, 2025, Torres first moved to disqualify Ms. Habba and the AUSAs who were prosecuting him. TDE18. After Ms. Habba's resignation from the USAO-NJ, Torres filed a second motion to disqualify and sought for the first time dismissal of his Superseding Indictment  TDE90. Judge Hayden transferred the matter to this Court on December 19, 2025, TDE92, and this Court consolidated it with Naviwala's similar motion, TDE94.

## ARGUMENT

## I.    The USAO-NJ's Current Supervisory Structure Violates Neither the FVRA Nor the Appointments Clause.

The Attorney General unquestionably has the authority—through multiple reinforcing statutes—to prosecute crimes and supervise litigation in the District of New Jersey. The Attorney General is the "head of the Department of Justice," 28 U.S.C. § 503, and is vested with "[a]ll functions" of DOJ's officers, agencies, and employees, subject to narrow exceptions not relevant here, *id.* § 509. That includes the U.S. Attorneys' functions to conduct litigation in their districts. Indeed, the Attorney General may "conduct any kind of legal proceeding, civil or criminal, … which United States attorneys are authorized by law to conduct." 28 U.S.C. § 515(a).

The Attorney General also has separate, direct authority to conduct and supervise all litigation on behalf of the United States. The Attorney General

may "personally conduct and argue any case in a court of the United States in which the United States is interested." *Id.* § 518(b). The Attorney General also may "supervise all litigation to which the United States, an agency, or officer thereof is a party" and "direct all United States attorneys, assistant United States attorneys, and special attorneys" in exercising their duties. *Id.* § 519; *see also id.* §§ 516–517.

The Attorney General also has unquestioned authority to appoint various attorneys within DOJ and to delegate her functions to those attorneys. The Attorney General may appoint special attorneys and special assistants to the Attorney General, *id.* § 515(a), AUSAs, *id.* § 542, special attorneys to assist U.S. attorneys, *id.* § 543, and other "officials" to "detect and prosecute crimes against the United States," *id.* § 533(1). The Attorney General may delegate "any function of the Attorney General" to "any other officer, employee, or agency of the Department of Justice," *id*. § 510, and she may "specifically direct[]" any DOJ officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding, civil or criminal, … which United States attorneys are authorized by law to conduct," *id.* § 515(a); *see id.* § 518(b) (the Attorney General "may direct … any officer of the Department of Justice" to "conduct and argue any case in a court of the United States in which the United States is interested"); *id.* §§ 516–517.

This statutory framework authorizes the Attorney General, wholly apart from the presence of any U.S. Attorney, to exercise prosecutorial and supervisory authority in the District of New Jersey and to delegate those

functions to others within the Department, including the AUSAs assigned to these two cases and their supervisors within the USAO-NJ. Accordingly, even if there is *no* United States Attorney—confirmed, interim, acting, or otherwise—the Attorney General may specifically direct DOJ attorneys to conduct the work of a USAO and supervise how they do so. That is what she has done here—in a way that complies fully with this Court's holdings and reasoning in the *Giraud* and *Pina* litigation.

The United States respectfully disagrees but accepts for purposes of these motions that Ms. Habba was "prohibited by the FVRA's exclusivity provision" from serving as "a *de facto* U.S. Attorney[.]" *Giraud*, 160 F.4th at 406–07. But under the USAO-NJ's current leadership structure, no one has been delegated *all*—or anything close to all—the powers of a U.S. Attorney. Rather, pursuant to express statutory authority, the Attorney General has delegated *her own powers*, allocating supervisory authority within the USAO-NJ among three officials appointed to their positions of record by the Attorney General. Thus, those delegations violate neither the FVRA nor the Appointments Clause.

## A.    No One in the USAO-NJ Has Been Delegated All the Powers of a U.S. Attorney.

Appointment of a U.S. Attorney through 541 or 546 or carrying out the functions and duties of that office as an Acting U.S. Attorney under the FVRA are not the only ways to ensure appropriate supervision within a USAO after its Senate-confirmed U.S. Attorney has resigned. Delegation remains a viable means of supervising matters within a USAO so long as no one has been

delegated "*all* the powers of a U.S. Attorney." *Giraud*, 160 F.4th at 407 (emphasis added). Both this Court and the Court of Appeals acknowledged that possibility. *See Giraud*, 160 F.4th at 406 ("[I]t is possible a more dispersed delegation of authority might not create a *de facto* U.S. Attorney and therefore might not run afoul of the FVRA's exclusivity provision—though we do not decide that today because those are not the facts of this case."); *Giraud*, 795 F. Supp. 3d 360, at n.257 ("I do not express any opinion on the possibility of parceling out these duties to separate individuals or delegating only a clearly limited subset of nonexclusive and delegable duties.").

The FVRA makes clear that exclusive, nondelegable functions and duties of a PAS office cannot be delegated to anyone during a vacancy in that office; only the Head of the Department can perform them. *See* 5 U.S.C. § 3348. The delegations at issue here don't violate that prohibition, however, because supervising criminal, civil, appellate and administrative matters is not a function that *only* a U.S. Attorney can perform. To the contrary, Congress expressly vested the Attorney General with the authority (and responsibility) to "supervise all litigation to which the United States, an agency, or officer thereof is a party," and to "direct all United States attorneys" and "assistant United States attorneys … in the discharge of their respective duties," § 519, and further authorized her to delegate those functions to "any other officer … of the Department of Justice," § 510. *See also* § 516; *McGrain v. Daugherty*, 273 U.S. 135, 150 (1927).

Nor do the current delegations violate 5 U.S.C. § 3347. That provision prohibits the Government from using general vesting-and-delegation statutes to "authoriz[e] an acting official to perform the functions and duties of" certain PAS offices. 5 U.S.C. § 3347(a), (b). This Court understood that provision to prohibit using vesting-and-delegation statutes not just to name an "acting" official but also to empower a "single official" though a "full scale delegation" to perform "all of the functions and duties of the vacant office." *Giraud*, 795 F. Supp. 3d at 601. But here, the Attorney General did not grant anything close to "a full-scale delegation of all the functions and duties of" the U.S. Attorney "to a single official."

Instead, she divided supervisory authority of matters within the USAO-NJ among three officials: Mr. Lamparello, as Senior Counsel; Ms. Fox as Special Attorney; and Mr. Fontecchio as Executive Assistant U.S. Attorney. Thus, in contrast to the delegation that this Court and the Court of Appeals rejected in *Giraud* and *Pina*, the delegations at issue here do not purport to delegate to any single person all, or anything close to all, the authority of a U.S. Attorney, "*de facto*" or otherwise. Instead, the combination of three individuals appointed and removable by the Attorney General preserves her ability to fulfill her statutory obligation to oversee (and maintain consistency in) litigation on behalf of the United States while complying with this Court's and the Third Circuit's decisions.

**B.    The Attorney General Appointed Ms. Fox and Messrs. Lamparello and Fontecchio in a Manner Consistent with the Appointments Clause.**

Nor do the delegations violate the Appointments Clause, U.S. Const. Art. II, § 2, cl. 2. "That clause divides all constitutional officers into two classes: 'inferior officers' and 'noninferior officers'" (called "'principal officers'"). *United States v. Smith*, 962 F.3d 755, 763 (4th Cir. 2020). "Principal officers must be appointed by the President with the advice and consent of the Senate." *Id.*; *see Edmond v. United States*, 520 U.S. 651, 660 (1997). "Inferior officers may be appointed in the same manner, but doing so is not constitutionally required." *Smith*, 962 F.3d at 763. Instead, "Congress may vest the appointment of such officers 'in the President alone, in the Courts of Law, or in the Heads of Departments.'" *United States v. Arthrex, Inc.,* 594 U.S. 1, 12–13 (2021) (quoting U.S. Const. Art. II, § 2, cl. 2).

Ms. Fox and Messrs. Lamparello and Fontecchio are at most "inferior" officers under the Appointments Clause. Whether "one is an 'inferior' officer depends on whether he has a superior other than the President." *Arthrex*, 594 U.S. at 13 (2021) (cleaned up). "An inferior officer must be directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Id.* (cleaned up). At least two such Senate-confirmed officers provide that direction and supervision here: the Attorney General as "the head of the Department of Justice," 28 U.S.C. § 503, and the Deputy Attorney General, who is "is authorized to exercise all the power and authority of the Attorney General, unless any such

power or authority is required by law to be exercised by the Attorney General personally," 28 C.F.R. § 0.15(a).

Here, the Attorney General, the head of the Department of Justice, lawfully appointed Ms. Fox and Messrs. Lamparello and Fontecchio to their respective supervisory positions pursuant to statutory authority and thus complied with the Appointments Clause. The Attorney General has authority to appoint special attorneys and special assistants to the Attorney General, 28 U.S.C. § 515(a), AUSAs, § 542, special attorneys to assist U.S. attorneys, § 543, and "officials" to "detect and prosecute crimes against the United States," § 533(1). S*ee also* § 510 (authorizing the Attorney General to "make such provisions" as are "appropriate authorizing the performance" of DOJ functions by other persons); *United States v. Nixon*, 418 U.S. 683, 694–95 (1974). The Attorney General appointed Ms. Fox and Messrs. Lamparello under those authorities, which is all the Appointments Clause required.

### C.    The Defendants' Arguments to the Contrary All Fail.

Naviwala and Torres nonetheless insist that the USAO-NJ's current supervisory structure circumvents the Appointments Clause, the FVRA, and 28 U.S.C. §§ 541 and 546 and therefore is illegal. But none of their arguments should carry the day.

**1.**    Torres calls the USAO-NJ "a rudderless ship" powerless to continue prosecuting (or defending) cases over a party's objection. TDE91 at 10. He maintains that if there is no U.S. Attorney appointed under § 541(a) or § 546 and no qualified Acting U.S. Attorney serving under § 3345(a), then *no*

*one* can prosecute (or defend) cases in the District of New Jersey—not even the Attorney General herself. Naviwala similarly argues that "only United States Attorneys … may prosecute offenses within their respective districts." NDE281 at 34. No court has so held, with good reason.

The Attorney General's statutory authority to conduct the work of a U.S. Attorney's Office herself, and to delegate authority to others authority to do so, does not depend in any way on someone's either occupying the office of U.S. Attorney or performing the functions of that office in an acting capacity. She is the "head of the Department of Justice," 28 U.S.C. § 503, after all, and Congress has vested her with virtually "[a]ll functions" of everyone else in the Department of Justice. § 509; *see Giraud*, 160 F.4th at 395 ("'All functions' of the Department of Justice 'are vested in the Attorney General,' subject to exceptions not relevant here.") (quoting § 509). That includes the functions of the U.S. Attorneys under 28 U.S.C. § 547 to prosecute crimes in their districts.

In addition, Congress has vested the Attorney General with authority to conduct and supervise all litigation on behalf of the United States. Section 515 provides that the Attorney General may herself "conduct any kind of legal proceeding, civil or criminal … which United States Attorneys are authorized by law to conduct," § 515(a), and § 518 provides that the Attorney General may "personally conduct and argue any case in a court of the United States in which the United States is interested," § 518(b). Congress has authorized the Attorney General to "supervise all litigation to which the United States, an agency, or officer thereof is a party," and to "direct all United States attorneys"

– 18 –

and "assistant United States attorneys … in the discharge of their respective duties." § 519. *See also* § 516; *McGrain v. Daugherty*, 273 U.S. 135, 150 (1927).

As the Court of Appeals also recognized, "Congress has granted the Attorney General broad delegation authority." *Giraud*, 160 F.4th at 395. The Attorney General can delegate "*any* function of the Attorney General" to "*any* other officer, employee, or agency of the Department of Justice." 28 U.S.C. § 510 (emphases added). Indeed, this Court and many others have recognized that the Attorney General has validly delegated prosecutorial authority to AUSAs. *United States v. Giraud*, 2025 WL 2196794, at *9 & n.91 (D.N.J. Aug. 1, 2025) ("generally" agreeing "with the Government that AUSAs' power fundamentally stems from the Attorney General" and citing cases).

In addition, Congress also expressly authorized the Attorney General to "specifically direct[]" any DOJ officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding, civil or criminal, … which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought." *Id.* § 515(a); *see also id.* § 518(b) (the Attorney General "may direct ... any officer of the Department of Justice" to "conduct and argue any case in a court of the United States in which the United States is interested").

Accordingly, even if Congress were to entirely abolish the office of U.S. Attorney, the Attorney General would unquestionably have the power herself to conduct, delegate, and supervise criminal and civil litigation on behalf of the United States within the District of New Jersey. Likewise, even if there were a

Senate confirmed U.S. Attorney, the Attorney General would unquestionably have the power to subject that U.S. Attorney to supervision by three attorneys from Main Justice, with the respective dockets assigned to Ms. Fox and Messrs. Lamparello and Fontecchio. That being so, there is no conceivable reason why the Attorney General somehow lacks the power to assign those dockets to those three individuals merely because there is a vacancy in the office of U.S. Attorney.

**2.**    Despite Naviwala's assertion, NDE281 at 34, nothing in 28 U.S.C. § 547 commands otherwise. "To determine whether a statute creates an exclusive grant of statutory authority, we simply read that statute." *Kajmowicz v. Whitaker*, 42 F.4th 138, 149 (3d Cir. 2020). Naviwala quotes the part of § 547 providing that "each United States attorney, within his district, shall … prosecute for all offenses against the United States[,]" NDE281 at 34. But § 547 does not say that "only" the U.S. Attorney shall prosecute. Moreover, it begins with "Except as otherwise provided by law[.]" § 547.

"Under the subdelegation doctrine, when a statute delegates authority to a federal officer or agency, subdelegation" is "presumptively permissible absent affirmative evidence of a contrary congressional intent." *Kajmowicz*, 42 F.4th at 149 (cleaned up); *accord Louisiana Forestry Ass'n Inc. v. Sec'y U.S. Dep't of Labor*, 745 F.3d 653, 672 (3d Cir. 2014); *see Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 120–23 (1947). Here, nothing in § 547's text or its enactment history manifests any intent by Congress to prohibit subdelegation. So § 547

does not require the U.S. Attorney and only the U.S. Attorney to perform the functions that the statute describes.

Where a U.S. Attorney's office is conducting a criminal prosecution under the direction and supervision of the U.S. Attorney (or a qualified Acting U.S. Attorney), § 547 expressly authorizes the conduct in that litigation without the need for any separate authorization from the Attorney General. But when there is no U.S. Attorney or Acting U.S. Attorney, the Attorney General can authorize others within the Department to provide any necessary direction and supervision. *See Giraud*, 2025 WL 2196794 at *9 (acknowledging "the Attorney General's and United States Attorney's complementary statutory authority to oversee litigation in their respective jurisdictions").

The USAO-NJ is not a house of cards that falls whenever it is not headed by a U.S. Attorney or Acting U.S. Attorney. "AUSAs are themselves representatives of the government." *United States v. Hilario*, 218 F.3d 19, 22 (1st Cir. 2000). Their "ability to act does not hinge on the authority of the local United States Attorney, but derives from the Attorney General's plenary power over litigation to which the United States is a party." *Id.* Thus, "in the event of a vacancy in the office of the United States Attorney," AUSAs "retain prosecutorial authority, as originally delegated to them by the Attorney General, subject to the supervision of the Attorney General and the Department of Justice." *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008) (citing 28 U.S.C. §§ 519, 542(a)).

**3.**    Nor does the USAO-NJ's current supervisory structure create a non-waivable jurisdictional defect in these cases. NDE281 at 34–36. It is far from clear that Naviwala's claim, which is premised on arguments the delegation violates various statutes, is a "constitutional" one. *Cf. Dalton v. Specter*, 511 U.S. 462, 472–75 (1995). But even accepting the premise, an Appointments Clause violation—which hasn't occurred here—can be waived or forfeited. NDE281 at 35. That's because an "appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute." *United States v. Suescun*, 237 F.3d 1284, 1287 (11th Cir. 2001); *see, e.g., United States v. Gantt*, 184 F.3d 987, 998 (9th Cir. 1991) ("An infirmity in the United States Attorney's appointment would not generally affect the jurisdiction of this court so long as a proper representative of the government participated in the action.").

In *United States v. Fitzhugh*, 78 F.3d 1326 (8th Cir. 1996), "for example, the Eighth Circuit held that an indictment obtained by an Independent Counsel who may have exceeded his authority did not affect the government's power to prosecute and thus did not deprive the district court of jurisdiction." *Suescun*, 237 F.3d at 1287 (citing *Fitzhugh*, 78 F.3d at 1330). Likewise, the First Circuit has rejected the notion that "a challenge to the appointment of" an "interim United States Attorney on the basis of the Appointments Clause … and separation of powers principles is jurisdictional and cannot be waived." *United States v. Colon-Munoz*, 192 F.3d 210, 217 (1st Cir. 1999). Indeed, this Court has already acknowledged as much in this very case. *See* NDE250 at 2

– 22 –

("I do not believe that Assistant United States Attorneys acting directly under Ms. Habba's authority may participate in ongoing prosecutions without a defendant's waiver of the appointment issue.").

As Justice Scalia stated, "Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial." *Freytag v. C.I.R.*, 501 U.S. 868, 893–94 (1991) (Scalia, J., joined by three justices, concurring in part and concurring in judgment). Even "[t]he most basic rights of criminal defendants are … subject to waiver," *Peretz v. United States*, 501 U.S. 923, 936 (1991), including rights far more important than who sits atop the USAO-NJ.

Moreover, since *Freytag*, the Supreme Court has twice confirmed that to obtain relief for an Appointments Clause violation, a party must timely raise the claim. In *Ryder v. United States*, 515 U.S. 177 (1995), the Court held that "one who makes a *timely challenge* to the constitutional validity of the appointment of an officer who adjudicates his case is entitled" to relief—a new "hearing before a properly appointed" officer. *Id.* at 182, 188 (emphasis added). The Court then awarded the party a new hearing precisely because the party had "raised his objection to the judges' titles before those very judges and prior to their action on his case." *Id.* at 182.

The Supreme Court reaffirmed *Ryder*'s basic approach in *Lucia v. SEC*, 585 U.S. 237 (2018)—a case about appointment of SEC ALJs. *Lucia* explained that "the appropriate remedy for an adjudication tainted with an appointments

violation is a new hearing before a properly appointed official." *Id.* at 251 (cleaned up). The Court added that "one who makes a *timely challenge* to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Id.* (emphasis added). The challenger there had "made just such a timely challenge: He contested the validity of [the ALJ's] appointment before the Commission" and "continued pressing that claim in the Court of Appeals and" the Supreme Court. *Id.*

Taken together, *Ryder* and *Lucia* show that a party may obtain a do over to cure a violation of the Appointments Clause if he has made a timely challenge. And *Lucia* shows that making a timely challenge requires (at the least) objecting during the relevant judicial proceeding, not after that proceeding has already occurred. Naviwala and Torres are raising timely challenges to the USAO-NJ's current supervisory structure. But if they had not and later tried to press them, their challenges would have been at least forfeited if not waived.[5]

**4.**     Delegating to a single person supervisory authority over matters in the Criminal and Special Prosecutions Divisions does not, as Torres and Naviwala argue, make that person a *de facto* U.S. Attorney. TDE91 at 9–10; NDE281 at 26–27. Even Pina's counsel conceded that such a delegation would be proper. *See* Exhibit A at 36 ("JUDGE FISHER: Could the Attorney

---

[5] Naviwala cites no controlling precedent holding otherwise. *See* NDE281 at 34–36 (citing Supreme Court cases involving standing, Article III jurisdiction or the complete absence of a proper representative).

General in this case delegate to Ms. Habba the right to prosecute all criminal cases arising out of the District of New Jersey? MR. LOWELL: I think you could probably get that part done, but that's not what's happened here."); *id.* at 37–38 (conceding that § 515 permits delegation of authority to "supervise legal proceedings"). That concession doesn't bind the defendants here, of course, but it had ample basis given the wall of precedent affirming broad delegations to DOJ officials to prosecute criminal matters in other contexts.

Take, for example, challenges to Strike Forces and other DOJ prosecutorial components over the years. *See, e.g.*, *United States v. Prueitt*, 540 F.2d 995 (9th Cir. 1976) (Narcotics and Dangerous Drug Section); *In re Persico*, 522 F.2d 41 (2d Cir. 1975) (Strike Force); *United States v. Wrigley*, 520 F.2d 362 (8th Cir. 1975) (same). Every one of those challenges contended, in one way or another, that the delegation of authority to those DOJ components improperly encroached upon U.S. Attorneys' authority, was too broad or circumvented the Appointments Clause. And every one of those challenges failed.

The defendants also overlook that although "policing the federal criminal code" is an important function for a U.S. Attorney, TDE9 at 9–10, it's not the USAO-NJ's only important function. *See* 28 U.S.C. § 547(2)–(5). The Office also represents the interests of the United States in civil litigation, which falls within Ms. Fox's delegated supervisory authority, not Mr. Lamparello's. Nor does Mr. Lamparello's delegation encompass criminal appellate matters in the Office's Appeals Division. Ms. Fox's delegated supervisory authority encompasses those matters, too.

Importantly, none of these delegations authorizes the delegee "to serve as Acting United States Attorney upon a vacancy in that office," the way that Ms. Habba's delegation did. *See* GDE108-7. Nor are the delegees authorized "'to conduct any kind of legal proceedings … which United States Attorneys are authorized to conduct,'" *Giraud*, 160 F.4th at 395, 405, the way Ms. Habba was. *See id at* 403. As both this Court and the Court of Appeals saw it, based on her appointment documents and the Government's representations, "Habba alone [wa]s exercising all the powers of a U.S. Attorney, making her an Acting U.S. Attorney whose appointment is not FVRA-compliant." *Giraud*, 160 F.4th at 406; *see Giraud*, 795 F. Supp. 3d at 595 ("Ms. Habba is performing all of the functions and duties of the United States Attorney…. That is exactly what section 3347(b) prohibits.") (cleaned up). The much narrower delegations here show that none of the delegees—Ms. Fox and Messrs. Lamparello and Fontecchio—can exercise all the powers of a U.S. Attorney.

**5.**     Nevertheless, Naviwala and Torres complain that the current delegation is no better than the prior one because Ms. Fox and Messrs. Lamparello and Fontecchio each could exercise their new supervisory authority indefinitely without ever going through the confirmation process or obtaining judicial approval. NDE281 at 24–30; TDE91 at 7–10. By that reasoning, though, no one else in the USAO-NJ could exercise any supervisory authority either. That cannot be right. The FVRA and § 546 provide alternative mechanism for a single person to perform the duties of a U.S. Attorney; they have nothing to do with the Attorney General's power to

appoint Special Attorneys or designate supervisors among the ranks of validly appoint AUSAs. To the extent that the primary functions of a Department of Justice lawyer—participating in litigation and supervising others—can be delegated to any DOJ lawyer, that feature of the Department has little to do with the FVRA or § 546.

Moreover, both this Court and the Court of Appeals couldn't have been clearer about why Ms. Habba's delegation failed. As this Court explained:

➢ "[T]he Government intends for its delegation to confer upon Ms. Habba the full panoply of powers of a PAS United States Attorney." *Giraud*, 795 F. Supp. 3d at 593.

➢ "Ms. Habba was 'directed to supervise the USAO-NJ.' That delegation includes 'the authority to supervise all pending prosecutions and other matters in the USAO-NJ.'" *Id.* at 593–94 (footnotes omitted).

➢ Under the Government's "delegation theory, 'Ms. Habba can do anything the United States Attorney can do.'" *Id.* at 594.

➢ "'Ms. Habba is the person the President wishes to head the Office of the United States Attorney for the District' of New Jersey." *Id.*

➢ "[I]t is no mere coincidence that Ms. Habba was named a Special Attorney and delegated this authority as part of a single series of moves made with the express goal of installing her as the Acting United States Attorney." *Id.*

➢ "[T]he Attorney General is using her power of delegation to make Ms. Habba the United States Attorney." *Id.*

Accordingly, this Court concluded that, "as Special Attorney, Ms. Habba ha[d] been delegated all of the powers of a United States Attorney" and was "acting on a level equal to one holding the office in a PAS capacity." *Id.* at

595. The Court of Appeals agreed that the Attorney General had "attempted to delegate to Habba the full panoply of powers of a U.S. Attorney." *Giraud*, 160 F.4th at 403. *That* was the "*de facto* U.S. Attorney-by-delegation theory" which the Court of Appeals deemed "plainly prohibited by the FVRA's exclusivity provision." *Id.*; *cf. Jones v. Mississippi*, 593 U.S. 98, 119 (2021) (courts should "rely on what" precedents "said" rather than "inferences about what" those "precedents must have done") (cleaned up). The Court of Appeals explained that "[t]his delegation theory would create a means for the Department of Justice to circumvent the FVRA's exclusivity provision, effectively permitting anyone to fill the U.S. Attorney role indefinitely. This should raise a red flag, given the careful time limitations included in both the FVRA and the U.S. Attorney-specific statute." *Id.* at 406. The narrower, dispersed delegation at issue here poses none of those risks.

**6.**    Naviwala also complains that, so far as he can tell, no USAO has ever had the kind of supervisory structure now in place at the USAO-NJ. NDE281 at 23. That may be true in degree, but not in kind. Large USAOs like the USAO-NJ typically have "Front Offices" consisting of two, three or more senior supervisory AUSAs in addition to the U.S. Attorney or Acting Attorney. In consultation with the U.S. Attorney or Acting U.S. Attorney, those senior supervisory AUSAs allocate among themselves who will supervise which components of the Office.

Moreover, when the U.S. Attorney resigns and the FAUSA times out under the FVRA as the Acting U.S. Attorney, it is not uncommon for the

– 28 –

FAUSA to remain at the top of the USAO's signature blocks.[6] When the FAUSA does so, she is not exercising the authority or performing the duty of a U.S. Attorney; she is exercising her own authority as a validly appointed and designated supervisory AUSA—authority she derives from the Attorney General. The Government Accountability Office (GAO)—the component of the Legislative Branch statutorily charged with monitoring FVRA compliance, *see* 5 U.S.C. § 3349(b)—agrees with that practice. *See* Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J. Durbin, Russell D. Feingold, and Edward M. Kennedy (Jun. 13, 2008), available at https://go.usa.gov/xtEQP (explaining why Steve G. Bradbury's service as the senior official in DOJ's Office of Legal Counsel did not violate the FVRA).

Beyond that, U.S. Attorneys sometime recuse to prevent a conflict of interest or the appearance of a conflict of interest. When that happens, the Department typically appoints under 28 U.S.C. § 515 an AUSA to serve as Attorney for the United States on the case. Often that AUSA is the FAUSA, if available, as was the case in *Naviwala*'s earlier stages. *See, e.g.*, NDE22 at 19 (indictment under then FAUSA Vikas Khanna as "Attorney for the United

---

[6] For example, pursuant to a delegation of authority as the FAUSA, Elizabeth A. Strange led the U.S. Attorney's Office for the District of Arizona from approximately November 2017 until May 2019, *see, e.g.*, Brief of Appellee, 2018 WL 2418885; Michelle M. Baeppler led the U.S. Attorney's Office for the Northern District of Ohio from approximately May 2022 until June 2023, *see, e.g.*, Brief of Plaintiff-Appellee, 2023 WL 2600208; and Robert J. Troester led the U.S. Attorney's Office for the Western District of Oklahoma from approximately August 2018 until June 2019, *see, e.g.*, Brief of Plaintiff-Appellee, 2018 WL 5309976.

States Acting Under Authority Conferred by 28 U.S.C. § 515"); NDE45 at 4 (signature block listing Khanna as "Attorney for the United States Acting Under Authority Conferred by 28 U.S.C. § 515"); NDE59–60 (same); NDE66 at 1, 32 (same), NDE73 at 22 (superseding indictment under Khanna as "Attorney for the United States Acting Under Authority Conferred by 28 U.S.C. § 515"). But sometimes the Department must turn to someone else to serve in that role. Either way, someone other than the U.S. Attorney has decision-making authority within that USAO for that matter or matters, subject of course to Main Justice supervision. Thus, dispersed supervisory authority within a USAO is common, not extraordinary.

**7.**     Naviwala invokes judicial estoppel, NDE281 at 18–23, but "judicial estoppel does not apply when a party's initial position was not "accepted or adopted by a court or agency." *In re ESML Holdings Inc.*, 135 F.4th 80, 92 (3d Cir. 2025). "The judicial estoppel doctrine seeks to prevent a party from playing fast and loose with courts by asserting contradictory positions; it does not preclude a party from later asserting a position it could have pressed but did not because" it thought it had "a better argument." *United States v. Vastola*, 989 F.2d 1318, 1324 (3d Cir. 1993). "Judicial estoppel is only appropriate when the inconsistent positions are "tantamount to a knowing misrepresentation to or even fraud on the court." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 324 (3d Cir. 2003) (cleaned up). The "doctrine should only be applied to avoid a miscarriage of

justice." *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 486 (3d Cir. 2013) (cleaned up).

Nothing like that has occurred here. The Government never argued in the *Giraud* appeal that the Attorney General could not delegate authority to multiple officials to oversee matters pending in the USAO-NJ. To the contrary, the Government conceded it would obviously be lawful to disperse delegated authority in that way. The Government's point was that being so, the Court of Appeals shouldn't foreclose a delegation to just one person. The Court of Appeals disagreed. Thus, neither prong of judicial estoppel applies: The Government hasn't taken inconsistent positions; and the Court of Appeals didn't rely on any position the Government took. The dispersed delegation at issue here "introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity." *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001); *see United States v. Pelullo*, 399 F.3d 197, 222–23 (3d Cir. 2005) (rejecting defendant's judicial estoppel claim).

**8.** Naviwala's waiver argument also fails. NDE281 at 23–24. The Government had no occasion to defend the USAO-NJ's current supervisory structure during the *Giraud* and *Pina* litigation. That structure did not even exist until after the Court of Appeals issued its precedential opinion. Naviwala cites no controlling precedent, and the Government is aware of none, requiring a party to defend potential future actions when opposing a challenge to a current action. *Cf. Texas v. United States*, 523 U.S. 296, 300 (1999) ("A claim is

not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

**9.** Finally, Naviwala invokes the 120-day time limit in 28 U.S.C. § 546(c)(2) for Attorney General-appointed interim U.S. Attorneys, NDE281 at 27–28, but that time-limit has no bearing here. Section 546(c) applies only to "[a] person appointed as United States attorney under this section." 28 U.S.C. § 456(c). There is no such person in the USAO-NJ: Ms. Habba resigned as U.S. Attorney on July 24, 2025; this Court concluded that her term as U.S. Attorney ended on July 1, 2025; and the President terminated on July 26, 2025 the AUSA the District Court appointed as U.S. Attorney under § 546(d). *Giraud*, 795 F. Supp. 3d at 604. No court has ever held that the 120-day time limit in § 546(c)(2) applies to someone appointed under a different statute. This Court should not be the first.

## II.    None of the Relief the Defendants Seek Is Warranted for the "Violations" They Allege.

Both defendants seek broad disqualification orders: Torres for the entire U.S. Attorney's Office; Naviwala for what he calls the "Executive Office" and any AUSAs they supervise. And both defendants seek dismissal of their superseding indictments. None of that relief is warranted. This Court held in the *Giraud* and *Pina* litigation that the remedy for an Appointments Clause or FVRA violation is voiding the unlawfully appointed official's *ultra vires* acts and enjoining that official from further such acts. *Giraud*, 2025 WL 2196794, at

8. That is the most the defendants can obtain if they prevail on their challenge to the USAO-NJ's current supervisory structure, which they should not.

### A. No Disqualifications Are Warranted Here, and Certainly Not Ones As Broad As the Defendants Demand.

As explained in Point I, *supra*, the USAO-NJ's current supervisory structure doesn't violate even the FVRA, let alone the Appointments Clause. So there is no need for this Court to disqualify anyone from these cases. *See Giraud*, 2025 WL 2196794, at 8 (defendants are "entitled to no remedy if the Court finds that" the challenged official's "appointment … is valid or that Ms. Bondi can delegate" that official the "level of authority" in question). But if this Court disagrees, Torres's sweeping attempt to disqualify the *entire* USAO-NJ fails. At most, only "a targeted disqualification" would be warranted. *Giraud*, 2025 WL 2196794, at *10. But even a targeted disqualification shouldn't extend as far as Naviwala proposes.

"[E]very circuit court that has reviewed an officewide disqualification has reversed." *United States v. Williams*, 68 F.4th 564, 572 (9th Cir. 2023) (reversing officewide disqualification); *see United States v. Bolden*, 353 F.3d 870 (10th Cir. 2003) (same); *United States v. Whittaker*, 268 F.3d 185 (3d Cir. 2001) (same); *United States v. Vlahos*, 33 F.3d 758 (7th Cir. 1994) (same); *United States v. Caggiano*, 660 F.2d 184 (6th Cir. 1981) (same); *cf. United States v. Shah*, 43 F.4th 356, 360, 362–64 (3d Cir. 2022) (affirming denial of similar motion). Because "disqualifying government attorneys implicates separation of powers

– 33 –

issues, the generally accepted remedy is to disqualify a specific" prosecutor, "not all the attorneys in the office." *Bolden*, 353 F.3d at 879 (cleaned up).

Here, Torres cannot justify disqualifying any prosecutor who worked on this case, let alone every prosecutor in the USAO-NJ. *See United States v. Lingala*, 91 F.4th 685, 694–96 (3d Cir. 2024) (affirming denial of motion to disqualify prosecution team). "The disqualification of the government's counsel is a drastic measure"—one "a court should hesitate to impose ... except where necessary." *Bolden*, 353 F.3d at 878 (cleaned up). But if this Court concludes that Mr. Lamparello is unlawfully exercising all the authority of a U.S. Attorney, the only appropriate remedy under *Giraud* would be disqualifying him and any AUSA "who prosecutes" Torres "under the supervision or authority of" Mr. Lamparello. 795 F. Supp. 3d at 606.[7]

Were this Court to take that step (it shouldn't), "so long as" Mr. Lamparello "follows that Order, no AUSAs would need to be disqualified." *Giraud*, 2025 WL 2196794, at *10 n.96. There is "no reason why AUSAs acting directly under the delegated authority of" the Attorney General, or "another Department of Justice official with sufficient authority to extend Ms. Bondi's powers to AUSAs in New Jersey, would need to be disqualified." *Id.* at *10. To the contrary, as this Court acknowledged in *Giraud*, "so long as …

---

[7] *See Giraud*, 2025 WL 2196794, at *8 ("[I]f the appointment is illegal or unconstitutional, the Court can prospectively invalidate any illegal exercise of power by enjoining the appointee from acting in that office."); *id.* at *10 ("If the facts should show that an AUSA is operating at the express direction of an official who is improperly appointed, the Court can validly bar them from doing so[.]").

they are acting under Ms. Bondi's—and not [Mr. Lamparello]'s—authority (essentially a temporary recusal until this matter is resolved), there would appear to be no issue with all of District of New Jersey's AUSAs moving prosecutions forward now." *Id.*

On that score, the Attorney General has already authorized Ms. Fox, who is also the Deputy Attorney General's Chief of Staff and an Associate Deputy Attorney General, to supervise "any matters arising in the district" not already delegated to someone else. NDE268-2. Ms. Fox reports directly to the Deputy Attorney General, who "is authorized to exercise all the power and authority of the Attorney General," 28 C.F.R. § 0.15(a), that is delegable by her, who helps the Attorney General "provid[e] overall supervision and direction to all organizational units of the Department," § 0.15(b), and who "direct[s] the activities of organizational units as assigned," *id.* There can be no question, then, that Ms. Fox could exercise her delegated authority to supervise this case if Mr. Lamparello could not and had to recuse.

### B.  There Is No Basis to Dismiss Naviwala's Superseding Indictment.

In denying the Girauds' motion to dismiss their indictment, this Court explained that "[t]he only relevant dispute they" had "with their prosecution" was "Ms. Habba's appointment as Acting United States Attorney on July 24, 2025, months after they were indicted." *Giraud*, 2025 WL 2196794, at *5. This Court added that "[i]t escapes logic to contend that that appointment somehow retroactively taints the indictment, or any aspect of the prosecution that

– 35 –

preceded it[.]" *Id.* So too here. Naviwala's jury trial concluded on February 28, 2025 under Acting U.S. Attorney Khanna with a guilty verdict on six counts of fraud, kickbacks and conspiracy collectively carrying a maximum term of imprisonment of 65 years' imprisonment. And Ms. Habba's authority as U.S. Attorney did not expire according to this Court until July 1, 2025. At that point, all that remained in Naviwala's case was adjudicating his fully briefed post-trial motion and sentencing him.

Nonetheless, Naviwala demands dismissal of this case with prejudice. According to him, nothing less will remedy the harms supposedly flowing from Ms. Habba's appointment and the USAO-NJ's current supervisory structure following Ms. Habba's resignation. The entire premise of that demand is the prediction that his sentencing will be delayed indefinitely while this round of the authority litigation is pending. Never mind that Naviwala earlier assured this Court he was merely "seeking the disqualification of Ms. Habba and those acting pursuant to her authority and under her supervision from continuing to participate in his prosecution, *and no more.*" NDE249 at 2 (emphasis added). And never mind that he didn't formally seek even that relief until September 8, 2025. NDE244. None of the grounds Naviwala now advances for dismissing this case despite the jury's guilty verdict can justify that extraordinary relief.

**1.** Start with the Appointments Clause. According to Naviwala, dismissal is even more warranted here than it supposedly was in *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024). But this Court rejected a similar

argument in *Giraud,* with reasoning equally applicable here. *See* 2025 WL 2196794, at *7. The *Trump* district court granted dismissal because the Special Counsel's "involvement in the case had been essentially ubiquitous," including "'his seeking of the' very charging instrument 'on which [the] proceeding' hinged." *Id.* (quoting with alterations *Trump*, 740 F. Supp. 3d at 1303).

"In contrast, Ms. Habba had nothing to do with" charging Naviwala or trying him. *Giraud*, 2025 WL 2196794, at *7. "Nor ha[d] she engaged in their prosecution during the period in which her authority is questioned except for" submission under her name of letters opposing postponement of the sentencing and letter briefing on the authority issue. *Id.* As for Mr. Lamparello, he didn't even join the USAO-NJ until September 2025, NDE281 at 26 n.86, and his name didn't even appear on any submissions in this case until December 15, 2025, NDE268. "So, at this stage, there has been essentially no *ultra vires* action to invalidate." *Id.* (cleaned up). That means dismissal cannot possibly be proper at this stage. *See id.* ("[W]hen the defendant objects to [an invalid] appointment before the questioned United States Attorney has substantially participated in his prosecution, dismissal is not the proper remedy.").

2.      Next, consider Naviwala's Due Process right to a reasonably prompt sentencing. In determining whether a delay in sentencing violates that right, this Court must consider: "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right; and (4) any prejudice suffered by the defendant." *United States v. Lacerda*, 958 F.3d 196, 219–20 (3d Cir. 2020); *see Betterman v. Montana*, 578 U.S. 437, 447–48 (2016) (noting that

at the sentencing stage "due process serves as a backstop against exorbitant delay"). "The length of delay between conviction and sentencing is a 'threshold requirement,' and a lengthy enough delay will 'invite[ ] inquiry' into the remaining factors." *United States v. Small*, No. 22-1469, 2023 WL 4399212, at 3 (3d Cir. July 7, 2023) (non-precedential) (quoting *Burkett v. Fulcomer*, 951 F.2d 1431, 1439 (3d Cir. 1991)).

The length of delay between Naviwala's conviction and sentencing—not even a year—hardly favors him. *Contrast Lacerda*, 958 F.3d at 220 (2½-year delay between conviction and sentencing, in isolation, favored the defendant). Indeed, at ten months, that delay might not even require inquiry into the other factors. *Contrast Burkett*, 951 F.2d at 1439 ("[W]e are convinced that the delay of 29 months from conviction to sentence invites inquiry into the three remaining … factors."). In any event, the delay Naviwala sought following his change of retained counsel weighs heavily against him,[8] especially because the Government never sought a continuance and opposed his requests for delay. *Lacerda*, 958 F.3d at 219; *cf. Vermont v. Brillon*, 556 U.S. 81, 90 (2009) ("delay caused by the defense weighs against the defendant"). As for timely asserting

---

[8] Six months ago, Naviwala's current counsel represented to Judge Farbiarz that because the case involved "a potential *life sentence*," he would need "several months at minimum to competently and effectively prepare for sentencing[.]"NDE236 at 2. Counsel also represented that Naviwali's "trial counsel—who had been retained to represent him through sentencing—quit" and "did absolutely nothing to begin preparing for" the "sentencing prior to filing their motions to withdraw." *Id.* at 3. Supposedly "through no fault of his own," Naviwala "was left to start from square one with new counsel." *Id.*

his rights, Naviwala did not allege a violation of the Due Process Clause until October 22, 2025. NDE257.

Meanwhile, Naviwala's sentencing exposure hasn't changed in any way. *See Lacerda*,958 F.3d at 219 ("Thus, Resnick's Guidelines range was unaffected, and he has failed to show prejudice. This factor also weighs heavily against Resnick."). Long before Naviwala began challenging Ms. Habba's authority to lead the USAO-NJ, the Government estimated that his likely Guidelines range would be life imprisonment. NDE223 at 2. And the Government's sentencing submission reiterates that the Guidelines sentence for Naviwala would be life imprisonment, but for the statutory maxima for his offenses of conviction.

The only prejudice Naviwala identifies is that his time subject to bail restrictions won't count against his ultimate sentence. NDE281 at 45–47. But he wanted to remain on bail pending sentencing. If he would prefer to surrender now considering his six counts of conviction and very substantial sentencing exposure, the Government would be happy to oblige. *Cf.* NDE223 (opposing in nearly all respects Naviwala's motion to make more lenient his bail restrictions). In any event, Magistrate Judge Adams granted Naviwala's recent modification requests. NDE256. Naviwala remains free to make additional requests and—if those requests are denied—to appeal to the district court or the Court of Appeals. And Naviwala can always point to his bail restrictions as a basis for a downward variance.

**3.**    As for Rule 32(b)(1), under it "the court must impose sentence without unnecessary delay." Fed. R. Crim. P. 32(b)(1). Yet "[t]he court may, for good cause, change any time limits prescribed by" Rule 32. Fed. R. Crim. P.32(b)(2). Rule 32(b)(1) was enacted "not for the benefit of the litigant" but "to serve the general good by simplifying and expediting trials." *Ex parte United States*, 101 F.2d 870, 876 n.18 (7th Cir. 1939). Although a district court judge who fails to comply with the rule may be subject to a mandamus action, "the sentence, though tardily imposed in violation of the rule, would not for that reason [be] void." *Berkowitz v. United States*, 90 F.2d 881, 884 (8th Cir. 1937).

Moreover, Rule 32(b)(1) is not violated to a defendant's detriment absent evidence of "purposeful or oppressive" delay. *Pollard v. United States*, 352 U.S. 354, 361 (1957). Unless there are contrary indications in the record, appellate courts presume "that delay in pronouncing sentence was for a lawful purpose." *Lott v. United States*, 309 F.2d 115, 122 (5th Cir. 1962). And "[s]entencing judges can properly grant continuances to await clarification of the law[.]" *United States v. Tanner*, 544 F.3d 793, 795 (7th Cir. 2008).

That is all this Court—and the Government—did here. Whether Ms. Habba could serve as the Acting U.S. Attorney or otherwise lead the USAO-NJ though broad delegations by the Attorney General were questions of first impression. The Government explained why it believed she could, in comprehensive briefing that relied in part on *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022). That this Court and the Court of Appeals disagreed, and in so doing created a Circuit split, *see Giraud*, 160 F.4th at 405

– 40 –

(rejecting *Arthrex*), does not mean the Government acted purposefully or oppressively to delay Naviwala's sentencing. And once the Court of Appeals affirmed this Court's disqualification order, the Government complied with it. Ms. Habba resigned, and the Attorney General established a supervisory structure for the USAO-NJ under which no one person would have all the authority of a U.S. Attorney.

**4.** Finally, Naviwala's invocation of Rule 48(b) and this Court's supervisory authority falls flat. NDE281 at 47–48. Rule 48 applies only "if unnecessary delay occurs in": "(1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b). But in complaining about how long his prosecution has been pending, NDE281 at 45, Naviwala ignores the time he spent before indictment trying to negotiate a plea agreement. *See, e.g.*, Jan. 24, 2025 Tr. at 64:16–78:14; NDE11, 16, 17, 19, 21 (orders "on the joint application" of the United States and Naviwala signed by defense counsel granting continuances in part because of ongoing plea negotiations). Nor can those complaints be reconciled with his repeated attempts to postpone his trial and other proceedings. For example, had Naviwala's August 2024 request to adjourn trial been granted, his trial would not have occurred until May 2025 at the earliest. *See* NDE38. In any event, because Naviwala did not seek dismissal of the Superseding Indictment on Rule 48(b) grounds prior to the commencement of trial and cannot show good cause now for that lapse, Rule 12 forecloses his Rule 48(b) claim. *See* Fed. R. Crim. P. 12(b)(3), (c)(3).

As for this Court's supervisory authority, this Court rightly observed that dismissal would be proper only "'if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy [is] available to address the prejudice.'" *Giraud*, 2025 WL 2196794, at *6 (quoting with alteration *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019)). But that test "is inherently backwards looking and is designed to remedy prejudice that has already occurred." *Giraud*, 2025 WL 2196794, at *6. Here, by virtue of the stay that this Court granted, "there has been no opportunity for the Government to engage in the misconduct that" Naviwala fears, nor has he "suffered any prejudice yet." *Id.* Moreover, as in *Giraud*, "the Court is well-positioned to provide a far narrower remedy to address any imminent prejudice: preventing it from happening" through a targeted disqualification order if one is warranted. *Id.*

### C. There Is No Basis to Dismiss Torres's Superseding Indictment Either.

In *Pina*, only Ms. Habba's signature appeared on the operative indictment. *See Giraud*, 795 F. Supp. 3d at 605. Because that signature was affixed to the indictment on July 7, 2025, when "Ms. Habba was not lawfully serving as the United States Attorney," this Court "voided her act of signing that document." *Id.* Nonetheless, this Court denied Pina's "motion to dismiss the indictment despite Ms. Habba's defective signature." *Id.* at 606.

In contrast, Ms. Habba's signature, as Acting U.S. Attorney and Special Attorney, is not the only signature on Torres's Superseding Indictment.

– 42 –

TDE77 at 4. AUSA Eli Jacobs signed the Superseding Indictment, too. And Ms. Habba's signature ("/s/ *Alina Habba* / bah") reflects that AUSA Bradley A. Harsch, Chief of the USAO-NJ's Criminal Division, inserted Ms. Habba's signature on her behalf. Nonetheless, Torres has moved to dismiss the Superseding Indictment. This Court should deny that motion.

To begin with, the Superseding Indictment was "signed by an attorney for the government." Fed. R. Crim. P. 7(c). An "'Attorney for the government'" includes: "the Attorney General or an authorized assistant"; "a United States attorney or an authorized assistant"; and "any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. 1(b)(1). Even if Ms. Habba didn't qualify as an "attorney for the government" through her appointment as Special Attorney, AUSA Jacobs plainly does. So even were this Court to void Ms. Habba's signature on the Superseding Indictment, it would still satisfy Rule 7(c).

Nor is clear under this Court's reasoning in *Giraud* and *Pina* that voiding Ms. Habba's signature on the Superseding Indictment is even necessary. The Government accepts for purposes of this motion that Ms. Habba was not the Acting U.S. Attorney when her signature was affixed to the Superseding Indictment. But that signature appears above two titles: Acting U.S. Attorney and Special Attorney. TDE77 at 4. At that time, the Attorney General had already appointed Ms. Habba as a Special Attorney and designated her as the Office's FAUSA. So as a Special Attorney (and FAUSA), she was "an attorney for the government" under Rule 7(c).

In contrast, when her signature was affixed to the *Pina* indictment on July 7, 2025, according to this Court, "Ms. Habba was not lawfully serving as the United States Attorney[.]" *Giraud*, 795 F. Supp. 3d at 604–05 ("when she signed Mr. Pina's indictment on July 7, 2025"). Nor had she had been appointed as Special Attorney and designated as FAUSA, which did not happen until July 24, 2025. *See Id.* at 604. And this Court declined the Government's request to apply the *de facto* officer doctrine to uphold Ms. Habba's signature. So under this Court's reasoning in *Pina*, that signature truly was unauthorized.

The same cannot be said for Ms. Habba's signature on the Superseding Indictment. Granted, this Court rejected the "Government's contention" that the Court "should take a narrow view of how" Ms. Habba's delegation "applies" in any given case. *Id.* at 594; *see id.* at 594–95 ("[I]f the delegation is unlawful, then so are all of its applications."). Still, this Court never held in *Giraud* and *Pina* that Ms. Habba could not serve as Special Attorney or FAUSA. And this Court did hold that the "proper remedy" for a violation of the FVRA "is invalidation of the *ultra vires* action." *Giraud*, 2025 WL 2196794, at *7 (cleaned up). The only potential *ultra vires* action attributable to Ms. Habba in *Torres* is her signature's appearing above "Acting U.S. Attorney." But it was not *ultra vires* for that signature to appear above "Special Attorney." This Court in *Giraud* and *Pina* did not purport to strip her of *that* title.

In any event, as with the indictment in *Pina*, dismissal of the Superseding Indictment here is not warranted. It was returned by the grand jury, which "is

a constitutional fixture in its own right," *United States v. Williams*, 504 U.S. 36, 47 (1992) (cleaned up), and "act[s] independently of either prosecuting attorney or judge," *Stirone v. United States*, 361 U.S. 212, 218 (1960). "An indictment returned by a legally constituted and unbiased grand jury ... is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). And failures by the Executive Branch—even prosecutorial misconduct before the grand jury—provide a court "no authority to dismiss the indictment ... absent a finding that [the defendant] w[as] prejudiced by such misconduct." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).

Torres points to no such prejudice here, much less "prejudice" that "preclude[s] remedies other than dismissal." *United States v. Gussie*, 51 F.4th 535, 539 (3d Cir. 2022). Any mistake in listing Ms. Habba's proper title on the Superseding Indictment did not affect his rights. Torres "has cited no authority—nor could he—for his root-to-branch theory that as long as" Ms. Habba's tenure as Acting U.S. Attorney "was unlawful, then the integrity of his prosecution" was "*necessarily* marred." *Smith*, 962 F.3d at 765–66 "[D]ismissal of the indictment" in such a case "is appropriate only if … the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (cleaned up).

As in *Pina*, the Government is submitting *ex parte* to the Court for *in camera* review the relevant grand jury transcript and the USAO-NJ's internal

– 45 –

approval records. Those documents show which AUSAs participated in the presentation of Torres's Superseding Indictment to the grand jury and which AUSAs reviewed and approved that charging instrument. As those documents confirm, Ms. Habba neither participated in the grand jury proceedings nor personally reviewed and approved the Superseding Indictment. Because "[t]here is no indication that Ms. Habba had a role in any of these decisions, or in the grand jury proceeding other than to ultimately sign the indictment[,]" her signature over an invalid title "is a mere technical defect that amounts to harmless error that" this Court "should 'disregard.'" *Giraud*, 795 F. Supp. 3d at 606 (quoting Fed. R. Crim. P. 52(a)).

To be sure, unlike in *Pina*, the review and approval process for Torres's Superseding Indictment occurred after this Court concluded that Ms. Habba could not serve as Acting U.S. Attorney and had received too broad a delegation to supervise the USAO-NJ. TDE91 at 14–15. But Torres cannot identify any way in which Ms. Habba's precise role in the USAO-NJ affected the Superseding Indictment's substance. In fact, it did not: Ms. Habba never supervised Torres's prosecution in any substantive way during her entire tenure in the USAO-NJ. As for the propriety of Ms. Habba's signature appearing on charging instruments after August 21, this Court stayed its disqualification orders in the *Giraud* and *Pina* matters—a stay that will remain in place until at least the mandate issues in those appeals.

## CONCLUSION

For all these reasons, this Court should deny the defendants' motions to disqualify and to dismiss their operative indictments.

Respectfully submitted,

TODD BLANCHE
DEPUTY U.S. ATTORNEY GENERAL

PHILIP LAMPARELLO
SENIOR COUNSEL

By:    Mark E. Coyne
       Supervisory Assistant U.S. Attorney
       Chief, Appeals Division

Date: January 3, 2026