Joshua C. Gillette
NJ Attorney ID: 007862003
**KAGEN, CASPERSEN & BOGART PLLC**
551 Madison Avenue, 12th Fl.
New York, NY  10022
Telephone:   (212) 880-2045
jgillette@kcbfirm.com
*Attorneys for Amicus Curiae*
*Association of Criminal Defense Lawyers of New Jersey*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>RAHEEL NAVIWALA,<br><br>*Defendant.*<br><br>UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>DANIEL TORRES,<br><br>*Defendant.* | Nos.  2:24-CR-99 (MWB)<br>        2:24-CR-0378 (MWB) |

**BRIEF OF *AMICUS CURIAE* ASSOCIATION OF CRIMINAL DEFENSE LAWYERS OF NEW JERSEY**

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

ARGUMENT ............................................................................................................ 2

    I.      The dispersed delegation workaround is unlawful under the FVRA. .......... 2

    II.     The dispersed delegation workaround is unlawful under the Third Circuit's decision in Giraud. ........................................................................ 4

    III.    Permitting the workaround is unwarranted by either the FVRA or the purported concerns raised by the government. ..................................... 6

    IV.    Dispersed delegation of the authority and discretion reposed in a single United States Attorney undermines accountability ........................... 9

    V.     The government's novel workaround is not being used anywhere else, and it invites politicization. ................................................................ 9

    VI.    The government's refusal to follow the law has created chaos and uncertainty at every stage of the criminal process, which this Court should end once and for all. ..................................................................... 11

CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Conserv. Law Found. v. Ross*,
    422 F. Supp. 3d 12 (D.D.C. 2019) ................................................................................ 7

*In re Grand Jury Subpoenas to the Off. of the N.Y. State Att'y Gen.*,
    No. 1:25-mc-00019, 2026 U.S. Dist. LEXIS 3026 (N.D.N.Y. Jan. 8, 2026) ............ 3, 10

*Kennedy v. Braidwood Mgmt., Inc.*,
    606 U.S. 748 (2025) ..................................................................................................... 4

*L.M.-M. v. Cuccinelli*,
    442 F. Supp. 3d 1 (D.D.C. 2020) .............................................................................. 6, 8

*New Process Steel, L.P. v. NLRB*,
    560 U.S. 674 (2010) ..................................................................................................... 8

*Seila Law L.L.C. v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) .................................................................................................. 7, 9

*United States v. Comey*,
    No. 1:25-cr-00272, 2025 WL 3266932 (E.D. Va. Nov. 24, 2025) ............................... 10

*United States v. Eaton*,
    169 U.S. 331 (1898) .................................................................................................. 4, 5

*United States v. Giordano*,
    416 U.S. 505 (1974) ..................................................................................................... 3

*United States v. Giraud*,
    160 F.4th 390 (3d Cir. 2025) ............................................................................. *passim*

*United States v. Giraud*,
    795 F. Supp. 3d 560 (D.N.J. 2025) .................................................................... *passim*

*United States v. Ramirez*,
    No. 5:25-cr-00264, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025) .............................. 10

**Statutes**

1 U.S.C. § 1 ........................................................................................................................ 6

28 U.S.C. § 546 ............................................................................................................... 3, 8

28 U.S.C. § 509 .................................................................................................................. 4

28 U.S.C. §§ 509, 510 ........................................................................................................ 2

5 U.S.C. § 3345 .............................................................................................................. 3, 9

**Other**

28 C.F.R. § 0.137 ................................................................................................................ 7

## INTRODUCTION

Since 1789, the federal government has been represented in the District of New Jersey by an office headed by a single individual: a United States Attorney appointed—properly—via Presidential appointment, or someone performing the functions and duties of the office pursuant to a lawful statutory designation.[1]

But for *more than a year* now, the office has been without a Senate-confirmed United States Attorney, and for *more than six months* now, since July 1, 2025, the office has been without any lawfully appointed head.[2] The "front office," where the most consequential decisions are made about whether to deprive citizens of their liberty, has a "closed" sign on the door. The front office is where line prosecutors and defense counsel seek review from the Executive's designated representative—a singular, experienced United States Attorney vested with unquestioned legal authority and politically accountable. But there has been no such front office for months.

The government's position undermines Congress' structural judgment that United States Attorneys are singular officers. A single, identifiable officeholder enhances accountability—to the President, to Congress, and to the public. A leaderless office run by committee does the opposite: it obscures responsibility, dilutes supervision, and makes it impossible to say who is answerable for the exercise of prosecutorial power in one of the most consequential federal offices in the country.

As a result, the citizens of New Jersey, the career professionals of the United States Attorney's Office, and—most acutely—the criminally accused have been deprived of the Senate-vetted leadership that they have relied upon for decades. And there is no end in sight: the government's position provides no temporal limit on its chosen arrangement.

---

[1] https://www.justice.gov/usao-nj/about/office-history (last visited January 15, 2026, https://perma.cc/N5D3-Z59J)

[2] *See United States v. Giraud*, 795 F. Supp. 3d 560, 568 (D.N.J. 2025 ("Ms. Habba has exercised the functions and duties of the office of the United States Attorney for the District of New Jersey without lawful authority since July 1, 2025").

This leadership vacuum is completely unnecessary, solvable now, and deliberately inflicted. The citizens of New Jersey, the career professionals of the United States Attorney's Office, and the defendants subject to federal prosecution are entitled to the clarity, stability, and lawful supervision that Congress mandated, not an indefinite leadership void. Enough is enough.

## ARGUMENT

### I. The dispersed delegation workaround is unlawful under the FVRA.

The Attorney General acted unlawfully in delegating around the vacant office of the U.S. Attorney for New Jersey by allocating all of the office's functions and duties among Philip Lamparello, Jordan Fox, and Ari Fontecchio. Regardless of the number of delegees, leaving a PAS office vacant while indefinitely delegating away all of the office's powers represents an impermissible workaround of the congressionally established process for addressing PAS vacancies.

In *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025), the Third Circuit rejected the government's attempt to install Ms. Habba as Acting U.S. Attorney under the FVRA, 160 F.4th at 397-402, as well as the government's fallback position that the Attorney General had validly delegated to Ms. Habba all the functions and duties of the U.S. Attorney pursuant to 28 U.S.C. §§ 509, 510, and 515, *Giraud*, 160 F.4th at 402-06. The Government's fallback theory rested on the very same general vesting-and-delegation statutes that the Government has now invoked to delegate "the full panoply of powers of a U.S. Attorney," *id.* at 403, to a three-member leadership team. And, as set forth in defendant Naviwala's opening brief (at 18-30), the government's attempted end-run around its failed fallback position in *Giraud* should fare no better.

Each United States Attorney's Office is meant to be run by a United States Attorney appointed by the President with the advice and consent of the Senate. When that office is vacant, Congress has authorized four—and only four—temporary, defined, time-limited alternatives: (1) appointment of an interim United States Attorney by the Attorney

2

General under 28 U.S.C. § 546(a), subject to strict time limits; (2) appointment by the district court under § 546(d) if the vacancy persists; and the two FVRA options, *i.e.*, (3) 5 U.S.C. §§ 3345(a)(1) or (4) 5 U.S.C. § 3345(a)(2)-(3). *See In re Grand Jury Subpoenas to the Office of the New York State Attorney General,* No. 1:25-mc-00019, 2026 U.S. Dist. LEXIS 3026, at *15 (N.D.N.Y. Jan. 8, 2026) (noting these are the "four means of temporarily filling the position" that Congress authorized).

Whether the U.S. Attorney's functions are performed by one person or more than one, leaving a U.S. Attorney's office vacant indefinitely and delegating all the office's functions and duties around the vacant office circumvents the options made available by Congress in Section 541, Section 546, and the FVRA for ensuring that the office's functions are properly carried out. Those options were put in place to ensure stability in the leadership of "some of the most critical agencies in the Federal Government" and to reflect Congress's "strong preference that an acting officer be someone with a breadth of experience to properly lead the office." *Giraud*, 160 F.4th at 393. Congress's goals are not well served by "dispersed delegation" to multiple individuals, none of whom is individually capable of performing all the functions and duties of the office.

Though the Attorney General apparently still reads the Department of Justice's vesting-and-delegation statutes to grant near limitless discretion to reassign statutorily established duties and functions, the Supreme Court has made clear that "[d]espite § 510, Congress does not always contemplate that the duties assigned to the Attorney General may be freely delegated." *United States v. Giordano*, 416 U.S. 505, 514 (1974). The Attorney General cannot invoke the general delegation statute to circumvent other more specific laws that impliedly preclude delegations. *See, e.g.*, *id.* at 512-23 (holding that the Attorney General could not broadly delegate wiretap authority). And, of course, delegation "is not an option" when the delegation would violate the Appointments Clause. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 785 n.6 (2025).

3

*Giraud* confirmed that the FVRA imposes limits on the Attorney General's vesting and delegation authority under 28 U.S.C. §§ 509 and 10. Indeed, the Third Circuit agreed with this Court's conclusion that the Attorney General's attempt to use these authorities to delegate all the functions and duties of a U.S. Attorney to Ms. Habba was "plainly prohibited by the FVRA's exclusivity provision." 160 F.4th at 403. As the court explained: "Under the Government's delegation theory, Habba may avoid the gauntlet of presidential appointment and Senate confirmation and serve as the *de facto* U.S. Attorney indefinitely. This view is so broad that it bypasses the constitutional PAS process entirely. It also essentially eliminates the requirements of the FVRA and the U.S. Attorney-specific statute, § 546." *Id.*

The Court continued that under the government's reading, the FVRA's exclusivity provision "creates 'only a minimal constraint'" on the use of vesting and delegation statutes—preventing anyone from using the "acting" title while nonetheless allowing performance of all the powers of the vacant office. *Id.* at 406. Such a "delegation theory would create a means for the Department of Justice to circumvent the FVRA's exclusivity provision" indefinitely. *Id.* "This," for the Third Circuit, "should raise a red flag, given the careful time limitations included in both the FVRA and the U.S. Attorney-specific statute." *Id.* (citing 5 U.S.C. § 3346, 28 U.S.C. § 546(c)(2), and *Eaton*, 169 U.S. at 343).[3]

## II. The dispersed delegation workaround is unlawful under the Third Circuit's decision in Giraud.

Like this Court before it, the Third Circuit was cautious in ensuring that the language in its opinion rejecting the Attorney General's delegation to Ms. Habba did not

---

[3] In reaching this conclusion, the Third Circuit explained that government's attempt to differentiate between someone being an "acting official" and "perform[ing] the functions and duties of the office" would "read[] into the FVRA a distinction that is not there." *Id.* at 404. Thus, when a PAS office is vacant, the FVRA's exclusivity provision not only prohibits delegation of the office's exclusive, nondelegable functions—which could not be delegated even before the FVRA was enacted—but also applies to the office's remaining (nonexclusive, delegable) functions. *See id.*

4

address circumstances not presented in the case before it. The court expressly "did not decide" whether "a more dispersed delegation of authority might not create a *de facto* U.S. Attorney and therefore might not run afoul of the FVRA's exclusivity provision because those are not the facts of this case." *Id.*; *see also United States v. Giraud*, 795 F. Supp. 3d 560, 600 n.257 (D.N.J. 2025). As the parties note, the government has characterized this hypothetical that the Court did not decide as "absurd[]." ECF 281 at 2 & n.6 (quoting Appellant's Brief, *United States v. Giraud*, 25-2635 at 53).

      The government appears to have read the Third Circuit's (and this Court's) prudent decision not to address delegation to more than one person as an invitation to adopt that dubious, and ultimately unlawful, approach. In so doing, the government has tripled down on the use of its vesting and delegation authorities to perpetuate the circumvention of the appointments process that was rejected in *Giraud*. The government says (at 13) that it "disagrees [with] but accepts for purposes of these motions" the decision in *Giraud*, but its brief ignores *Giraud*'s logic and reads as if that decision was never issued.

      Nowhere, for instance, does the government articulate why the Attorney General taking it upon herself to "establish[] a new supervisory structure for the USAO-NJ" (DOJ Br. at 1)—instead of the supervisory structure created by Congress—should raise less concern that the government is simply working around the lawful appointments process. That is perhaps not surprising, since just months ago the government could find no "material" distinction between delegation to one person and delegation to more than one. *Giraud*, 160 F.4th at 406. Still, the government's suggestion that it may act today no differently than "if Congress were to entirely abolish the office of U.S. Attorney" should cause concern. DOJ Br. at 19; *see also id.* at 12 (claiming authority to act "wholly apart from the presence of any U.S. Attorney").

      Nor does this case involve a limited delegation to handle a specific prosecution or investigation that may be permissible. To be sure, as the government notes (DOJ Br. 29), a recusal or other conflict-of-interest circumstance may justify a limited appointment for

5

a limited purpose. But that is far afield from the full-scale delegation of a U.S. Attorney's powers that the government seeks here.

### III. Permitting the workaround is unwarranted by either the FVRA or the purported concerns raised by the government.

The government identifies nothing in the text of the FVRA that supports reading its exclusivity provision to turn on whether an office's functions are delegated to one person or more than one. At most, the government attributes to this Court the view that the ban on using general vesting-and-delegation laws to "authoriz[e] an acting official to perform the functions and duties of" a PAS office extends not only to formally designating someone as "acting" but also to empowering "a single official" to act through delegation. DOJ Br. at 15 (emphasis added). Yet § 3347's use of the singular "an acting official" cannot be read to condone similar delegations to multimember committees. "In determining the meaning of any Act of Congress," "words importing the singular include and apply to several persons" "unless the context indicates otherwise." 1 U.S.C. § 1.[4]

The FVRA demonstrably does not reflect a considered judgment on the part of Congress to allow full delegation around a vacant U.S. Attorney office as long as there is more than one delegee. Congress hardly could have imagined that an Attorney General would inflict on a U.S. Attorney's office the "*absurd[]*" and never-before-seen supervisory structure that has now been imposed on the USAO-NJ. *Cf. Giraud*, 795 F. Supp. 3d at 590-91 (discussing lack of historical precedent in interpreting the FVRA); *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 27-28 (D.D.C. 2020) (declining to read the FVRA to authorize a practice when "[t]here is no evidence that at any time prior to [a challenged] appointment did Congress or the Executive Branch imagine that an agency" would adopt the challenged strategy). If the government's persistent circumvention of the lawful

---

[4] The government also asserts (DOJ Br. at 14) that the Attorney General's dispersed delegation does not violate § 3348 of the FVRA. But *Giraud* made clear that the Third Circuit sees § 3347, not § 3348, as the source of the problem with the Attorney General's delegation around the FVRA. *See* 160 F.4th at 405-06.

6

appointments process is a red flag, that its current strategy for running the USAO-NJ has never been tried anywhere before is yet another indication of unlawfulness. *See Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 220 (2020) (describing "a lack of historical precedent" to support an Executive Branch practice as "perhaps the most telling indication of a severe constitutional problem" (cleaned up)).

None of the best historical examples the government can muster comes close to serving as precedent for this end-run around the appointments process. Beyond limited delegations for specific matters as in the case of recusals—discussed above—that "[l]arge USAOs like the USAO-NJ typically have 'Front Offices'" with senior attorneys reporting to a U.S. Attorney (DOJ Br. at 28) certainly does not support cutting the U.S. Attorney (or Acting U.S. Attorney) out of the picture entirely. And whether or not the Department's vesting-and-delegation statutes permit a First Assistant U.S. Attorney to continue filling in for a U.S. Attorney who has resigned after the FVRA's time limits expire (DOJ Br. at 28-29), following the Department's default rules for addressing vacancies (28 C.F.R. § 0.137) at least does not ring the same alarm bells about circumventing the appointments process as this Rube Goldberg approach to the USAO-NJ vacancy.

The factual context matters. *See, e.g.*, *Giraud*, 795 F. Supp. 3d at 594 (noting "it is no mere coincidence that Ms. Habba was named a Special Attorney and delegated this authority as part of a single series of moves made with the express goal of installing her as the Acting United States Attorney"); *L.M.-M.*, 422 F. Supp. 3d at 26 (finding that someone cannot be treated as a "first assistant" under the FVRA when the purported "first assistant" position was created after the principal office was vacant). Here, after failing to secure the Senate's consent to the President's preferred nominee for U.S. Attorney, the government has broken out a seemingly bottomless bag of tricks to prolong the vacancy and work around the vacant office as if Congress had never created it—a strategy that the President has been perfectly candid about. *See* Naviwala Br. at 3 & n.10.

What's more, if accepted here, the government's theory would open the door to all kinds of maneuvers to avoid the confirmation process for PAS offices. Every (or nearly every) Cabinet Department has general vesting-and-delegation provisions in its organic statute. *See L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 31 & n.11 (D.D.C. 2020). And nothing would stop the government from adopting even more farcical divisions of a PAS office's authority. Why not give 99 percent of an office's functions to one person and one percent to another, or have two delegees, one of whom only works Sundays? Why not have Cabinet officials delegate their authority among two subordinates before resigning?

Finally, this Court should not be deterred by the government's suggestion that the *status quo* is necessary to ensure that "the office's work need not grind to a halt" just because "there is a vacancy in the office of the U.S. Attorney, and no one can serve as Acting U.S. Attorney under the [FVRA] or has been appointed interim U.S. Attorney." DOJ Br. at 1. The District Court, pursuant to 28 U.S.C. § 546(d), appointed an interim U.S. Attorney. That person was fired and unlawfully replaced. So any concern about continuity of operations in the USAO-NJ stems from the government's own actions.

In any event, this would not be the first time that the inability to delegate around a vacancy has affected the agency's operations. *See, e.g.*, *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 688 (2010) (rejecting delegation as a means of allowing an agency to "keep its doors open despite vacancies" despite "the costs that delay imposes on the litigants"). The government's "consequentialist argument," *Giraud*, 795 F. Supp. 3d at 591, cannot excuse its non-compliance with the law.

The government's fragmented leadership experiment is not merely untested. It is untethered to any limiting principle, unbounded by time, and unmatched by practice elsewhere. It is precisely the kind of workaround Congress meant to foreclose.

8

## IV. Dispersed delegation of the authority and discretion reposed in a single United States Attorney undermines accountability

***The*** United States Attorney is a singular officer—***one*** person—for a reason: the buck stops there.

The government's reliance on §§ 509 and 510 undermines a central purpose of both the FVRA and the Appointments Clause: to ensure that the President can be held accountable for the conduct of the individuals performing the functions and duties of a PAS office. The Appointments Clause provides for accountability by requiring or allowing Congress to require offices to be filled through Presidential nominations, and the FVRA provides that only the President (and only the President) may designate as an acting officer someone other than the first assistant to the office. 5 U.S.C. § 3345(a). These measures of accountability are diminished when a vacant office's functions and duties are instead merely delegated within an agency—and not by the President.

Even more significant, the "dispersed delegation" at issue in this case threatens government accountability in yet another way by departing from Congress's mandate that U.S. Attorneys should be singular officers. The "solitary nature" of an office "enhance[s]" the officeholder's "accountability." *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 224 (2020). "[Y]ou know exactly who to blame when an individual—but not when a group—does a job badly. The same is true in bureaucracies." *Id.* at 293 (Kagan, J., concurring in part and dissenting in part). By forgoing appointment of a U.S. Attorney (even an acting one) the government is making it harder to hold anyone accountable for the administration of justice in the District of New Jersey.

## V. The government's novel workaround is not being used anywhere else, and it invites politicization.

The government's attempt to operate the United States Attorney's Office for the District of New Jersey through a multi-person "executive office" is not only unprecedented historically. It is also unique among the approaches the government has

9

adopted in the other districts where United States Attorneys have been disqualified because of the failure to follow the statutory and constitutional appointment laws. The New Jersey triad workaround uniquely penalizes this District. Permitting it to stand risks letting it metastasize, creating a template for circumvention in other districts.

United States Attorneys have now been disqualified in five other federal districts. Those disqualifications include: the Central District of California (disqualifying Bilal Essayli), *see United States v. Ramirez*, No. 5:25-cr-00264, 2025 WL 3019248 (C.D. Cal. Oct. 28, 2025); the Eastern District of Virginia (disqualifying Lindsey Halligan), *see United States v. Comey*, No. 1:25-cr-00272, 2025 WL 3266932 (E.D. Va. Nov. 24, 2025); the Northern District of New York (disqualifying John Sarcone), *see In re Grand Jury Subpoenas*, *supra*, 2026 U.S. Dist. LEXIS 3026 (N.D.N.Y. Jan. 8, 2026); the District of Nevada (disqualifying Sigal Chattah), *see United States v. Jackson*, No. 2:25-cr-00240, ECF 42 (D. Nev. Sept. 30, 2025); and the District of New Mexico (disqualifying Ryan Ellison), see *United States v. Black*, No. 25-cr-03354, ECF 56 (D.N.M. Jan. 14, 2026).

In none of those districts has the government responded by fragmenting the office into a collective leadership structure designed to exercise the full powers of a United States Attorney without invoking the statutory appointment mechanisms Congress prescribed. In none of these districts did it respond by creating a three-person "executive office" to run prosecutions indefinitely. In none did it attempt to bypass Senate confirmation or judicial appointment by this Rube Goldberg workaround of dispersing authority among unconfirmed subordinates. The government's approach here is unique.

Allowing this novel workaround to persist in New Jersey would invite its replication elsewhere. It would supply a ready-made, nationwide template to evade the framework Congress enacted to ensure accountability, transparency, and lawful supervision of federal prosecutorial power.

That risk is heightened by the Executive's demonstrated interest in exerting control over prosecutorial authority through informal means—installing inexperienced

10

individuals while circumventing these structural safeguards Congress created precisely to guard against politicized prosecution. Those safeguards are not formalities. They are structural constraints designed to ensure that the power to prosecute is exercised by officials who are publicly accountable and lawfully appointed. As Attorney General Robert H. Jackson famously warned, the "most dangerous power of the prosecutor" arises when prosecution becomes "personal"[5]—when structural checks erode and discretion is exercised without accountability. Congress designed the appointment framework at issue here, and courts enforce it, to prevent that risk before it materializes.

### VI. The government's refusal to follow the law has created chaos and uncertainty at every stage of the criminal process, which this Court should end once and for all.

The current leadership structure has perpetuated a state of unprecedented uncertainty for criminal defendants, counsel, courts, and the public. That uncertainty continues to impose unnecessary burdens on every stage of the criminal process, from investigation through sentencing, contrary to the Third Circuit's instruction that "the citizens of New Jersey and the loyal employees in the U.S. Attorney's Office deserve some clarity and stability." *Giraud*, 160 F.4th at 393. Rather than clarity, the government's chosen arrangement has produced confusion about who holds lawful supervisory authority to make the most consequential decisions in federal criminal cases. The confusion has manifested in at least four ways, all of which urgently require this Court to end it once and for all.

*First*, fundamental liberty-affecting decisions are being made under authority whose validity remains unsettled. That uncertainty permeates the issuance and enforcement of grand jury subpoenas and the supervision of grand jury testimony; charging decisions; the authority to bind the United States to plea offers, cooperation

---

[5] https://www.justice.gov/sites/default/files/ag/legacy/2011/09/16/04-01-1940.pdf (last visited Jan. 15, 2026, https://perma.cc/4APJ-UQTL)

11

agreements and proffer arrangements; pretrial detention positions that determine whether a presumptively innocent person remains incarcerated; and sentencing positions that shape years—or decades—of imprisonment. Defendants and their counsel are entitled to confidence that decisions affecting liberty rest on lawful authority. The present structure supplies neither.

*Second*, inconsistent preservation rules have created a procedural minefield. As the ACDL-NJ's January 8, 2026 letter (*Naviwala,* ECF 286) indicated, the uncertainty has also already produced inconsistent and inequitable procedural consequences. One District Judge has issued orders requiring all challenges to the current leadership structure to be filed by January 26, 2026, on pain of having any future claims "waived and forfeited for all time"—regardless of how higher courts may later resolve the issue. Other judges have imposed no such requirement. Thus, identically situated defendants are subject to radically different procedural consequences based solely on the judge to whom their case is assigned. That disparity is indefensible and underscores the need for prompt resolution.

*Third*, the confusion is compounded by the fact that Alina Habba has been appointed "Senior Advisor to the Attorney General for U.S. Attorneys" and may still exercise supervisory authority over particular New Jersey cases "from time to time" (ECF 268), creating a shadow leadership structure preventing defense counsel from being certain who ultimately controls charging decisions and policies, creating ambiguity that is incompatible with the transparent and accountable exercise of prosecutorial power.

*Fourth*, the flood of litigation spawned by the government's decision not to follow the law is costing criminal defendants—and the CJA program—thousands of dollars in legal fees and lawyer hours that should simply never have been incurred. To be sure, all criminal litigation entails costs. But the added costs here are different in kind, because they are imposed solely by the government's obstinate refusal to follow the long-settled legal framework for filling U.S. Attorney vacancies. Defendants accept that they may have

12

to litigate guilt or innocence, evidentiary rulings, sentencing issues, even remands after appeal. What they should not have to keep litigating is whether the person in the grand jury room accusing them of a federal crime was, in effect, just a random citizen with no lawful right to be there at all—just as they should never have to litigate whether the judge presiding over their case is actually an Article III judge.

The Court should resolve this uncertainty once and for all. Unless this Court resolves the legality of the current arrangement definitively, the government's approach will continue to generate serial litigation, inconsistent rulings, and unnecessary expense. The strategy of cycling through personnel maneuvers—appointing one individual, then another, then dispersing authority—invites indefinite and needless litigation.

## CONCLUSION

For the foregoing reasons, the Court should conclude that Philip Lamparello, Jordan Fox, and Ari Fontecchio are not validly appointed to exercise the delegated powers of the Attorney General and are disqualified from supervising the Office of the U.S. Attorney for the District of New Jersey.

Dated: January 17, 2026

Respectfully submitted,

**KAGEN, CASPERSEN & BOGART PLLC**

*/s/ Joshua C. Gillette*
Joshua C. Gillette
jgillette@kcbfirm.com
551 Madison Avenue, 12th Fl.
New York, NY  10022
Telephone:   (212) 880-2045
Facsimile:   (646) 304-7879

*Attorneys for Amicus Association of Criminal Defense Lawyers of New Jersey*

13

**CERTIFICATE OF SERVICE**

  I hereby certify that on January 17, 2026, I caused a copy of this document to be served by the notice of electronic filing generated by this Court's electronic case filing system upon all counsel of record in this case.

            */s/ Joshua C. Gillette*
            Joshua C. Gillette
            KAGEN, CASPERSEN & BOGART PLLC
            551 Madison Avenue, 12th Fl.
            New York, NY  10022
            Telephone:   (212) 880-2045
            jgillette@kcbfirm.com