Doug Passon
Law Offices of Doug Passon, PC
10565 N. 114th St., Suite 101
Scottsdale, AZ 85259
Telephone: 480.448.0086
Email: doug@dougpassonlaw.com

Rahul Agarwal
Friedman Kaplan Seiler Adelman & Robbins
7 Times Square
New York, NY 10036
(212) 833-1132
ragarwal@fklaw.com
**Attorneys for Defendant Raheel Naviwala**

Jason J. LeBoeuf, Esq. (#033612001)
ZIEGLER LAW GROUP, LLC
651 Old. Mt. Pleasant Avenue, Suite 150
Livingston, New Jersey 07039
(973) 533-1100/ (973) 533-1144 (f)
jason@zlgllc.com
**Attorney for Defendant Daniel Torres**

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>RAHEEL NAVIWALA,<br><br>          Defendant.<br><br>UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>    v.<br><br>DANIEL TORRES,<br><br>          Defendant. | CASE NOS.  2:24-CR-99,<br>            2:24-CR-0378<br><br>**CONSOLIDATED  SUPPLEMENTAL BRIEF OF DEFENDANTS**<br><br>COURT: Hon. Matthew W. Brann |

.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

I.    INTRODUCTION ....................................................................................... 1

II.   THE COURT'S QUESTIONS TO DEFENDANTS ........................................ 2

    A.   "Why should I view this appointment broadly, which is to say that triumvirate as a whole?" ............................................................................................... 2

    B.   "[W]hy do the defendants here have standing to challenge the triumvirate in general as opposed to Mr. Lamparello alone?" .......................................... 5

    C.   "[I]f I limit your challenge to Mr. Lamparello, then the delegation does not include all of the powers of a [USA], does it?" .......................................... 5

    D.   "Do you agree the Government could validly appoint an Acting USA under the Federal Vacancy Reform Act, [5 U.S.C. § 3345(a)(2) or (a)(3)]." ............................ 5

    E.   "Don't the statutes vesting full prosecutorial power in the AG . . . [at 28 U.S.C. §§ 518(b), 519] indicate Congress's intent that the AG should be able to manage prosecutions throughout the nation as she pleases?" .................................................. 6

    F.   "Do you agree that there is a distinction between the authority of the [AG] and the [USA] to prosecute cases? And together with that, is there any statutory reason that these authorities are not coextensive with regard to the [USA's] district?" ....... 8

    G.   "If these authorities do, in fact, overlap, why can't the AG just take direct control of all prosecutions in the given district Mr. Coyne has referenced, or even nationwide? And isn't that what is happening here? And beyond that, isn't that acceptable?" ............................................................................................... 10

    I.    "[H]ow do you distinguish United States against Hilario[, 218 F.3d 19 (1st Cir. 2000), which] . . . held that an AUSA assigned to a district with an invalidly appointed USA could continue to prosecute cases under the AG's 'plenary power over litigation to which the United States is a party, citing to [28 U.S.C. § 516].' Why doesn't that control here?" ........................................................................................... 12

    J.    "What do you make of . . . [In Re: Sealed, 829 F.2d 50 (D.C. Cir. 1987)?]. There the District of Columbia Circuit approved the [AG's] appointment of an independent counsel by delegation pursuant to [28 U.S.C. §§ 509, 510 and 515] even though the delegated powers were 'identical to those' delegated under a statute that created an

independent counsel subject to appointment by a court. Doesn't that reasoning strongly support the Government's reading about the statutory scheme?".............. 13

K.   "What is the basis for your statement that violating a statute dealing with appointments amounts to a constitutional violation?"................................................ 14

L.   "[H]ow do you square the Supreme Court's clear statement that appointments issues are 'nonjurisdictional' -- and I am looking there at [Freytag v. Commissioner, 501 U.S. 868, 877-878 (1991)] -- with your argument that jurisdiction is lacking in a criminal case with an unlawfully appointed prosecutor?" ........................................ 15

M.   "[United States v. Fitzhugh, 78 F.3d 1326, 1330 (8th Cir. 1996)] states this, 'Alleged defects in the authority of a prosecutor have consistently been treated as nonjurisdictional, and therefore, subject to waiver either by a valid guilty plea or by the absence of a timely objection."........................................................................... 16

N.   "As to Mr. Naviwala, from what point should we begin calculating the 'length of the delay' in the sentencing?" ............................................................................... 17

O.   "[H]ow can I possibly grant such significant relief based on speculation about how long the delay might be?" ................................................................................. 18

P.   "What is the legal significance, if any, of the "source of the appropriations that have funded and will continue to fund litigation occurring in the District of New Jersey while led by the 'triumvirate'?"..................................................................... 20

CONCLUSION ......................................................................................................... 20

CERTIFICATE OF SERVICE.................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020) ................... 17

*Freytag v. Commissioner*, 501 U.S. 868 (1991) ........................................... 15

*Glidden Co. v. Zdanok*, 370 U.S. 530 (1962) ............................................. 16

*In Re: Sealed*, 829 F.2d 50 (D.C. Cir. 1987) ............................................. 13

*Kennedy v. Braidwood,* 606 U.S. 748 (2025) ............................................. 11

*Mapp v. Ohio*, 367 U.S. 643 (1961) ..................................................... 20

*Rafferty v. Denny's, Inc.*, 13 F.4th 1166 (11th Cir. 2021) ............................... 9

*Thomas v. I.N.S.*, 35 F.3d 1332 (9th Cir. 1994) ......................................... 9

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979)..................................... 7

*United States v. Durham*, 941 F.2d 886 (9th Cir. 1991) ................................. 16

*United States v. Fitzhugh*, 78 F.3d 1326 (8th Cir. 1996) ............................... 16

*United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999) ................................... 6

*United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025)................................... 1

*United States v. Giraud*, 795 F. Supp. 3d 560 (D.N.J. 2025) ........................... 18

*United States v. Giraud*, No. 1:24-cr-00768, 2025 U.S. Dist. LEXIS 148014, 2025 WL 2196794 (D.N.J. Aug. 1, 2025)................................................... 9, 18

*United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000) ................................. 12

*United States v. Philadelphia,* 482 F. Supp. 1248 (E.D. Pa. 1979), *aff'd*, 644 F.2d 187 (1980) ................................................................................. 6

*United States v. Providence Journal Co.*, 485 U.S. 693 (1988) .......................... 16

*United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999) ........................... 16

*United States v. Sotomayor Vazquez*, 69 F. Supp. 2d 286 (D.P.R. 1999), *aff'd*, 249 F.3d 1 (1st Cir. 2001)........................................................................ 14

*United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024) ........................ 14

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990).............................. 14

## Statutes

28 U.S.C. § 509 ...................................................................*passim*

28 U.S.C. § 510 ...................................................................*passim*

28 U.S.C. § 515 ...................................................................*passim*

28 U.S.C. § 518 ......................................................................6, 9

28 U.S.C. § 519 ........................................................................7

28 U.S.C. § 533 ........................................................................8

28 U.S.C. § 543 ...................................................................................... 8

28 U.S.C. § 546 ............................................................................... *passim*

28 U.S.C. § 547 ...................................................................................... 9

5 U.S.C. § 301 ..................................................................................... 13

5 U.S.C. § 3345 ............................................................................ ii, 5, 6

## Other Authorities

Amicus Br. of Bipartisan Current and Former Members of Congress ISO Neither Party and in Favor of Affirmance, *United States v. Giraud*, Nos. 25-2635 & 25-2636 (3d Cir. Oct. 6, 2025)............................................................................................ 14

Att'y Gen. Pamela Bondi, Ofc. of Att'y Gen., Order No. 6510-2025 ......................... 3

Br. of Amici Curiae Former Republican Members of Congress ISO Neither Party, *United States v. Giraud*, No. 1:24-cr-00768 (D.N.J. Aug. 13, 2025) ......................... 15

Justice Manual, Dep't of Justice § 9-2.001 .................................................... 9

Memorandum from Henry C. Whitaker, Counselor to the AG (Dec. 8, 2025) ............ 3

Pet. of the United States for Rehearing En Banc, *United States v. Giraud*, Nos. 25-2635 & 25-2636 (3d Cir. Jan. 14, 2026) ...................................................... 2

Transcript of Oral Argument at 76:13-15, *United States v. Naviwala*, No. 2:24-cr-00099 (D.N.J. Jan. 23, 2026).............................................................. *passim*

U.S. Atty's Ofc. for the Dist. of N.J., *Criminal Division*................................ 4

U.S. Atty's Ofc. for the Dist. of N.J., *About the Office* ............................... 3

## Constitutional Provisions

U.S. Const., art. II, § 2, cl. 2.................................................................. 1, 19

## Law Reviews

Hon. Antonin Scalia, *Symposium: Separation of Powers as a Safeguard of Federalism: Foreword: The Importance of Structure in Constitutional Interpretation*, 83 Notre Dame L. Rev. 1417 (2008)........................................................................... 2

## I.    INTRODUCTION

At all phases of the instant litigation and previously in *Giraud*, the Government has brazenly chosen to ignore what the law requires, and instead focuses on what it does not prohibit with the goal of vesting absolute prosecutorial power in the President indefinitely. Thus, according to the Government: Senate confirmation is optional, court appointments are meaningless, local United States Attorneys (hereinafter USAs) are unnecessary, and the states must cede all prosecutorial power to the Executive.

Yet, the Constitution requires that the President "***shall*** nominate . . . all . . . Officers of the United States."[1] As "[t]he [USA] leading each office is an officer," "Congress . . . require[s] the appointment of [USAs] to follow the PAS process."[2] Notwithstanding these unambiguous requirements of the Executive, the Government represented at the hearing that "the President ***never*** has to nominate any USA ***ever***. That's sort of the bottom line."[3]

Per the Government, this "bottom line" entails that "the Attorney General herself can pull every single case here and concentrate it, have it be run out of main justice. Every single one. And I know of no principle that would prohibit the Attorney General from doing it."[4] Moreover, says the Government, there is no time-limit on

---

[1] U.S. Const., art. II, § 2, cl. 2 (emphasis added).

[2] *United States v. Giraud*, 160 F.4th 390, 393 (3d Cir. 2025).

[3] Transcript of Oral Argument at 76:13-15, *United States v. Naviwala*, No. 2:24-cr-00099 (D.N.J. Jan. 23, 2026), ECF Doc. 302 (emphasis added) (hereinafter "Hearing Trans.").

[4] Hearing Trans. at 84:15-19.

such a concentration of power,[5] and even judicial appointments are subject to the approval of the Executive.[6]

Rather than exercising the authority the Constitution explicitly and affirmatively requires of the Executive, the Government instead seeks to exploit what it believes the law implicitly "does not prohibit."[7] It does so in order to indefinitely "concentrate" all prosecutorial power in "main justice." The Government thus nakedly flouts what the law requires in order to do what the Constitution and Congress have *always* expressly prohibited: the unlimited, unchecked and unconstrained concentration of all prosecutorial power in the President. As Justice Scalia rightly recognized, such power is anathema to a "constitutional structure" focused on "securing our individual liberty."[8]

This Court must shut down this continued assault on democratic governance by finally holding the Government to account. There is but one way to do so: dismissal of the superseding indictments.

## II.    THE COURT'S QUESTIONS TO DEFENDANTS

A.   *"Why should I view this appointment broadly, which is to say that*

---

[5] Hearing Trans. at 59:

[6] Hearing Trans. at 18:11 (stating that a 28 U.S.C. § 546(d) appointee must be "acceptable to the President").

[7] Pet. of the United States for Rehearing En Banc, *United States v. Giraud*, Nos. 25-2635 & 25-2636 (3d Cir. Jan. 14, 2026), ECF Doc. 85 at 15 (emphasis added).

[8] Hon. Antonin Scalia, *Symposium: Separation of Powers as a Safeguard of Federalism: Foreword: The Importance of Structure in Constitutional Interpretation*, 83 Notre Dame L. Rev. 1417, 1420 (2008).

*triumvirate as a whole?"*[9]

The Government's triumvirate may be a different name, but it's the same game. Whether the designees are viewed as a whole, or individually, does not change the fact that, *contra* the Appointments Clause, the President explicitly ***refuses*** to nominate a USA in order to concentrate all prosecutorial power in the Executive indefinitely.

In that regard, the Attorney General's (hereinafter AG) Order of December 8, 2025,[10] establishing the triumvirate does not sequester the duties of the three delegees such that they are intended to act wholly independently of each other. As the "Memorandum for the Attorney General" attached to the Order states, "[t]his proposed order would ***divide the responsibilities of the USA*** among three officials so that the district may have continuity of leadership. . . ."[11] Thus, these three officials collectively perform the responsibilities of a single entity: the USA. This is why the Department of Justice expressly states that "[t]he USA's Office for the District of New Jersey is [now] headed by an Executive Office," which "consists of" the three delegees.[12]  Moreover, the Divisions of the USAO-DNJ do not

---

[9] Hearing Trans. at 38:10-11.

[10] Att'y Gen. Pamela Bondi, Ofc. of Att'y Gen., Order No. 6510-2025 (hereinafter "AG's Order"), https://www.justice.gov/opa/media/1420361/dl.

[11] Memorandum from Henry C. Whitaker, Counselor to the AG 1 (Dec. 8, 2025) (emphasis added), https://www.justice.gov/opa/media/1420361/dl.

[12] U.S. Atty's Ofc. for the Dist. of N.J., About the Office (updated Dec. 17, 2025), https://www.justice.gov/usao-nj/about.

operate as wholly independent entities in any event.

For example, Mr. Fontecchio oversees the Administrative Division, which "is responsible for planning and executing a comprehensive range of administrative services that support the mission of the [USA's] Office."[13] This includes providing "guidance on the management and use of the District's financial, manpower, and physical resources, and on administrative policies, procedures, and practices" as well as "automated litigation support; case management and docketing; telecommunication services; procurement; mail; records; and document reproduction services."[14] Thus, Mr. Fontecchio's duties necessarily encompass and are intertwined with the operation of all Divisions of the USAO-DNJ.

For that matter, as Defendants pointed out in their consolidated omnibus reply brief (hereinafter "COR"), "all of the District's affirmative *civil* enforcement (ACE) lawyers . . . are assigned to the Criminal Division."[15] And as for the Civil Division, it is responsible for "defense of government employees in *criminal* or *quasi-criminal* cases brought in state court…."[16] Of course, as she oversees the Appellate Division, Ms. Fox is responsible for all criminal appeals too. Thus,

---

[13] *See, e.g.*, U.S. Atty's Ofc. Dist. of New Jersey, *Administrative Division* (updated Dec. 17, 2025), https://www.justice.gov/usao-nj/administrative-division.

[14] *Id.*

[15] ECF Doc. 296 at 17 n.33 (emphasis in original; citing U.S. Atty's Ofc. Dist. of New Jersey, Criminal Division (updated Dec. 17, 2025), https://www.justice.gov/usaonj/criminal-division).

[16] U.S. Atty's Ofc. Dist. of New Jersey, *Civil Division* (updated Dec. 17, 2025), https://www.justice.gov/usao-nj/civil-division.

Administrative, Criminal and Civil matters are intrinsic to each Division, and so should be treated as a consolidated unit.

Contrary to all available evidence, the Government suggests that the three delegees operate wholly independent of each other. Assuming such is even logistically possible, that is tantamount to the creation of three new, Congressionally-unauthorized offices and so fail for the reasons set forth in the COR.[17]

B. *"[W]hy do the defendants here have standing to challenge the triumvirate in general as opposed to Mr. Lamparello alone?"*[18]

As noted above, the triumvirate is an intrinsically integrated unit, i.e., an "Executive Office," which gives Defendants' standing to challenge that entity inasmuch as it is that entity that now heads the USAO-DNJ.

C. *"[I]f I limit your challenge to Mr. Lamparello, then the delegation does not include all of the powers of a [USA], does it?"*[19]

Whether Mr. Lamparello has been delegated just a subset of all the powers of a USA is not material. The problem is that there is no statutory authority for such a delegation at all during a vacancy.

D. *"Do you agree the Government could validly appoint an Acting USA under the Federal Vacancy Reform Act, [5 U.S.C. § 3345(a)(2) or (a)(3)]."*[20]

The Defendants agree that, in general, "***the President (and only the President)***"

---

[17] *See* ECF Doc. 296 at 17 n.33.
[18] Hearing Trans. at 41:2-4.
[19] Hearing Trans. at 41:20-23.
[20] Hearing Trans. at 42:4-7.

may appoint an Acting USA under 5 U.S.C. § 3345(a)(2) or (a)(3), but only when the office is "vacant."[21] As Defendants noted during oral argument, such appointment power is trumped by 28 U.S.C. § 546(d).[22] Once, as here, a judicial appointment is made, the President may only remove the judicial-appointee with a PAS-compliant nominee.[23] As the judges of this District utilized their 546(d) powers to appoint Desiree Grace, the only viable mechanism to replace that appointment is through the PAS process.

     E.   *"Don't the statutes vesting full prosecutorial power in the AG . . . [at 28 U.S.C. §§ 518(b), 519] indicate Congress's intent that the AG should be able to manage prosecutions throughout the nation as she pleases?"*[24]

Respectfully, no. Almost 50 years ago in *United States v. Philadelphia*,[25] Judge John William Ditter, Jr., of the Eastern District of Pennsylvania expressly rejected such an expansive interpretation of 28 U.S.C. § 518(b) that would have "permit[ted] the AG to institute litigation regarding any matter in which he thinks the United States may be 'interested' for "[s]uch a power would extend infinitely. . . ."[26] According to Judge Ditter:

     It takes a vivid imagination indeed to believe that Congress

---

[21] 5 U.S.C. § 3345(a)(2), (a)(3) (emphasis added).

[22] *See* Hearing Trans. at 42:20-43:3.

[23] *United States v. Gantt*, 194 F.3d 987, 1000 (9th Cir. 1999) (holding that in the context of a judicially-appointed USA, "the President retains the power to replace the court-appointed USA with an Attorney ***appointed by the President and confirmed by the Senate***.") (Emphasis added).

[24] Hearing Trans. at 109:12-16.

[25] 482 F. Supp. 1248 (E.D. Pa. 1979), *aff'd*, 644 F.2d 187 (1980).

[26] *Id.* at 1258 (emphasis added).

> would grant such a tremendous power by means of such an
> innocuous statute. . . . The fact is that Section 518 grants
> none of the powers that the AG suggests. On the contrary, *it
> is merely a housekeeping provision* which pertains to the
> internal organization of the federal government.[27]

In affirming *Philadelphia*, the Court of Appeals also expressly rejected the AG's argument—which she again employs in the instant matter—that "statutory silence indicates congressional intent."[28] As the Court of Appeals even then "recognize[d] . . . the [Supreme] Court has been far more reluctant to infer rights of action from silent statutes."[29]

Of course, 28 U.S.C. § 519 also "pertains to the internal organization of the federal government" and, as such, does not support the inference that Congress intended to give the AG carte blanche authority over all prosecutions throughout the nation, let alone in any particular district in the absence of the local USA. Moreover, this statute begins with a telling qualifier: "[e]xcept as otherwise authorized by law." As discussed in Part V of the COR, Congress very clearly intends for there to be USAs and for them to remain substantially independent of the AG.[30]

While Sections 516, 518, and 519 do authorize the AG to direct how litigation is conducted by a *duly appointed* USA or *lawful* acting official, those statutes do *not* authorize the AG to decide that the office itself need not be filled, or to fill the USA

---

[27] *Id.*

[28] *Id.* at 192.

[29] *Id.* (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)).

[30] *See* ECF 296 at 18-23.

position in any way that he or she chooses. Congress created the USA position and likewise created the exclusive mechanisms for filling it temporarily when vacant.

Thus, although the AG has the power to direct a USA—***once in office***—on how to conduct litigation, the AG cannot dictate how that person is to be appointed, or to direct litigation in the absence of such a person. To read 28 U.S.C. §§ 518(b) and 519 to impart to the AG the authority to "manage prosecutions throughout the nation as she pleases" even in the absence of a USA, would be to render USAs wholly super-fluous and eviscerate their independence.

> F. *"Do you agree that there is a distinction between the authority of the [AG] and the [USA] to prosecute cases? And together with that, is there any statutory reason that these authorities are not coextensive with regard to the [USA's] district?"[31]*

Defendants agree that there is a distinction, but do not agree that the prosecutorial authority of the AG is coextensive with that of a USA. When this Court specifically asked the Government whether it could point "to any case in which a court affirmed a delegation of authority under sections 509, 510, 515, 533, 543 or any other Department of Justice statute that was coextensive with the authority of a statutorily created PAS office,"[32] the Government could not. The Government stated that "I am not confident that I will locate one"[33] and this Court noted that it could not either.[34]

---

[31] Hearing Trans. at 110:13-18.
[32] Hearing Trans. at 65:12-16.
[33] Hearing Trans. at 65:23-24.
[34] *Id.* at 65:25.

This is not surprising because the pertinent statutes make clear that the AG's authority to prosecute cases is ***not*** coextensive with the local USA. While the AG's authority is "complementary"[35] to that of a local USA, it nonetheless is narrower in scope. Although "Congress expressly assigned overlapping authority to both the AG and to USAs," a USA nonetheless "exercise[s] authority without the need for delegation from the AG."[36]

In that regard, as this Court previously recognized, Congress delegated to USAs "plenary authority"[37] to "prosecute for ***all offenses*** against the United States" within their respective districts.[38]  In contrast, Congress limited the AG's authority, or those "specially appointed" and "specifically directed" by her, to "conduct any kind of ***legal proceeding***."[39] Unlike "all offenses," "legal proceeding" is set forth in the singular. Moreover, the AG must determine that it is "in the interests of the United States"[40] to do so. With respect to the AG's ability to delegate her own functions to others, she may only do so "from time to time."[41] That phrase is commonly understood to mean "occasionally," "infrequent[ly]," and "[n]ot habitually. . . ."[42] Thus, the statutory

---

[35] *United States v. Giraud*, No. 1:24-cr-00768, 2025 U.S. Dist. LEXIS 148014, *23, 2025 WL 2196794 (D.N.J. Aug. 1, 2025).

[36] *Thomas v. I.N.S.*, 35 F.3d 1332, 1339 (9th Cir. 1994).

[37] *Id.* 2025 U.S. Dist. LEXIS 148014, *23 n.93 (citing *inter alia* Justice Manual, Dep't of Justice § 9-2.001).

[38] 28 U.S.C. § 547(1) (emphasis added).

[39] 28 U.S.C. § 515(a) (emphasis added).

[40] 28 U.S.C. § 518(b).

[41] 28 U.S.C. § 510.

[42] *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1188-89 (11th Cir. 2021)

structure makes clear that Congress granted USAs plenary authority over all prosecutions within their respective districts, and the AG the authority to only occasionally prosecute specific cases but only, i.e., "in the interests of the United States." To read the statutes to imbue the AG with prosecutorial authority coextensive with the USA is to render the position of USA wholly superfluous.

    G. *"If these authorities do, in fact, overlap, why can't the AG just take direct control of all prosecutions in the given district Mr. Coyne has referenced, or even nationwide? And isn't that what is happening here? And beyond that, isn't that acceptable?"*[43]

As argued in Subpart F above, Congress did not give the AG the authority to directly control all prosecutions in a given district. The plenary authority to supervise is not tantamount to the plenary authority to prosecute. This is especially the case where, as here, it has long been understood that USAs exercise substantial independence from the AG and even the President.[44]

Moreover, if the AG's plenary authority to supervise is tantamount to plenary authority to prosecute all offenses within a district, then, *contra Giraud*, the AG could simply designate a *de facto* USA or, as here, an Executive Office-*qua-de facto* USA and thereby bypass the PAS process altogether. But as this Court recognized when questioning the Government about Justice Thomas's dissent in *Kennedy v.*

---

(alterations in original; citing entry for "Occasional," *The American Heritage Dictionary*, at 1215 (4th ed.)).

    [43] Hearing Trans. at 113:7-12.

    [44] *See* ECF Doc. 296 at 25-26, n. 66 and accompanying text.

*Braidwood*,[45] "Congress's 'vesting of appointment authority must be explicit'. . . ."[46] Such authority "'cannot be deemed implicit in a more general grant of authority to a department head.'"[47]

According to Justice Thomas, a court "cannot infer appointment authority from a principal officer's authority to supervise an inferior officer. By its default rule, the Appointments Clause *presumes* that an inferior officer will act at the direction of a principal officer ***and yet be appointed by the President with Senate confirmation***."[48] So, "'we should not presume that Congress meant to set aside [the default PAS rule] if the question is doubtful.'"[49]

But that is exactly what is happening here. The Government is unconstitutionally evading the check inherent in the PAS process for filling the position of USA by presuming the AG has statutory authority to step in the shoes of the USA for all purposes, duties and functions. As argued in Subpart F, the pertinent statutes do not explicitly state that, nor do they even implicitly permit such a reading that would necessarily render the position of USA superfluous.

---

[45] 606 U.S. 748, 804 (2025) (Thomas, J., dissenting, joined by Alito and Gorsuch, JJ.).

[46] Hearing Trans. at 94:8-9 (quoting *Kennedy*, 606 U.S. at 804 (Thomas, J., dissenting, joined by Alito and Gorsuch, JJ.)).

[47] Hearing Trans. at 94:11-13 (quoting *Kennedy*, 606 U.S. at 804 (Thomas, J., dissenting, joined by Alito and Gorsuch, JJ.)).

[48] *Kennedy*, 606 U.S. at 804 (Thomas, J., dissenting, joined by Alito and Gorsuch, JJ.) (first emphasis in original, second emphasis added).

[49] Hearing Trans. at 94:14-16 (quoting *Kennedy*, 606 U.S. at 804 (Thomas, J., dissenting, joined by Alito and Gorsuch, JJ.)).

H. *"If there is a limitation on the AG's power to direct litigation, where is it statutorily?"*[50]

Please refer to Subparts F and G above.

I. *"[H]ow do you distinguish United States against Hilario[, 218 F.3d 19 (1st Cir. 2000), which] . . . held that an AUSA assigned to a district with an invalidly appointed USA could continue to prosecute cases under the AG's 'plenary power over litigation to which the United States is a party, citing to [28 U.S.C. § 516].' Why doesn't that control here?"*[51]

The issue before the First Circuit in *United States v. Hilario* was not, as here, determining the legitimate means for filling a *vacant* USA position, but rather whether a judicial appointment made pursuant to 28 U.S.C. § 546(d) violated the Appointments Clause.[52] As a preliminary and collateral issue, the First Circuit briefly addressed whether it had jurisdiction to hear the appeal inasmuch as the defendant alleged the Government's "notice of appeal was signed by unauthorized personnel," namely, the purported illegitimate judicially-appointed USA and an AUSA.[53]  According to the First Circuit, even assuming that the USA was illegitimate (which the First Circuit ultimately held otherwise), the AUSA's signature was valid because "the decision to appeal in a criminal case is not made by the local [USA] but by the Solicitor General" whose "authority is not in doubt."[54]

Thus, the reference by the First Circuit to the AG having "plenary power over

---

[50] Hearing Trans. at 114:3-4.
[51] Hearing Trans. at 114:16-25.
[52] 218 F.3d 19, 23 (1st Cir. 2000).
[53] *Id.* at 22.
[54] *Id.*

litigation" was mere *dicta* and otherwise had absolutely nothing to do with the context at issue here. In short, *Hilario* certainly does not in any way stand for the proposition that the AG may independently and indefinitely direct litigation through some trium-virate in a district where the position of the USA is vacant.

> J. *"What do you make of . . . [In Re: Sealed, 829 F.2d 50 (D.C. Cir. 1987)?]. There the District of Columbia Circuit approved the [AG's] appointment of an independent counsel by delegation pursuant to [28 U.S.C. §§ 509, 510 and 515] even though the delegated powers were 'identical to those' delegated under a statute that created an independent counsel subject to appointment by a court. Doesn't that reasoning strongly support the Government's reading about the statutory scheme?"*[55]

The D.C. Circuit's approval of the AG's authority to appoint an independent counsel in *In re Sealed Case*[56] is of little relevance to this case for, as pointed out at the hearing,[57] that case did not involve a PAS position. The independent counsel there was appointed pursuant to the Ethics in Government Act and other statutory provisions and regulations.[58] Moreover, as the D.C. Circuit conceded, 28 U.S.C. §§ 509, 510, 515 and 5 U.S.C. § 301 "***do not explicitly authorize*** the [AG] to create an Office of Independent Counsel virtually free of ongoing oversight."[59]  These statutes, at most, "accomodat[ed] the delegation."[60]

This Court should find *In re Sealed Case* unpersuasive for the same reasons set

---

[55] Hearing Trans. at 115:8-19.
[56] 829 F.2d 50 (D.C. Cir. 1987).
[57] Hearing Trans. at 117:8-12.
[58] 829 F.2d at 51-54.
[59] *Id.* at 55 (emphasis added).
[60] *Id.*

forth by Judge Cannon in *United States v. Trump*.[61] As Judge Cannon correctly recognized, "[n]o analysis of the statutes was provided"[62] in *In re Sealed Case*, which instead rested on mere "presuppositions" that the Supreme Court has counseled against adopting in cases directly raising the statutory issue, as here.[63]

### K. *"What is the basis for your statement that violating a statute dealing with appointments amounts to a constitutional violation?"*[64]

As the Bipartisan Current and Former Members of Congress wrote in their brief before the Third Circuit in *Giraud,* "The provisions enacted in § 546 reinforce and codify the allocation of constitutional authority described in the Appointments Clause. . . . They . . . 'ensure[] that a crucial Executive office is not permitted to be vacant while at the same time providing an incentive for the President to exercise his statutory power under 28 U.S.C. § 541' and his constitutional power under the Appointments Clause."[65] Likewise, the Former Republican Members of Congress wrote that "[i]n enacting the statutory scheme at issue here, Congress acted pursuant to its explicit constitutional prerogative to 'by Law vest the Appointment of . . . inferior

---

[61] 740 F. Supp. 3d 1245, 1292 (S.D. Fla. 2024).

[62] *Id.*

[63] *Id.* at 1292-93 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990)).

[64] Hearing Trans. at 117:13-15.

[65] Amicus Br. of Bipartisan Current and Former Members of Congress ISO Neither Party and in Favor of Affirmance, *United States v. Giraud*, Nos. 25-2635 & 25-2636 (3d Cir. Oct. 6, 2025), ECF Doc. 40 at 18-19; *id.* at 17 ("Congress has codified its constitutional authority under the Appointments Clause in the United States Code.") (Citing *United States v. Sotomayor Vazquez*, 69 F. Supp. 2d 286, 295 (D.P.R. 1999), *aff'd*, 249 F.3d 1 (1st Cir. 2001)).

14

officers . . . in the President alone, in the Courts of Law, or in the Heads of Depart-

ments.'  U.S. Const. art. II, §, cl."[66] As such, a statutory violation can also be a con-

stitutional one. This is especially the case where the violation is intentional.

> L. "[H]ow do you square the Supreme Court's clear statement that appoint-
> ments issues are 'nonjurisdictional' -- and I am looking there at [Freytag v.
> Commissioner, 501 U.S. 868, 877-878 (1991)] -- with your argument that
> jurisdiction is lacking in a criminal case with an unlawfully appointed pros-
> ecutor?"[67]

*Freytag* concerned whether the petitioners had waived their right to challenge

the validity of the judicial officer who had presided over their tax matter.[68] The peti-

tioners there alleged that the "special trial judge" appointed by the Chief Judge of the

Tax Court to preside over their tax matter violated the Appointments Clause.[69] The in-

itial problem for petitioners was that they had waived the argument by not only failing

to raise it below, but also by consenting to trial by the Special Trial Judge.[70]

The Supreme Court held that because "the alleged defect in the appointment of

the Special Trial Judge goes to the validity of the Tax Court proceeding" and was not

otherwise "frivolous []or disingenuous," it was "one of those rare cases in which we

should exercise our discretion to hear petitioners' challenge to the constitutional

---

[66] Br. of Amici Curiae Former Republican Members of Congress ISO Neither
Party, United States v. Giraud, No. 1:24-cr-00768 (D.N.J. Aug. 13, 2025), ECF Doc.
138-2 at 2.
[67] Hearing Trans. at 123:14-20.
[68] *See Freytag v. Commissioner*, 501 U.S. 868, 877 (1991).
[69] *Id.* at 870.
[70] *Id.* at 878.

authority of the Special Trial Judge."[71] In so holding, the Supreme Court noted that it had previously "expressly included ***Appointments Clause objections to judicial officers*** in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below."[72]

In contrast, the issue before this Court has nothing to do with any judicial officer, but rather the authority of the Government to prosecute these cases under the guise of a faux "Executive Office" in the absence of a *bona fide* USA. It is *that* issue—what this Court characterizes as "an unlawfully appointed prosecutor"—that goes to this Court's jurisdiction.[73] Indeed, as the Ninth Circuit has held, "[i]n every case addressing the authority of a Special Assistant USA the jurisdiction of the district court was in question."[74] Thus, per the Tenth Circuit, "a federal court cannot even assert jurisdiction over a criminal case unless it is filed and prosecuted by the USA or a properly appointed assistant."[75]

> M. "[*United States v. Fitzhugh, 78 F.3d 1326, 1330 (8th Cir. 1996)*] states this, '*Alleged defects in the authority of a prosecutor have consistently been treated as nonjurisdictional, and therefore, subject to waiver either by a*

---

[71] *Id.* at 879.

[72] *Id.* at 878-79 (emphasis added; citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 535-536 (1962)).

[73] *See* ECF Doc. 279 at 38-41 ("Part VII. Appointments Clause Violations So Fundamentally Impugn the Integrity of a Criminal Proceeding That They Cannot be Waived and Will Even Defeat a Court's Jurisdiction.").

[74] *United States v. Durham*, 941 F.2d 886, 892 (9th Cir. 1991) (citing *inter alia United States v. Providence Journal Co.*, 485 U.S. 693 (1988)).

[75] *United States v. Singleton*, 165 F.3d 1297, 1299-1300 (10th Cir. 1999) (citing *Providence Journal Co.* and *Durham*).

*valid guilty plea or by the absence of a timely objection."*[76]

*Fitzhugh* did not involve a PAS position but rather an independent counsel. Unlike here, the appellant in *Fitzhugh* did "not challenge the government's power to prosecute him" but "argue[d], in essence, that the AG sent the wrong prosecutor to charge him with his crime."[77] The Eighth Circuit held that "the court's power to regulate the attorneys who appear before it does not affect the court's jurisdiction over the underlying prosecution. Thus, ***alleged defects of this kind***" are "non-jurisdictional."[78] In contrast to *Fitzhugh*, the Defendants here do expressly challenge the government's power to prosecute them. Please refer to Subpart L above.

### N. *"As to Mr. Naviwala, from what point should we begin calculating the 'length of the delay' in the sentencing?"*[79]

As Mr. Naviwala has elsewhere emphasized, "harm is presumed" for Appointments Clause violations.[80]  Accordingly, he need not prove up or assert any length of delay in order to establish prejudice. Be that as it may and without waiving the presumption, this Court should calculate the delay in sentencing from no later than July 1, 2025, the date on which this Court found that Alina Habba had "exercised the functions and duties of the office of the USA for the District of New Jersey without lawful

---

[76] Hearing Trans. at 124:10-14.

[77] *United States v. Fitzhugh*, 78 F.3d 1326, 1330 (8th Cir. 1996).

[78] *Id.* (emphasis added).

[79] Hearing Trans. at 125:5-7.

[80] ECF Doc. 296 at 29 and accompanying text (quoting *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 154 (3d Cir. 2020)).

authority."[81] Any prosecutions conducted by Ms. Habba or under her supervision or authority after that date therefore are *ultra vires* and void. The same, of course, holds for the Executive Office. As this Court has also observed,

> When an appointment violates the Appointments Clause from the jump, the actor has exercised power that she did not lawfully possess. Such *ultra vires* conduct is generally remediated by declaring it void. This remedy should also obtain in a prospective case, so long as the threat of illegally exercised power employed against the movant is actual or imminent, not conjectural or hypothetical.[82]

Thus, any continuance of Mr. Naviwala's sentencing after July 1, 2025, had no effect on whether the Government could lawfully prosecute Mr. Naviwala after that date. Indeed, for the reasons set forth in Subpart L above, the Court was without jurisdiction to even sentence Mr. Naviwala after that date, and that remains the case even under the Executive Office. Accordingly, the delay in Mr. Naviwala's sentencing began no later than July 1, 2025, as that was the last date the Government could lawfully prosecute him.

O. *"[H]ow can I possibly grant such significant relief based on speculation about how long the delay might be?"*[83]

There is no speculation that there will continue to be a delay and that it will be lengthy. Notwithstanding that the Constitution requires that the President "***shall***

---

[81] *United States v. Giraud*, 795 F. Supp. 3d 560, 568 (D.N.J. 2025).

[82] *United States v. Giraud*, No. 1:24-cr-00768, 2025 U.S. Dist. LEXIS 148014, *19, 2025 WL 2196794 (D.N.J. Aug. 1, 2025) (citation modified).

[83] Hearing Trans. at 126:14-16.

nominate . . . all . . . Officers of the United States,"[84] and that "Congress . . . require[s] the appointment of USAs to follow the PAS process"[85] the Government nonetheless represented at the hearing that "the President ***never*** has to nominate any USA ever. That's sort of the bottom line."[86]

That is obviously wrong. But just as obvious is that, by all appearances and true to the Government's word, the President in fact never intends to nominate a USA for this District. Accordingly, litigation of this matter will continue *ad nauseum* as, to date, there has been no cost to the Government for failing to even nominate a person for USA, let alone for circumventing the Court's order designating Habba's replacement pursuant to its lawful authority under 546(d). First it tried to illegally extend the term of an AG appointee, and when that failed, it fabricated this "Executive Office" despite previously asserting that such was indistinguishable in any material terms from Ms. Habba. All the while, the "***vacant***" USA's Office for the District of New Jersey continues to prosecute matters unfettered by any legal repercussions for its lawlessness.

It is simply not speculative that the delay will continue for many months if not years, just as it is not speculative that the only way to put a stop to this affront to the law and deter future violations: dismissal of the superseding indictments. "The

---

[84] U.S. Const., art. II, § 2, cl. 2 (emphasis added).
[85] *Giraud*, 2025 U.S. App. LEXIS 31083 at *4 (citing 28 U.S.C. § 541(a)).
[86] Hearing Trans. at 76:13-15 (emphasis added).

criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence."[87]

> P. What is the legal significance, if any, of the "source of the appropriations that have funded and will continue to fund litigation occurring in the District of New Jersey while led by the 'triumvirate'?"[88]

Despite undersigned counsels' best efforts, Defendants were not able to address this additional question within the allotted 20-page page-limit while also substantively answering the initial 15 questions this Court put to counsel at the hearing. Accordingly, Defendants respectfully request leave to file an additional three pages in which to address this question, which would only require a single day to do so.

## CONCLUSION

IN LIGHT OF THE ABOVE, Messrs. Naviwala and Torres respectfully request that this honorable Court grant their motions, disqualify the Government's counsel, dismiss their Superseding Indictments with prejudice, and enjoin any Government attorney subject to disqualification from filing anything further in this matter.

DATED: February 9, 2026                    RESPECTFULLY SUBMITTED,

DOUG PASSON                                JASON J. LEBOEUF

/s/ Doug Passon                            /s/ Jason J. LeBoeuf
                                           **Attorney for Defendant**
RAHUL AGARWAL                              **DANIEL TORRES**

/s/ Rahul Agarwal
**Attorneys for Defendant**
**RAHEEL NAVIWALA**

---

[87] *Mapp v. Ohio*, 367 U.S. 643, 659 (1961).
[88] Order, *United States v. Naviwala,* No. 2:24-CR-00099 (D.N.J. Jan. 28, 2026), ECF Doc. 303.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2026, the foregoing CONSOLIDATED

SUPPLEMENTAL BRIEF OF DEFENDANTS was filed electronically and a copy

was served by mail on anyone unable to accept electronic filing. Notice of this filing

will be sent by e-mail to all parties by operation of the Court's electronic filing system

or by mail to anyone unable to accept electronic filing as indicated on the Notice of

Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Doug Passon
DOUG PASSON