

**U.S. Department of Justice**

*United States Attorney's Office*
*District of New Jersey*

---

*970 Broad Street, 7th floor*                                                             *973-645-2700*
*Newark, New Jersey 07102*

February 9, 2026

Hon. Matthew W. Brann
Chief United States District Judge
U.S. Courthouse and Federal Office Building
240 West Third Street
Williamsport, PA 17701

        Re:    *United States v. Raheel Naviwala*, Crim. No. 24-099
                 *United States v. Daniel Torres*, Crim. No. 24-378

Dear Chief Judge Brann:

        Mindful of this Court's admonition not to retread ground sufficiently covered by the Government's prior submissions, Tr. at 139–140,[1] please accept this letter brief regarding matters raised during and after the January 23, 2026 argument.

        The argument confirmed the defendants' and their amicus's bottom line: Unless and until the President under 28 U.S.C. § 541(a) appoints a U.S. Attorney who is acceptable to New Jersey's Senators, these cases cannot continue. Dissatisfaction with the President, however, *see, e.g.*, Tr. at 24–27, 33, doesn't entitle the defendants to any of the relief they seek. "Congress did not give the President a deadline before which he must 'appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district.'" *United States v. Hilario*, 218 F.3d 19, 23 (1st Cir. 2000) (quoting 28 U.S.C. § 541(a)).

        Although the defendants and their amicus might be "at a loss to explain the failure to fill this important position, that is a political matter and, as such, falls outside" this Court's "ken." *Id.* at 29. Until that happens, the District Court

---

[1] "Tr." refers to the transcript of the January 23, 2026 oral argument. All other record citations and abbreviations use those defined in the Government's corrected responsive brief ("RB"). *See* NDE 294-1.

appoints through 28 U.S.C. § 546(d) a U.S. Attorney who is acceptable to the Administration, or the President submits a nomination to the Senate and designates an eligible official to serve as Acting U.S. Attorney under 5 U.S.C. § 3345(a)(2) or (a)(3), the Attorney General can—and indeed must—ensure that the critical work of the USAO-NJ continues under appropriate supervision.

Indeed, this Court contemplated as much in the *Giraud* litigation. This Court saw "no reason why AUSAs acting directly under the delegated authority of" the Attorney General, or "another Department of Justice official with sufficient authority to extend Ms. Bondi's powers to AUSAs in New Jersey, would need to be disqualified" upon a finding that Alina Habba could not serve as Acting U.S. Attorney. *United States v. Giraud*, No. 24-cr-768, 2025 WL 2196794, at *10 (D.N.J. Aug. 1, 2025). And this Court declined to terminate the *Pina* prosecution, even though Ms. Habba's signature had been affixed to the indictment in that case at a time when, according to this Court, she had no appointment at all. RB42, 44. None of that would have made any sense if the supervisory Assistant U.S. Attorneys in those cases couldn't collectively exercise all the delegable supervisory authority of a U.S. Attorney under the ultimate supervision of PAS officers at Main Justice. That is *precisely* what is happening under the so-called "triumvirate"—just with clearer lines of supervision.

***The sources of authority for the current delegation order.*** The order expressly invokes "the authority vested in the Attorney General by law, *including* 28 U.S.C. [§]§ 509 and 510." NDE268-2 (emphasis added). Section 509 vests in the Attorney General virtually "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice" with narrow exceptions that don't apply here. 28 U.S.C. § 509. Because U.S. Attorneys are "officers of the Department of Justice," § 509 vests in the Attorney General *all* the functions of *every* U.S. Attorney. Section 510 allows the Attorney

General to delegate to anyone else in the Department nearly "any function" that she has, including all functions that a U.S. Attorney also has. 28 U.S.C. § 510.

But the delegation order invokes the other "authority vested in the Attorney General by law." NDE268-2. That includes:

➢ Her authority to "conduct any kind of legal proceeding, civil or criminal" that United States Attorneys are authorized by law to conduct," 28 U.S.C. § 515(a), and to "specifically direct[]" "any other officer of the Department of Justice" or "any attorney" she "specially appoint[s]" to do so, *id.*

➢ Her authority to "direct[]" the "conduct of litigation" involving the United States" and the "securing evidence therefor" through "officers of the Department of Justice," 28 U.S.C. § 516.

➢ Her authority to "sen[d]" "any officer of the Department of Justice" to "any State or district in the United States to attend to the interests of the United States" in any "pending" litigation or "any other interest of the United States." 28 U.S.C. § 517.

➢ Her authority to "direct … any officer of the Department of Justice" to "conduct and argue any case in a court of the United States in which the United States is interested[.]" 28 U.S.C. § 518.

➢ Her authority to "supervise all litigation" involving the United States and to "direct all … assistant United States attorneys" in "the discharge of their respective duties." 28 U.S.C. § 519.

➢ Her authority to "appoint officials" to "detect and prosecute crimes against the United States[.]" 28 U.S.C. § 533(1).

➢ Her authority to "appoint … assistant United States attorneys," who are "subject to removal by" her. 28 U.S.C. § 542.

➢ Her authority to "appoint attorneys to assist United States attorneys"; those appointees are "subject to removal" by her, too. 28 U.S.C. § 543.

***The AG's appointment and delegation authority.*** Congress has granted the Attorney General broad power to operate the Department of Justice and authorize her to appoint subordinate officers. Congress has vested virtually all the functions of the Department of Justice in the Attorney General. *See* 28 U.S.C. § 509. She may "prescribe regulations for the government of [her] department" and "the distribution and performance of its business." 5 U.S.C. § 301. She may "employ such number of employees ... as Congress may appropriate for from year to year." 5

U.S.C. § 3101. And she may delegate virtually "any function" vested in her to "any other officer, employee, or agency of the Department of Justice," by making any "such provisions as [s]he considers appropriate." 28 U.S.C. § 510.

The Attorney General's power to delegate the performance of "any" of her myriad functions necessarily encompasses the ability to delegate functions involving the exercise of "'significant authority pursuant to the laws of the United States.'" *Lucia v. SEC*, 585 U.S. 237, 245 (2018) (cleaned up). Such a delegation may take many forms, including the creation of a new "continuing" position, *see id.*, or the temporary assignment of the Attorney General's duties to any "officer" or "employee," *see* 28 U.S.C. § 510.

Notably, the Supreme Court has held that the Attorney General has general statutory authority to create and fill inferior offices, including ones not expressly identified by Congress. *See United States v. Nixon,* 418 U.S. 683, 694 (1974) (holding that 28 U.S.C. §§ 509, 510, 515, and 533 had "vested" in the Attorney General "the power to appoint subordinate officers," including the Special Prosecutor for Watergate); *In re Grand Jury Investigation*, 916 F.3d 1047, 1053–54 (D.C. Cir. 2019) (*Nixon* is controlling precedent on that issue). And Congress has enacted statutes premised on the Attorney General's authority under Sections 509 and 510 to establish and fill inferior offices not expressly created by Congress.

For example, no statute expressly creates the offices of Deputy Solicitor General or Deputy Assistant Attorney General, but Congress has passed statutes that recognize the Attorney General's creation of those offices and authorize those officers to exercise significant authority. *See* 18 U.S.C. § 3742(b) ( "a deputy solicitor general" may approve a sentencing appeal by the Government in a criminal case); 18 U.S.C. § 2516(1) (a "Deputy Assistant Attorney General ... in the Criminal Division or National Security Division" may approve an application for a wiretap order). "[T]he implications of" such "subsequently enacted" statutes make clear that

Congress viewed Sections 509 and 510 to confer authority on the Attorney General to create and fill inferior offices. *United States v. Fausto,* 484 U.S. 439, 453 (1988). Congress's annual appropriations funding these offices and officers (and thousands of others throughout the Department) confirm—and indeed ratify, if further ratification were necessary—the Attorney General's appointment powers. *See Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 116, 118–19 (1947).

Accordingly, there can be no doubt that the Attorney General had statutory authority to ratify the appointment of Philip Lamparello as Senior Counsel and authorize him "to supervise or conduct the work of" the USAO-NJ's Criminal and Special Prosecutions Divisions. NDE268-2, at 1. Nor can there be any doubt that the Attorney General had statutory authority to appoint Jordan Fox as Special Attorney and Ari Fontecchio as Executive Assistant U.S. Attorney and authorize them "to supervise or conduct the work of" the USAO-NJ's Appeals and Civil Divisions (Ms. Fox) and Administrative Division (Mr. Fontecchio). *Id.*

***Limits on the Attorney General's Delegation Authority.*** A statute will "permit the delegation" through § 510 "of any function vested in the Attorney General … unless a specific limitation on that delegation authority appears elsewhere in the statute." *Touby v. United States*, 500 U.S. 160, 169 (1991). Thus, where Congress has specified subordinate officials to whom the Attorney General can delegate a subset of her authority, she cannot delegate that authority to any other official. *See United States v. Giordano*, 416 U.S. 505, 512–14 (1974). Where Congress has prohibited the Attorney General from delegating a particular function, she cannot delegate it. *Id.* at 514; *see, e.g.*, 18 U.S.C. § 245(a) ("No prosecution of any offense described in this section shall be undertaken by the United States except upon the certification in writing of the Attorney General" or other specified officials, "*which function of certification may not be delegated.*") (emphasis added). And the Attorney General cannot use 28 U.S.C. § 510 to

"temporarily authoriz[e] an acting official to perform the functions and duties of" a U.S. Attorney during a vacancy in that office. 5 U.S.C. § 3347(a); *see id.* § 3347(b).[2]

### *The FVRA's focus on "functions and duties."*

The very part of *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025), that this Court invoked at argument (Tr. at 46–47) shows why the USAO-NJ's current leadership structure doesn't violate the FVRA. As the Court of Appeals explained:

> An acting officer is simply one who "perform[s] *the* functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(1). Section 3347(a)(1) similarly refers to an acting official as one who "perform[s] *the* functions and duties" of a PAS office "temporarily in an acting capacity." *Id.* § 3347(a)(1). The statutory language indicates that an acting official is one who performs *the functions and duties* of an office, so contrary to the Government's suggestion, Habba is an acting official subject to the FVRA's limitations.

*Giraud*, 160 F.4th at 404 (emphases added).

Congress's repeated use of the definite article in "the functions and duties" in the FVRA signifies that the phrase applies to *all* the functions and duties of the PAS office in question in whole, not just *some* of them in part. The "use of the definite article 'the' before" a noun phrase "connotes comprehensiveness and specificity[.]" *Wachtel ex rel. Jesse v. Guardian Life Ins. Co.*, 453 F.3d 179, 185 (3d Cir. 2006). "Because '[w]ords are to be given the meaning that proper grammar and usage would assign them,' the 'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose.'" *Nielsen v. Preap*, 586 U.S.

---

[2] *Halverson v. Slater*, 129 F.3d 180 (D.C. Cir. 1997), Tr. at 51–52, applies those principles in a way that does not call into question the delegation at issue here. *See id.* at 188 ("Accordingly, we reach the same conclusion here that the Supreme Court reached in *Giordano*: section 2104(a), the more specific (and limited) delegation authority, precludes the use of section 322(b) to delegate Subtitle II duties and powers to non-Coast Guard officials."). The defendants do not identify any duty delegated to the so-called "triumvirate" that is unlawful to delegate, much less one that would call into question the lawful supervision of their prosecution.

392, 407–08 (2019) (quoting A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 140 (2012)). If that phrase applied more broadly, it would seemingly invalidate the delegation of any function or duty of a PAS office. That would nullify the Attorney General's broad authority to delegate functions of a U.S. Attorney and her own overlapping authority to conduct litigation on behalf of the United States that a U.S. Attorney also happens to be empowered to conduct.

Thus, under the Third Circuit's reasoning, § 3347(a) means that the FVRA is generally the exclusive means of designating a *single* person to perform *all* the functions and duties of the office of U.S. Attorney during a vacancy. And under the Third Circuit's reasoning, § 3347(b) prohibits the Attorney General from using § 510 to delegate to a single person her own ability to perform all those functions and duties, even if the delegee does not claim to be the Acting U.S. Attorney.

The delegation order at issue here contravenes none of those principles. An official exercising only some of the delegable powers of a U.S. Attorney is not the same as, and does not exercise all the powers of, a U.S. Attorney. A U.S. Attorney exercises *all* powers of the office, including any that are (or will be) non-delegable. So do Acting U.S. Attorneys under the FVRA. Non-acting officials, by contrast, may only exercise those delegable powers that in fact have been delegated to them.

Here, Mr. Lamparello, Ms. Fox and Mr. Fontecchio each are delegated authority to do only *some* of what a U.S. Attorney can do. None of them has the authority to do everything—or anything even remotely close to everything—a U.S. Attorney can do. To remove any doubt about whether they have that authority even collectively, the Attorney General may amend her delegation order to expressly require that certain certifications or applications that a U.S. Attorney by statute can sign be signed instead by a Senate-confirmed officer in the Department.

None of this renders the office of U.S. Attorney superfluous. When a confirmed U.S. Attorney is in place, that officer can wield the powers of his office

*without* any delegations from the Attorney General. But the creation of the office of U.S. Attorney cannot possibly be understood to have stripped the Attorney General of her own authority to conduct and supervise litigation on behalf of the United States and delegate that authority to other officers or employees within the Department of Justice. After all, the whole point of §§ 509 and 510 is to vest in the Attorney General all the powers of every officer within the Department of Justice, including U.S. Attorneys, who used to hold freestanding offices but were moved within the Department when it was established. *See* An Act to establish the Department of Justice, § 1, 16 Stat. 162 (1870). Indeed, §§ 509 and 510 authorize the Attorney General to require even Senate-confirmed U.S. Attorneys to report to other attorneys within the Department. Thus, attorneys supervising the work of that office are plainly not serving as "an acting official [that] perform[s] the functions and duties of [the] office," 5 U.S.C. § 3347(a)— especially not when the supervisory work is divided among three different individuals.

All that comports with the Senate Report accompanying the bill that, with modifications, became the FVRA. The Senate Report recognized that when there is no validly serving acting officer, "[d]elegable functions of the office could still be performed by other officers or employees, but the functions and duties to be performed only by the officer whose appointment is by the President by and with the advice and consent of the Senate could be performed solely by the head of the executive agency." S. Rep. No. 105-250 at 18. The additional and minority views also emphasized that the exercise of delegable duties "would continue," so that the statute "does not cause an unintended shutdown" of the agency with the vacancy. *Id.* at 31; *see also id.* at 36.

***The delegation at issue here is temporary, not permanent.*** This Court expressed concern that upholding the delegation here would enable a "'permanent circumvention'" of "the requirements for service as the United States Attorney." Tr.

at 52 (quoting *New Process Steel L.P. v. NLRB*, 560 U.S. 674, 681 (2010)). Respectfully, that concern is misplaced.

Although the delegation does not have an express time limit, it will end if any of the following occurs:

1. The Senate confirms the President's nominee for U.S. Attorney. *See* 28 U.S.C. § 541(a). Although the President has not yet submitted such a nomination following the withdrawal of Alina Habba's nomination, he retains the right to do so. And his successor of course will have that right.

2. The District Court appoints an interim U.S. Attorney. *See* 28 U.S.C. § 546(d). The Government has identified to the District Court someone currently serving in the USAO-NJ who would be acceptable to the President as an interim U.S. Attorney. Whether and when the District Court chooses to appoint that person is for the District Court to decide.

3. The Attorney General rescinds the delegation. *Cf. In re Sealed Case*, 829 F.2d 50, 56 (holding that because an independent counsel could serve "only for so long as" the regulation establishing his office "remain[ed] in force[,]" which "the Attorney General" could "rescind … at any time," the delegation was "for a limited time and under temporary and special conditions") (cleaned up).

And it makes no sense for the Attorney General to "permanently circumvent" a properly appointed U.S. Attorney. The Attorney General *already* has *all* the authority of U.S. Attorney. She gains nothing from that office being vacant, and she incurs the cost of needing to delegate supervisory authority over the office.

Relatedly, the delegation provisions in play here are nothing like the one the Supreme Court addressed in *New Process Steel*. There, the Court resolved whether, under 29 U.S.C. § 153(b), a two-member panel of the NLRB could decide cases when the Board itself had only two members. That statute sets out the "Board's quorum requirements and delegation procedure." *New Process Steel*, 560 U.S. at 679. It authorizes the Board to delegate its powers to a "'group of three or more members'" while adding that "two members shall constitute a quorum" of such a group. *Id.* (quoting § 153(b)). Otherwise, there must be "three participating members 'at all times' for the Board to act." *Id.* at 680 (quoting § 153(b)).

"Construing" § 153(b) "as a whole and in light of the Board's longstanding practice," the Court held that once "the designated three-member group … ceased to exist" after "the Board's membership fell to two," the remaining two members of that group could not "act as a quorum of the delegee group[.]" *New Process Steel*, 560 U.S. at 679. "[R]eading the delegation clause" that way was "the only way to harmonize and give meaningful effect to all of the provisions in" § 153(b). *Id.* at 680. The contrary reading would "allow[] two members to act as the Board *ad infinitum*, which" would allow "permanent circumvention" of the Board's general three-member "quorum requirement." *Id.* at 681. It would also render illusory "the three-member requirement in the delegation clause" by allowing "a *de facto* delegation to a two-member group[.]" *Id.* So the contrary reading "would render two of" the same statute's "provisions functionally void." *Id.* There was no "convincing evidence" that Congress intended that result. *Id.* at 682. And that result would contradict "the longstanding practice of the Board." *Id.* at 682–83.

Here, the Attorney General has the same authority to conduct and supervise litigation and investigations in the District of New Jersey that a U.S. Attorney has, and much, much more authority. RB2–4, 11–13, 18–20. The office of the U.S. Attorney, when properly filled, just enables the work of that office to continue without the need for her to delegate her own authority over that office. So when that office is not filled, it merely burdens the Attorney General, without granting her any authority she otherwise lacks. Moreover, the statutes vesting broad authority in her and equally broad authority to delegate are "a world apart from" the delegation statute at issue in *New Process Steel*. 560 U.S. at 686. The latter statute limited "the standing delegation of all the Board's powers to a small group." *Id.* The Attorney General's delegation statute, in contrast, permits her to delegate nearly all her duties to nearly anyone in the Department.

***Very broad delegations are permissible.*** This Court asked for cases where "a court affirmed a delegation of authority under" a "Department of Justice statute that was coextensive with the authority of a statutorily created PAS office[.]" Tr. at 65. Such delegations are common and have not historically been challenged in litigation, such as the Deputy Attorney General's authority to exercise all the delegable functions of the Attorney General, *see* 28 U.S.C. 0.15, which encompasses not just all the delegable functions of every U.S. Attorney, but also all the delegable functions of the many other PAS officers in the Department of Justice.

Indeed, the Principal Deputy Assistant Attorney General for the Office of Legal Counsel (OLC) continued to exercise the authority of the Assistant Attorney General for OLC, a vacant PAS office, *see* 28 U.S.C. § 506, even after the time for serving as the acting official under the FVRA had expired. The Government Accountability Office, an arm of Congress charged with enforcing the FVRA, concluded that such service did not violate the FVRA because the office in question had no exclusive, non-delegable functions. *See* Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J. Durbin, Russell D. Feingold, and Edward M. Kennedy (Jun. 13, 2008), *available at* https://go.usa.gov/xtEQP.

In any event, the Government isn't arguing that the Attorney General can use § 510, § 515(a), or any other statute to delegate duties that only a U.S. Attorney or another PAS officer in the Department can perform. Rather, the Attorney General has delegated to Ms. Fox and Messrs. Lamparello and Fontecchio only those duties that Congress has *not* required a PAS officer within the Department to perform. District Courts within the Ninth and Tenth Circuits have upheld similar orders to the extent they vested only delegable duties of a U.S. Attorney in a single officer. *See United States v. Ramirez-Martinez*, No. 22-cr-1721, 2026 WL 113431, at **19–20, 23–24 (D.N.M. Jan. 14, 2026) (FAUSA could supervise matters in his District as FAUSA); *United States v. Ramirez*, __ F. Supp. 3d __, 2025 WL 3019248,

at **18–20 (C.D. Cal. 2025) (same). So under the reasoning of those courts, the order here dispersing those delegable duties among three officers, rather than concentrating them in one, is valid *a fortiori*.

Even if that "result appears to be little remedy at all[,]" this Court's role "is to apply the statutes as written and as interpreted by binding case law." *Ramirez-Martinez*, 2026 WL 113431, at *24. After all, "it is well established that a vacancy does not halt the affairs of a U.S. Attorney's office and AUSAs can continue to investigate and prosecute crimes and sign indictments returned by grand juries." *United States v. Ndisi*, No. 2:25-cr-143, 2026 WL 318836, at *4 (D. Vt. Feb. 5, 2026). Those "are not nondelegable 'function[s] or dut[ies]' that only the U.S. Attorney" can perform. *Id.* (quoting 5 U.S.C. § 3348(d)(1)).

Moreover, for more than a century, courts have construed § 515 and its precursor to confer broad authority upon the Attorney General, other DOJ officers, and her Special Attorney appointees "to institute litigation, to enter into pending litigation, and to co-operate with the district attorney or to proceed to handle such litigation independent of" the U.S. Attorney. *United States v. Hall*, 145 F.2d 281, 785 (9th Cir. 1944); *see United States v. Wrigley*, 520 F.2d 363, 367 n.10 (8th Cir. 1975) (§ 515(a) "is a broad grant of authority"); *cf. United States v. Birdman*, 602 F.2d 547, 561 n.62 (3d Cir. 1979) (citing *Wrigley*).

For example, one court upheld a § 515(a) appointment "'to prosecute unspecified persons for unspecified crimes in the Eastern District of Wisconsin and other districts.'" *Infelice v. United States*, 528 F.2d 204, 206 (7th Cir. 1975). Another upheld an appointment to prosecute specified cases "and such other cases and matters as may be assigned to you." *United States v. Martins*, 288 F. 991, 992 (D. Mass. 1923). And *Wrigley* (Tr. at 60) upheld § 515(a) appointments to conduct "any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are

authorized to conduct." 520 F.2d at 362. The Eighth Circuit recognized that "Section 515(a) on its face does not require more." *Wrigley*, 520 F.2d at 367. And the Eighth Circuit rejected the argument that such an appointment "would allow the Attorney General to usurp, through the appointment of special attorneys, the function of the United States Attorneys." *Id.*

All those cases faithfully applied § 515's text, because "any" doesn't mean "one" or "some"; it means everything the Attorney General authorized the appointee to do. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, this is, 'one or some indiscriminately of whatever kind.'"). Given § 515(a)'s plain language, "that an assistant or deputy Attorney General can act in such a case only where he is specifically authorized in each proceeding … cannot be maintained." *Hall*, 145 F.2d at 784. To the contrary, "the law clearly favors broadly drawn commissions, relying on other institutional safeguards to hold special attorneys in check." *United States v. Balistrieri*, 779 F.2d 1191, 1209 (7th Cir. 1985), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016); *see United States v. Prueitt*, 540 F.2d 995, 1003 (9th Cir. 1976) ("Section 515(a) does not confine its application to particular types of cases or defendants").

Nor is there "reason to believe that the broad grant of authority to the Attorney General" in § 515(a) "in any way impinges on the 'independence' of the United States Attorneys." *United States v. Morris*, 532 F.2d 436, 440 (5th Cir. 1976). To begin with, "[a]s it stands now, the law places United States Attorneys under the direction and supervision of the Attorney General." *Hilario*, 218 F.3d at 26. That has been so since 1870. Although the Attorney General cannot fire a U.S. Attorney directly, see 28 U.S.C. § 541(c), she still can tell him what to do and sideline him if he doesn't by delegating his delegable duties elsewhere. That is why U.S. Attorneys are inferior officers. *See, e.g.*, *Hilario*, 218 F.3d at 24–26.

Furthermore, § 515(a) contains no textual or contextual "limitation on the powers of the Attorney General" vis-à-vis U.S. Attorneys. *Wrigley*, 520 F.2d at 368. The only "'independence'" U.S. Attorneys have flows from "28 U.S.C. § 541 which makes them subject to removal only by the President." *Wrigley*, 520 F.2d at 368 n.13. Moreover, the Attorney General has "the duty to conduct the criminal litigation of the United States" overall. *Id.* So this Court shouldn't read into § 515(a) a "limitation to the Attorney General's powers" that "is not contained in the statute and is contrary to the thrust of the statutory scheme." *Wrigley*, 520 F.2d at 368 (adding that "we are constrained by the language of the statute").

**The specific governs the general canon.** "Ordinarily, where a specific provision conflicts with a general one, the specific governs." *Edmond v. United States*, 520 U.S. 651, 657 (1997). "Canons of construction, however, are simply rules of thumb which will sometimes help courts determine the meaning of legislation." *Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996). And "[r]edundancies across statutes are not unusual events in drafting"; "so long as there is no positive repugnancy between two laws, a court must give effect to both." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). "In any event," in "interpreting a statute a court should always turn first to one, cardinal canon before all others": "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* at 253–54. "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Id.* (cleaned up).

There is no conflict here, given the plain meaning of all the relevant statutes. Congress set forth by statute the powers and responsibilities of both the Attorney General and the U.S Attorneys. *See* 28 U.S.C ch. 31 (Attorney General); *id.* ch. 35 (U.S. Attorneys). U.S. Attorneys "get their authority directly from Congress, not by delegation from the Attorney General." *Thomas v. INS*, 35 F.3d 1332, 1338 (9th Cir. 1994); *see* 28 U.S.C. § 247; *United States v. Castillo*, 772 F. App'x 11, 15 (3d Cir.

2019) (non-precedential). Once a U.S. attorney is appointed, whether under § 541(a), § 546(a) or § 546(d), she has all the authority she needs to carry out the functions and duties of the office of U.S. Attorney by virtue of her appointment.

But Congress also concurrently vested in the Attorney General the same powers that a U.S. Attorney has, and many more. *See* 28 U.S.C. §§ 509, 515–519, 532(1); *Thomas*, 35 F.3d at 1339 ("Congress expressly assigned overlapping authority to both the Attorney General and to United States Attorneys."). She can, for example, "displace" U.S. Attorneys "in their own suits" or "dismiss or compromise them"; she can also "institute those suits which they decline to press." *Sutherland v. International Ins. Co.*, 43 F.2d 969, 970 (2d Cir. 1930) (L. Hand, J.). And if there is no U.S. Attorney at all, the Attorney General, as "the head of the Department of Justice," 28 U.S.C. § 503, must ensure that the work of the U.S. Attorney's Office continues unimpeded, *see, e.g.*, *id.* §§ 509, 516.

Courts must construe statutes "in such a way as to give effect to both, if possible." *United States v. Bruno*, 897 F.2d 691, 695 (3d Cir. 1990). It is textually indefensible to say that the specific governs the general when Congress expressly provided instead that the general overrides the specific—namely, when Congress "vested in the Attorney General" "[a]ll functions of other officers of the Department of Justice" (which unambiguously includes U.S. Attorneys), 28 U.S.C. § 509, and further provided that she may delegate to "any other officer [or] employee" "any function of the Attorney General" (which unambiguously includes the U.S. Attorneys' functions), 28 U.S.C. § 510.

Although Congress required Senate confirmation before U.S Attorneys could be permanently endowed with all powers of their office without any delegations from the Attorney General, Congress also allowed the Attorney General to delegate the functions and duties she independently possesses to other officials when the U.S. Attorney office is vacant. That understanding of the statutory scheme

harmonizes the various statutes and gives full effect to all of them, rather than nullifying the Attorney General's delegation authority as applied to the delegable functions and duties of U.S. Attorneys. *Cf. San Pedro v. United States*, 79 F.3d 1065, 1069 (11th Cir. 1996) (courts must correctly "harmonize[] the statutes that empower the United States attorneys and the attorney general").

***The President can remove any U.S. Attorney at will.*** The defendants argued repeatedly that once the District Court appointed an interim U.S. Attorney under 28 U.S.C. § 546(d), the only way to remove her was through appointment of a Senate-confirmed U.S. Attorney. Tr. at 20–22, 42–43. No court has accepted that argument, and with good reason. The real separation of powers violation in this case would be to force the President and Attorney General to permit a judicially appointed U.S. Attorney to remain in office despite their stated preference for someone else to lead that office.

To start, Congress expressly authorized the President to remove judicially appointed U.S. Attorneys: "Each United States attorney is subject to removal by the President." 28 U.S.C. § 541(c). That provision is not limited to U.S. Attorneys appointed by the President under § 541(a). By its plain terms, it applies to "each" U.S. Attorney, which includes "a United States attorney" appointed by a district court, 28 U.S.C. § 546(d). Courts uniformly have so held. *See, e.g.*, *Hilario*, 218 F.3d at 27 ("[T]he President may override the judges' decision and remove an interim United States Attorney.") (citing 28 U.S.C. § 541(c)).

Moreover, the canon of constitutional avoidance compels that conclusion. Article II provides that the "executive power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. That executive power, in turn, includes the power to fire inferior officers like U.S. Attorneys, who operate at the direction and under the supervision of the Attorney General and exercise significant prosecutorial and policymaking power. *See Seila Law LLC v. CFPB*, 591

U.S. 197, 218 (2020) (explaining that the only exception to the President's at-will removal power that the Supreme Court has ever recognized "for inferior officers" is limited to those, unlike U.S. Attorneys, "with limited duties and no policymaking or administrative authority"); *Hilario*, 218 F.3d at 25 (U.S. Attorneys "are inferior officers," subject to the "plenary authority" of the Attorney General and, ultimately, the President).

Indeed, it is especially imperative that the President have the authority to remove judicially appointed U.S. Attorneys precisely because he did not appoint them. "Investigative and prosecutorial decisionmaking is the special province of the Executive Branch, and the Constitution vests the entirety of the executive power in the President, Art. II, § 1." *Trump v. United States*, 603 U.S. 593, 620 (2024) (cleaned up). That power may not be wielded by powerful inferior officers whom the President did not appoint on the front end and cannot remove on the back end. That would "completely strip[]" the President of control over those officers and "provid[e] no means for the President to ensure the 'faithful execution' of the laws." *Morrison v. Olson*, 487 U.S. 654, 692 (1988).

Thus, as a matter of both statutory authority and constitutional command, "the Executive Branch holds all the trump cards" "insofar as interim United States Attorneys are concerned." *Hilario*, 218 F.3d at 27; *see also id.* (adding that even "short of presidential involvement, the Attorney General can shunt the interim appointee to one side") (citing 28 U.S.C. § 518.).

***There is no Appropriations Clause problem in this case.*** The Appropriations Clause provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. The Clause requires no "more than a law that authorizes the disbursement of specified funds for identified purposes." *CFPB v. Community Fin. Services Ass'n, Ltd.*, 601 U.S. 416, 438 (2024). So "appropriations need only identify a source of

public funds and authorize the expenditure of those funds for designated purposes to satisfy the Appropriations Clause." *Id.* at 426.

An "agency's discretion to spend appropriated funds is cabined only by the text of the appropriation, not by Congress' expectations of how the funds will be spent, as might be reflected by legislative history." *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 200 (2012) (cleaned up). And "a fundamental principle of appropriations law is that where Congress merely appropriates lump-sum amounts without statutorily restricting what can be done with those funds, a clear inference arises that it does not intend to impose legally binding restrictions." *Id.* at 199–200 (cleaned up). But "[w]hen Congress has enacted a legislative restriction" that "expressly prohibits DOJ from spending funds on certain actions, federal criminal defendants may seek to enjoin the expenditure of those funds[.]" *United States v. McIntosh*, 833 F.3d 1163, 1172–73 (9th Cir. 2016).

The Government has identified the appropriations funding the USAO-NJ's operations since December 8, 2025, including the appropriations being used to pay the salaries of the so-called "triumvirate" and the supervisory AUSAs and AUSAs assigned to, or having supervisory authority over, the *Naviwala* or *Torres* prosecutions. NDE304-1. None of those appropriations "expressly prohibits DOJ from spending" those funds to pay any aspect of the USAO-NJ's operations, any salary of any member of the "triumvirate" or any salary of anyone assigned to or having supervisory authority over either prosecution. *Cf. United States v. Pisarski*, 965 F.3d 738, 742 (9th Cir. 2020) ("The appropriations rider does not … bar the government from spending funds to determine whether the rider applies to the prosecution in the first place."). Importantly, none of the appropriations is conditioned on there being a confirmed, interim, or acting U.S. Attorney.

Ms. Fox, for example, since joining DOJ has been compensated from the "Justice, Operations, Management, and Accountability Salaries and Expenses"

appropriation, given her positions within the Office of the Deputy Attorney General. NDE304-1 at 3, ¶ 11.b. That appropriation is for "'expenses necessary for the operations, management, and accountability of the Department of Justice.'" *Id.* Nothing in the appropriation prohibits Ms. Fox from carrying out the additional duties assigned to her through the Attorney General's delegation order.

Likewise, Mr. Lamparello, Mr. Fontecchio since December 14, and nearly every supervisory AUSA and AUSA assigned to or having supervisory authority over either of these cases has been and continues to be compensated from the "Salaries and Expenses, United States Attorneys" appropriation. *Id.* at 3–4, ¶¶ 11.a, 11.c, 12–13. That appropriation is for "necessary expenses of the Offices of United States Attorneys." *Id.* a 3, ¶ 9. Nothing in the appropriation prohibits Messrs. Lamparello and Fontecchio and those supervisory AUSAs and AUSAs from carrying out their respective duties.

Mr. Fontecchio briefly during the relevant period was compensated using mandatory healthcare fraud funds in accordance with his prior responsibilities supervising the USA0-NJ's Healthcare Fraud and Opioid Enforcement Unit, to which the *Naviwala* case is assigned. NDE304-1 at 3–4, ¶ 11.c. And George Brandley, Mr. Fontecchio's successor as Chief of that unit, is being compensated using discretionary healthcare fraud funds. *Id.* at 4, ¶¶ 12–13. No restriction in either funding source prevented Mr. Fontecchio during December 8–13, 2025 and prevents Mr. Brandley now from carrying out their respective duties.

***Other matters.*** At oral argument, this Court inquired about certain factual or historical matters. We answer those inquiries briefly below.

1. Tr. at 7–8: The Third Circuit denied the Government's petition for rehearing en banc in *Giraud* and *Pina*. *See United States v. Giraud*, Mo. 25-2635, Docket Entry 86 (Jan. 23, 2026). Judges Phipps, Matey and Mascott would have granted the petition. *Id.* at n.2. And Judge Mascott intends to file a separate dissent sur rehearing. *Id.* The Solicitor General is now weighing whether to petition the Supreme Court for a writ of

  certiorari. Meanwhile, a Ninth Circuit panel will hear argument on February 12 in the Government's appeal from disqualification orders entered in several cases in the District of Nevada. *See* https://www.ca9.uscourts.gov/calendar/monthly_sittings/164327.html. The issues in those appeals overlap with those in the *Giraud* and *Pina* appeals.

2. Tr. at 18: The United States Attorney's Office for the Eastern District of Virginia is now led by the most senior supervisory AUSA in that Office, Executive Assistant U.S. Attorney Frank Bradsher. *See* https://www.justice.gov/usao/us-attorneys-listing.

3. Tr. at 59–65: The organized crime Strike Force in the District of New Jersey was originally part of the Organized Crime and Racketeering Section of the Justice Department. *See, e.g.*, *United States v. Badalamenti*, 394 F. Supp. 807, 811 (D.N.J. 1975) (describing the Strike Force's organization and rejecting the argument that "a Strike Force Field Office is in effect a competing United States Attorney's office, and thus violative of Congressional intent as expressed in 28 U.S.C. §§ 541 et seq."). The Strike Force reported to "the Assistant Attorney General in charge of the Criminal Division of the Justice Department." *Id.* at 811. But by 1975, once an investigation had "progressed to the point where there" would "be a presentation for an indictment, the Chief of the Strike Force" would "operate under the direction of the United States Attorney." *United States v. Jacobs*, 547 F.2d 772, 774 (2d Cir. 1976) (cleaned up). Ultimately, in 1989, then-Attorney General Thornburgh merged the Strike Force into the U.S. Attorney's Offices. *See* Attorney General Order 1386-89.

  The Government thanks the Court for its consideration.

            Respectfully submitted,

            TODD BLANCHE
            U.S. DEPUTY ATTORNEY GENERAL

            PHILIP LAMPARELLO
            SENIOR COUNSEL

            Mark E. Coyne
            Supervisory Assistant U.S. Attorney
            Chief, Appeals Division

cc:  Counsel of Record (via ECF)