Doug Passon
Law Offices of Doug Passon, PC
10565 N. 114th St., Suite 101
Scottsdale, AZ 85259
Telephone: 480.448.0086
Email: doug@dougpassonlaw.com

Rahul Agarwal
Friedman Kaplan Seiler Adelman & Robbins
7 Times Square
New York, NY 10036
(212) 833-1132
ragarwal@fklaw.com
***Attorneys for Defendant Raheel Naviwala***

Jason J. LeBoeuf, Esq. (#033612001)
ZIEGLER LAW GROUP, LLC
651 Old. Mt. Pleasant Avenue, Suite 150
Livingston, New Jersey 07039
(973) 533-1100/ (973) 533-1144 (f)
jason@zlgllc.com
***Attorney for Defendant Daniel Torres***

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>RAHEEL NAVIWALA,<br><br>      Defendant.<br><br>UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>DANIEL TORRES,<br><br>      Defendant. | CASE NOS.  2:24-CR-99,<br>      2:24-CR-0378<br><br>**DEFENDANTS' CONSOLIDATED SUPPLEMENTAL BRIEF REGARDING APPLICATION OF THE MAJOR QUESTIONS DOCTRINE**<br><br>COURT: Hon. Matthew W. Brann |

.

## THE QUESTION BEFORE THE COURT ISN'T WHETHER CONGRESS HAS EXPRESSLY PROHIBITED DELEGATION TO THE TRIUMVIRATE, BUT WHETHER IT HAS EXPRESSLY AUTHORIZED IT

During the January 23rd hearing on the pending motions to disqualify and dismiss, this Court stated that "my job is to do the best I can to try to get the U.S. Attorney's Office in this District back on track."[1] In light of the Supreme Court's recent decision in *Learning Res., Inc. v. Trump*,[2] Defendants were granted leave to file the instant brief,[3] which is intended to assist the Court in achieving its desired end with maximum clarity. *Learning Res.* teaches that the onus is on the Government to point to clear statutory authority for its purported delegation authority. Absent that, it is merely stuffing an elephant into a mousehole.

At this juncture, there is exactly one, and only one way for the U.S. Attorney's Office in this District to get back on track: the President must nominate someone that the Senate confirms. Anything short of that will not suffice leaving the position of U.S. Attorney vacant and, as a result, leaving the U.S. Attorney's Office for this District without the power or authority to continue the instant prosecutions.

## I.     Preliminary Statement of Law and Facts

### A.     *Undisputed Legal Propositions*

(1) the Constitution requires that "all . . . Officers of the United States" be nominated by the President and confirmed by the Senate; however,

---

[1] Hearing Trans. at 142:11-13.
[2] Nos. 24-1287 and 25-250, 2026 U.S. LEXIS 714, *35 (Feb. 20, 2026).
[3] ECF Doc. 314.

1

(2) "Congress may by Law vest the Appointment of such inferior Officers, as they think proper . . . in the Courts of Law. . . .";

(3) United States Attorneys are "inferior Officers;"

(4) Congress codified a well-defined, limited exception to the default PAS rule for the appointment U.S. Attorneys at 28 U.S.C. § 546(d); and

(5) Section 546(d) delegates to the judiciary the authority to appoint U.S. Attorneys when, and only when, a previous Attorney-General-appointed U.S. Attorney's interim term has expired.

     *B.*    *Undisputed Statements of Fact*

(A) on July 22, 2025, pursuant to 28 U.S.C. § 546(d), the judges of this District exercised their Congressionally-delegated authority to appoint Desiree Grace as U.S. Attorney;

(B) that same day, the Government terminated Ms. Grace without cause;

(C) the Government has since installed a triumvirate that is acting as the functional equivalent of a U.S. Attorney;

(D) the Government has never asserted such authority previously; and

(E) the office of U.S. Attorney for this District remains vacant as a result of Ms. Grace's termination.

## II.    Has Congress Expressly Delegated to the Executive the Authority it Claims?

"Where, as here, the Executive Branch claims authority not granted to it in the

Constitution, it 'literally has no power to act . . . unless and until Congress confers

power upon it.'"[4] Therefore, this Court's "inquiry is straightforward:"[5] did Congress ***expressly*** delegate to the Executive authority to delegate the functions and duties of a U.S. Attorney while the office otherwise remains ***intentionally*** vacant?[6]

In the Attorney General's delegation order of December 8, 2025, creating the triumvirate, she cited exactly two statutes that purported to give her such authority: 28 U.S.C. §§ 509 (setting forth the functions of the Attorney General) and 510 (providing that the Attorney General "may from time to time" authorize others within the Department of Justice to perform "any function of the Attorney General"). Neither of those statutes suggest that the Attorney General has the power to delegate the functions and duties of a U.S. Attorney to others when the office has been intentionally left vacant. Nor do any of the other "housekeeping"[7] statutes the Government claims are implicitly referenced in the delegation order.[8]

In that regard, the Government has never pointed to any express statutory authority in clear support of its exercise of such power under these novel circumstances. Instead, the Government has consistently claimed permission by

---

[4] *City of Philadelphia v. AG of the United States*, 916 F.3d 276, 279 (3d Cir. 2019) (quoting La. Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 374, 106 S. Ct. 1890, 90 L. Ed. 2d 369 (1986).).

[5] *Id.*

[6] It is intentionally vacant, of course, in light of the Government's intentional and contemporaneous termination of Ms. Grace upon her appointment.

[7] *United States v. Philadelphia*, 482 F. Supp. 1248, 1258 (E.D. Pa. 1979), *aff'd*, 644 F.2d 187 (1980) (characterizing 28 U.S.C. § 518 as "merely a housekeeping provision").

[8] ECF Doc. 310 at 3 (citing 28 U.S.C. §§ 515-519, 533(1), 542, and 543).

omission, i.e., because Congress has not prohibited the Executive from delegating such functions and duties during an intentional vacancy and notwithstanding a prior judicial appointment, it may do so. But there is more. As the Government put it rather remarkably at the hearing, not only may the Attorney General delegate the functions and duties of a U.S. Attorney during an intentional vacancy, a U.S. Attorney is wholly superfluous in any event: "the Attorney General herself can pull every single case here and concentrate it, have it be run out of main justice. Every single one. And I know of no principle that would prohibit the Attorney General from doing it."[9]

But "[t]hat's not how statutes work,"[10] especially where the Government is asserting such significant, novel authority under an otherwise well-settled statutory framework. As this Court observed in *Giraud*,

> Congress is expected to **speak clearly** when it rebalances the separation of powers, and courts should be chary of Executive branch interpretations of structural enactments that result in greater arrogation of power to the President. That watchfulness is heightened where, as here, there is a long history of "interbranch conflict" over the allocation of authority in question, throughout which the Executive has repeatedly taken an expansive view of Congressional cessions of power, and Congress has consistently acted to refute these "threat[s] to the Senate's advice and consent power."'[11]

---

[9] Hearing Trans. at 84:15-19.

[10] *United States v. Cousin*, No. 2:19-cr-00661, 2020 U.S. Dist. LEXIS 184804, *1, 2020 WL 5909532 (E.D. Pa. Oct. 5, 2020) (characterizing a non-obvious reading of a statute as "a classic example of an elephant hiding in a mousehole" where reading suggested Congress "buried an exception . . . in the third sentence of a subsection of a different statutory section"; concluding "That's not how statutes work.").

[11] *United States v. Giraud*, 795 F. Supp. 3d 560, 574-575 (D.N.J. 2025)

The expectation that Congress speak clearly "when interpreting the scope of [Executive] authority" is derived from "the common law['s] . . . clear statement rule."[12] The clear statement rule has recently been formalized in the guise of the Major Questions Doctrine (MQD).[13] According to the Court of Appeals, MQD "stands for the following general proposition: An agency cannot take action that results in a 'transformative expansion' of its authority—especially over issues of 'vast economic and political significance'—**without express permission from Congress**. In those 'extraordinary cases,' we might 'hesitate before concluding that Congress meant to confer such authority.'"[14] More colloquially, MQD may be seen "as a manifestation, in the legal context, of an aphorism popularized by the scientist Carl Sagan, 'Extraordinary claims require extraordinary evidence.'"[15]

In this regard, the Supreme Court recently observed that "[w]e have long expressed 'reluctan[ce] to read into ambiguous statutory text' extraordinary

---

(emphasis added; footnotes omitted; citing *inter alia West Virginia v. EPA*, 597 U.S. 697, 740-42 (2022) (Gorsuch, J., concurring) for "importance of clear-statement rule in case[s] about 'self-government, equality, fair notice, federalism, and the separation of powers'")).

[12] *Learning Res., Inc. v. Trump*, Nos. 24-1287 and 25-250, 2026 U.S. LEXIS 714, *49 (Feb. 20, 2026) (Gorsuch, J., concurring).

[13] *West Virginia v. EPA*, 597 U.S. 697, 735-36 (2022) (Gorsuch, J., concurring).

[14] *In re Yellow Corp.*, 152 F.4th 491, 504 (3d Cir. 2025) (emphasis added; quoting *West Virginia v. EPA*, 597 U.S. 697, 716, 724 (2022)).

[15] Arthur Grushkow Sapper, Extending the Logic of the Major Questions Doctrine, Fed. Society Blog (Aug. 22, 2022), https://fedsoc.org/commentary/fedsoc-blog/extending-the-logic-of-the-major-question-doctrine

delegations of Congress's powers."[16] This is especially so where "the Government [has] claimed broad, expansive power on an uncertain statutory basis."[17]

Here, the Government is making extraordinary, if not incredible, claims that make a transformative expansion of its authority in an unprecedented context and fashion. The Government does so by claiming it may indefinitely delegate the functions and duties of an intentionally vacant U.S. Attorney position to non-PAS-compliant individuals—individuals who necessarily are exercising powers of "vast economic and political significance." That alone is reason enough to balk, if not hesitate.

As the Court of Appeals has explained,

> The United States Attorneys' offices are some of the most critical agencies in the Federal Government. They play an important role in the criminal and civil justice systems and are vital in keeping our communities safe. The U.S. Attorney leading each office is an officer whose appointment requires Senate confirmation. Where a vacancy exists, Congress has shown a strong preference that an acting officer be someone with a breadth of experience to properly lead the office."[18]

Yet, despite all that, the Government insists—for the first time in the history of this country—that Congress has all along intended to permit the Attorney General to treat U.S. Attorneys and their traditional independence as wholly superfluous, and that

---

[16] *Learning Res., Inc. v. Trump*, Nos. 24-1287 and 25-250, 2026 U.S. LEXIS 714, *17-18 (Feb. 20, 2026) (quoting West Virginia v. EPA, 597 U. S. 697, 723 (2022)).

[17] *Id.* at *18.

[18] *United States v. Giraud*, 160 F.4th 390, 393 (3d Cir. 2025).

the Attorney General alone may delegate the duties and functions of that office to non-PAS compliant individuals indefinitely whenever she wishes. And this is so even when judges have exercised their statutory authority to appoint a U.S. Attorney – thereby rendering 28 U.S.C. § 546(d) superfluous, too.

As Judge Cannon recognized in *Trump* regarding the Attorney General's appointment of a special counsel,

> There are reasons to believe that application of a clear statement rule would apply to the interpretation of statutes affecting the separation-of-powers balance animating the Appointments Clause. Clear statement rules, as noted, generally apply "when a statute implicates historically or constitutionally grounded norms that we would not expect Congress to unsettle lightly." And separation of powers norms ring strong here, where the Special Counsel's proffered statutory interpretations would displace the Senate from its ordinary and longstanding role of confirming United States Attorneys and give to the Executive seemingly unchecked power to create offices for outside prosecutors beyond the scheme designed in Title 28 of the United States Code. Additionally, there are indications in the language of the Appointments Clause itself—specifically, its repeated reference to "Law" and to Congress's determination of what it "think[s] proper" for vesting purposes—that support requiring Congress to make its intent known with discernable clarity.[19]

Ultimately, Judge Cannon did not find resort to a clear statement rule necessary as she "would reach the same conclusion in this Order regardless," namely that Congress did not "'vest the Appointment' of inferior Officers in the Attorney General

---

[19] *United States v. Trump*, 740 F. Supp. 3d 1245, 1263 (S.D. Fla. 2024).

as the Special Counsel suggests."[20]

Be that as it may, MQD has even more force and relevance to the issues before this Court than it did in *Trump*. After all, *Trump* did not involve the novel exercise of the Attorney General's purported powers of delegation in the context of an intentionally vacant U.S. Attorney's Office subsequent to a Congressionally-authorized judicial appointment. Nor did it involve rendering the position and independence of a U.S. Attorney and 28 U.S.C. § 546(d) wholly superfluous.

All this is to say, MQD unquestionably applies to the matters at hand as this Court all but expressly held in *Giraud*. MQD **requires** that the onus be placed on the Government to point to the clear statutory authority for the power it claims—a power that it has *never* asserted before; a power that effectively eviscerates the role and independence of a U.S. Attorney; a power that is not even limited to the Department of Justice itself. During the January 23rd hearing, this Court inquired of the Government: "Is there any reason your reading of these cases would be limited to the Department of Justice? Essentially every department head is empowered with vesting and delegation statutes like the ones at issue here. So doesn't your reading allow every subordinate office in the Executive branch to be filled by way of delegation?"[21] The Government responded, without any hint of irony: "we have not filled the vacancy. The vacancy is still there. So, yes, I suppose in the one sense, look, the FVRA applies

---

[20] *United States v. Trump*, 740 F. Supp. 3d 1245, 1263 (S.D. Fla. 2024).
[21] Hearing Trans. at 85:4-10.

8

across the entirety of the executive branch. . . there are positions throughout the executive branch that are themselves . . . PAS positions that are subordinate positions."[22]

Recently, pursuant to MQD, the Supreme Court held that the President did not have the broad and novel statutory authority he claimed to have (in that case, the power to impose tariffs).[23] As Justice Gorsuch explained in his concurrence, "[t]he major questions doctrine teaches that, to sustain a claim that Congress has granted them an extraordinary power, executive officials must identify clear authority for that power. . . . *[M]uch the same principle has long applied to those who claim extraordinary delegated authority*. . . ."[24] Thus, "the major questions doctrine safeguards . . . against executive encroachment."[25]

The same holds here. The Government identifies no authority, clear or otherwise, for the extraordinary power it claims. The Government not just encroaches upon, but intentionally obliterates, the involvement of both the Legislative and Judicial branches in their Constitutional and statutory roles to ensure that the "critical" and "vital" role of a U.S. Attorney be filled by qualified individuals with undivided loyalties *to the Constitution*.

---

[22] *Id.* at 85:22-86:4.
[23] *Learning Res., Inc. v. Trump*, Nos. 24-1287 and 25-250, 2026 U.S. LEXIS 714, *35 (Feb. 20, 2026).
[24] *Id.* at *115 (Gorsuch, J., concurring) (emphasis added).
[25] *Id.* at *35-36 (Gorsuch, J., concurring).

As Justice Gorsuch explained in *Learning Res., Inc.*:

> Yes, legislating can be hard and take time. And, yes, it can be tempting to bypass Congress when some pressing problem arises. But the deliberative nature of the legislative process was the whole point of its design. Through that process, the Nation can tap the combined wisdom of the people's elected representatives, not just that of one faction or man. There, deliberation tempers impulse, and compromise hammers disagreements into workable solutions. And because laws must earn such broad support to survive the legislative process, they tend to endure, allowing ordinary people to plan their lives in ways they cannot when the rules shift from day to day. In all, the legislative process helps ensure each of us has a stake in the laws that govern us and in the Nation's future.[26]

## CONCLUSION

As the Court of Appeals rightly observed, "the citizens of New Jersey and the loyal employees in the U.S. Attorney's Office deserve some clarity and stability."[27] Accordingly, as MQD teaches, this Court's decision must be clear, direct, and decisive: as the Government has failed to point to clear and express statutory authority for its purported novel powers of delegation under these circumstances, it does not have such powers. Therefore, as the Government terminated the judicially-appointed U.S. Attorney for this District, the ***only*** way to get the office back on track is through the PAS process.

---

[26] *Id.* at *100.

[27] *Giraud*, 160 F.4th at 393.

DATED: March 4, 2026                    RESPECTFULLY SUBMITTED,


DOUG PASSON                             JASON J. LEBOEUF

/s/ Doug Passon_____               /s/ Jason J. LeBoeuf_____
                                        **Attorney for Defendant**
RAHUL AGARWAL                           **DANIEL TORRES**

/s/ Rahul Agarwal_____
**Attorneys for Defendant**
**RAHEEL NAVIWALA**


## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2026, the foregoing DEFENDANTS'

SUPPLEMENTAL CONSOLIDATED BRIEF REGARDING APPLICATION OF

THE MAJOR QUESTIONS DOCTRINE was filed electronically and a copy was

served by mail on anyone unable to accept electronic filing. Notice of this filing will

be sent by e-mail to all parties by operation of the Court's electronic filing system or

by mail to anyone unable to accept electronic filing as indicated on the Notice of

Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


                                        /s/ Doug Passon_____
                                        DOUG PASSON