

**U.S. Department of Justice**

*United States Attorney's Office*
*District of New Jersey*

*970 Broad Street, 7th floor*   973-645-2700
*Newark, New Jersey 07102*

March 4, 2026

Hon. Matthew W. Brann
Chief United States District Judge
U.S. Courthouse and Federal Office Building
240 West Third Street
Williamsport, PA 17701

      Re:    *United States v. Raheel Naviwala*, Crim. No. 24-099
              *United States v. Daniel Torres*, Crim. No. 24-378

Dear Chief Judge Brann:

      The Government writes briefly to explain why the major questions doctrine has no bearing on the delegation issues in this case. Simply put, the major questions doctrine, like other clear statement rules, prevents agencies from finding "elephants in mouseholes." *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001). But this case involves a comparative mouse of a delegation authorized by a statutory elephant hole of power.[1]

      "The major questions doctrine stands for the following general proposition: An agency cannot take action that results in a 'transformative expansion' of its authority—especially over issues of 'vast economic and political significance'—without express permission from Congress." *In re Yellow Corp.*, 152 F.4th 491, 504 (3d Cir. 2025) (quoting *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (cleaned up)), *cert. filed*, No. 25-986 (U.S. Feb. 13, 2026). "In those 'extraordinary cases,'" courts "might 'hesitate before concluding that Congress meant to confer such authority.'" *Id.* (quoting *West Virginia*, 597 U.S. at 721) (cleaned up)). Thus, the major questions doctrine "serves as an interpretive tool reflecting 'common sense as to the manner in

---

      [1] Citations to "NDE" refer to the corresponding docket entry in *Naviwala*, using the pagination of that entry's header.

which Congress is likely to delegate a policy decision of such economic and political magnitude.'" *Biden v. Nebraska*, 600 U.S. 477, 511 (Barrett, J., concurring) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

"The Supreme Court has adopted a two-prong framework to analyze the major questions doctrine." *State v. Su*, 121 F.4th 1, 14 (9th Cir. 2024). First, courts "ask whether the agency action is 'unheralded' and represents a 'transformative expansion' in the agency's authority in the vague language of a long-extant, but rarely used, statute." *Id.* (quoting *West Virginia*, 597 U.S. at 724–25) (cleaned up)). Second, courts ask if that action "is of 'vast economic and political significance' and 'extraordinary' enough to trigger the doctrine." *Su*, 121 F.4th at 14 (quoting *West Virginia*, 597 U.S. at 716, 721 (cleaned up)). Only "[i]f both prongs are met" should courts "greet the agency's assertion of authority with 'skepticism' and require the agency to identify 'clear congressional authorization' for its action." *Su*, 121 F.4th at 14 (quoting *West Virginia*, 597 U.S. at 724) (cleaned up)).

Neither prong is satisfied here. Section 509 of Title 28, titled "Functions of the Attorney General," vests in her virtually "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice." 28 U.S.C. § 509. That includes all functions of U.S. Attorneys, who are officers of the Department of Justice. Meanwhile, § 510, titled "Delegation of authority," allows the Attorney General to delegate to anyone else in the Department nearly *any* of the *many* functions she has, NDE310 at 3, including *all* functions that a U.S. Attorney also has. 28 U.S.C. § 510. Section 510's language is unambiguously broad: "The Attorney General may from time to time make such provisions as *he considers appropriate* authorizing the performance by *any* other officer, employee, or agency of the Department of Justice of *any* function of the Attorney General." *Id.* (emphases added); *see United States v. Gonzales*, 520 U.S. 1, 5 (1997) (declining to read atextual limits into "'any other term of imprisonment'";

"the word 'any' has an expansive meaning," and "Congress did not add any language limiting the breadth of that word").

Far from being an unheralded, transformative expansion of her authority under vague language in a long-extant but seldom used statute, the Attorney General's delegation order in this case relies upon clear and sweeping statutory language that her predecessors used to establish much of the Department of Justice as it exists today, including in much more sweeping delegations whose authority has never been questioned. Most obviously, the Attorney General has delegated virtually *all* her powers at *all* times to the Deputy Attorney General. *See* 28 C.F.R. § 0.15(a) ("The Deputy Attorney General is authorized to exercise all the power and authority of the Attorney General, unless any such power or authority is required by law to be exercised by the Attorney General personally."). That delegation encompasses not just *all* the delegable functions of *every* U.S. Attorney, but also *all* the delegable functions of the *many other* PAS officers in the Department of Justice. Compared to that, delegating prosecutorial powers for a single U.S. Attorney's Office during a vacancy is far more modest.

"[I]ndeed, the structure of the Department is largely a creation of orders by the Attorney General." Walter Dellinger, *Creation of an Office of Investigative Agency Policies* 4 (O.L.C. Mem. Oct. 26, 1993). For example, the Assistant Attorney General heading the Department's Criminal Division has all his powers only through delegation from the Attorney General. *See, e.g.*, 28 C.F.R. § 0.55 ("General Functions" of the "Assistant Attorney General, Criminal Division"). And while the Deputy Attorney General and all but one of the Assistant Attorneys General are Senate-confirmed, *see* 28 U.S.C. §§ 504, 506, 507, the Attorney General's general delegation statute is clear as can be that the Attorney General can delegate any of her powers to "*any* other officer," 28 U.S.C. § 510 (emphasis added).

As the Government explained in its prior briefing, those kinds of delegations within the Department are longstanding and common. NDE295-1 at 10–12, 20–21, 33, 36–37; NDE310 at 4–5, 11. Moreover, Congress has blessed those delegations through the Government Accountability Office (GAO), NDE295-1 at 37; NDE310 at 11, and through statutes acknowledging the creation of offices, including the offices of Deputy Solicitor General and Deputy Assistant Attorney General, that no statute expressly established, NDE310 at 4–5. Thus, the statutes defining the functions of the Attorney General and allowing her to delegate virtually all of them to virtually anyone in the Department provide her with all the authority she needed to appoint Philip Lamparello, Jordan Fox and Ari Fontecchio to their current positions in the USAO-NJ. "Congress need not use magic words to confer appointment authority." *Kennedy v. Braidwood Mgmnt., Inc.*, 606 U.S. 748, 780 (2025).

As for the major question doctrine's second prong, as important as selecting the leadership of a U.S. Attorney's Office is, that choice does not concern a question of "vast economic and political significance." *West Virginia*, 597 U.S. at 716 (cleaned up). The Attorney General isn't claiming "authority over a significant portion of the American economy" or requiring "billions of dollars in spending by private entities." *Su*, 121 F.4th at 21 (R. Nelson, J., concurring) (cleaned up). Rather, through her delegation order, she is ensuring that the work of just one of the Nation's 93 U.S. Attorney's Offices can continue with appropriate supervision until a U.S. Attorney is either confirmed by the Senate or appointed by the District Court. Thus, this case "bears little resemblance to the line of extraordinary cases the Supreme Court has held triggers the major questions doctrine." *United States v. Freeman*, 147 F.4th 1, 31 (1st Cir. 2025), *cert. denied*, No. 25-762, 2026 WL 490587 (U.S. Feb. 23, 2026).

The Supreme Court did not suggest otherwise in *Learning Resources*. Only three Justices "applied the major questions doctrine" there "to determine that the President lacked the broad statutory authority he claims to impose tariffs." NDE313

at 2; *see Learning Resources*, 2026 WL 477534, at *36 (agreeing "with the bulk of the principal opinion's reasoning" but not joining "the part of that opinion invoking the so-called major-questions doctrine") (Kagan, J., concurring in part and concurring in judgment, joined by Sotomayor and Jackson, JJ.). And those three Justices relied on a rationale that is plainly inapposite here. No President had ever before "invoked" the International Emergency Economic Powers Act "to impose *any* tariffs"—"let alone" trillions of dollars in tariffs. *Learning Resources*, 2026 WL 477534, at *9 (Roberts, C.J., joined by Gorsuch and Barrett, JJ.). And the Government could not "point to clear congressional authorization" in the Act "to justify" the "power to impose tariffs." *Id.* at 10 (cleaned up).

Finally, contrary to Defendants' suggestion, NDE313 at 1–2, the now-dismissed appeal from *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), is irrelevant to the application of the major questions doctrine in this case. Even assuming the doctrine was relevant to the Attorney General's ability to create a new office not adequately supervised by her or her subordinates, *cf. Trump*, 740 F. Supp. at 1261–62 (declining to apply a clear statement rule), it has nothing to say about delegations to officers who remain fully subject to supervision. Once again, those kinds of delegations within the Department are longstanding and common, and Congress has approved of them in many contexts. So has GAO—the very arm of Congress charged with monitoring FVRA compliance. All this confirms that the Attorney General has lawfully delegated to Ms. Fox and Messrs. Lamparello and Fontecchio the collective authority to supervise the work of the USAO-NJ.

\* \* \*

The Government thanks the Court for its consideration.

                                        Respectfully submitted,

                                        TODD BLANCHE
                                        U.S. DEPUTY ATTORNEY GENERAL

                                        PHILIP LAMPARELLO
                                        SENIOR COUNSEL

                                        */s/ Mark E. Coyne*
                                        Mark E. Coyne
                                        Supervisory Assistant U.S. Attorney
                                        Chief, Appeals Division

cc:     Counsel of Record (via ECF)