**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | No. 2:24-CR-00099 |
| v. | | (Chief Judge Brann)[*] |
| RAHEEL NAVIWALA, | | |
| Defendant. | | |

**MEMORANDUM OPINION**

**APRIL 16, 2026**

Defendant Raheel Naviwala challenges the appointment of Robert Frazer as United States Attorney for the District of New Jersey pursuant to 28 U.S.C. § 546(d). He also makes an untimely request for reconsideration of my prior decision to deny him the remedy of dismissal. Neither argument is meritorious: Mr. Frazer's appointment as United States Attorney complied with the requirements of section 546(d), and he is lawfully serving in that Office. Nothing that has occurred in this litigation entitles Naviwala to the drastic remedy of dismissal. Naviwala's second motion to dismiss and disqualify is denied, and this matter is transferred back to the Honorable Michael E. Farbiarz.

---

[*] The Honorable Matthew W. Brann, Chief United States District Judge for the Middle District of Pennsylvania, sitting by designation.

## I.     BACKGROUND

Naviwala's main challenge centers on the interpretation of 28 U.S.C. § 546. I therefore begin by describing that statute and recent interpretations of its provisions in order to situate the relevant facts.

### A.     28 U.S.C. § 546

Title 28 U.S.C. § 546, entitled "Vacancies," provides several methods for temporarily filling the Office of the United States Attorney in a District in which that Office is vacant.[1] Subsection (a) permits the Attorney General to appoint an individual to temporarily fill the Office, and subsection (b) limits the Attorney General's options by prohibiting appointment of "a person to whose appointment by the President to that office the Senate refused to give advice and consent."[2] Subsections (c)(2) and (c)(3) set time limits on subsection (a) appointments, providing that "[a] person appointed as United States attorney under this section may serve until the earlier of" the Senate's confirmation of a Presidential nominee for the position, or "the expiration of 120 days after appointment by the Attorney General under this section."[3] Finally, subsection (d) provides that "[i]f an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled."[4]

---

[1]    28 U.S.C. § 546.
[2]    *Id.* §§ 546(a), (b).
[3]    *Id.* §§ 546(c)(1), (c)(2).
[4]    *Id.* § 546(d).

In *United States v. Giraud*, I interpreted the 120-day limit of section 546(c)(2) and held that "the Attorney General is vested with 120 total days to appoint an Interim United States Attorney from the date that she first invokes section 546(a)."[5] I also concluded that nothing in section 546 prohibits the Attorney General from "making a personnel change" under her[6] subsection (a) appointment power as long as the limits set forth in subsection (c) have not been triggered. But even if the appointee changes, the time limit is still an aggregate of 120 days from the first subsection (a) appointment.[7] I also reasoned that "[t]here is no textual basis for concluding that, once triggered, section 546(d) is the exclusive means for appointing a United States Attorney until a PAS official is confirmed."[8] Thus, even after a section 546(d) appointment occurs, other methods of temporary appointment remain available in the event that the section 546(d) appointment is terminated.[9] Additionally, in *United States v. Naviwala*, I clarified that "the President's section 541(c) power to terminate a United States Attorney applies to one appointed under section 546(d)."[10]

---

[5]    795 F. Supp. 3d 560, 582 (D.N.J. 2025).

[6]    At all relevant times, Pamela Bondi was the Attorney General of the United States. I therefore continue to use feminine pronouns in this opinion.

[7]    785 F. Supp. 3d at 579-82.

[8]    *Id.* at 582 ("PAS" is shorthand to describe an office that requires Presidential nomination and Senate confirmation and officers holding such offices).

[9]    *Id.* at 583-84 (describing "situations in which no one will hold office under section 546" including "Presidential termination of a section 546(d) appointee pursuant to section 541(c)").

[10]    *United States v. Naviwala*, __ F. Supp. 3d __, 2026 WL 658885, at *8 (D.N.J. 2026).

## B.    Facts

A detailed recitation of the events leading up to this point is set forth in *Giraud* and *Naviwala*.[11] Only a condensed and highly focused summary is necessary here.

On January 3, 2025, a grand jury returned a ten-count superseding indictment charging Naviwala with various crimes.[12] That indictment was signed by First Assistant United States Attorney Vikas Khanna, "Acting Under Authority Conferred by 28 U.S.C. § 515."[13] The Government has explained that Mr. Khanna supervised Naviwala's case at this stage "to prevent a conflict of interest or the appearance of a conflict of interest" with the United States Attorney, Philip R. Sellinger,[14] and Naviwala has never challenged Mr. Khanna's authority despite many opportunities to do so.[15] On February 28, 2025, Naviwala was convicted by a jury of six counts of fraud and kickback offenses.[16] By that point, Mr. Khanna was serving as the Acting United States Attorney for the District of New Jersey pursuant to the Federal Vacancies Reform Act ("FVRA").[17] Three days later, on March 3, 2025, then-Attorney General Pamela Bondi appointed John Giordano as Interim United States Attorney pursuant to 28 U.S.C. § 546(a).[18] Then, on March 28, 2025, Alina Habba

---

[11]  *Giraud*, 795 F. Supp. 3d at 568-73; *Naviwala*, 2026 WL 658885, at *2-6.
[12]  Doc. 73.
[13]  *Id.*
[14]  *See* Doc. 284 at 29.
[15]  Such a challenge would both be untimely and almost certainly fail on the merits. *Naviwala*, 2026 WL 658885, at *37-40 & n.442.
[16]  *Id.* at *6 (citing Doc. 176).
[17]  *Giraud*, 795 F. Supp. 3d at 568.
[18]  *Id.* at 568-69.

was appointed to replace Mr. Giordano as Interim United States Attorney, also pursuant 28 U.S.C. § 546(a).[19]

In July of 2025, no court had yet interpreted section 546(c)(2)'s 120-day limit, and the Government took the position that the clock began at the time of Ms. Habba's appointment and not Mr. Giordano's.[20] So 120 days after Ms. Habba's appointment was announced, the United States District Court for the District of New Jersey issued a Standing Order appointing Desiree Grace as United States Attorney pursuant to section 546(d), with an effective date of "July 22, 2025 or 'upon the expiration of 120 days after appointment by the Attorney General' of the Interim U.S. Attorney Alina Habba, whichever is later."[21] Regardless of when or if the Standing Order actually took effect, Ms. Grace was terminated by President Donald Trump essentially immediately.[22]

After terminating Ms. Grace, Trump Administration officials took steps to keep Ms. Habba in the position of United States Attorney for the District of New Jersey.[23] Without belaboring the point, on August 21, 2025, I determined that those efforts were legally deficient.[24] As relevant here, I determined that "the section 546(c)(2) bar triggered to end Ms. Habba's appointment as Interim United States

---

[19]  *Id.* at 569.
[20]  *See id.* at 579.
[21]  *In re Appointment of United States Attorney for the District of New Jersey*, Standing Order 2025-03 (D.N.J. July 22, 2025).
[22]  *Giraud*, 795 F. Supp. 3d at 570, 571-72.
[23]  *See id.* at 570-71.
[24]  *See generally id.*

Attorney for the District of New Jersey on July 1, 2025, 120 days after Attorney General Bondi appointed Mr. Giordano Interim United States Attorney on March 3, 2025."[25] Following that decision, Ms. Habba continued to act as the United States Attorney for the District of New Jersey while the Government took an appeal.[26]

On September 2, 2025, Naviwala raised the United States Attorney issue in his case,[27] and the matter was transferred to me on September 15, 2025.[28] Naviwala then filed a formal motion to dismiss the indictment on which he had been convicted, and that motion was briefed.[29]

On December 1, 2025, the United States Court of Appeals for the Third Circuit affirmed my decision in *Giraud*.[30] A week later, on December 8, 2025, Ms. Habba resigned, and Attorney General Bondi "appointed and delegated authority to three individuals to run the United States Attorney's Office for the District of New Jersey," a leadership structure I refer to as the "triumvirate."[31] The Government did not claim to have appointed any of these three individuals under section 546 or the FVRA. Naviwala quickly moved to disqualify these new appointees and continued to argue for dismissal of the superseding indictment.[32] I considered his arguments,

---

[25]  *Id.* at 582.
[26]  *See* Doc. 242 (Letter of Sept. 5, 2025, signed by "Alina Habba, Acting U.S. Attorney, Special Attorney"); *Naviwala*, 2026 WL 658885, at *2.
[27]  Doc. 241.
[28]  Doc. 248.
[29]  Doc. 257.
[30]  *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025), *reh'g denied*.
[31]  *Naviwala*, 2026 WL 658885, at *3.
[32]  Doc. 269.

along with those of another defendant, and on March 9, 2026, I granted his motion to disqualify but denied his motion to dismiss.[33]

On March 23, 2026, the Judges of the United States District Court for the District of New Jersey issued another Standing Order, this time appointing Robert Frazer as United States Attorney pursuant to section 546(d), effective immediately.[34] The Trump Administration appears satisfied with this appointment: Deputy Attorney General Todd Blanche reposted a post made by Ms. Habba congratulating Mr. Frazer and approving of the selection.[35]

Naviwala, however, declared his intent to challenge Mr. Frazer's appointment.[36] Given my by-now-extensive familiarity with the relevant law, I set in a truncated schedule to brief another disqualification motion.[37] That motion is now fully briefed and ripe for decision. For the reasons stated below, it is denied in full.

## II.    ANALYSIS

Naviwala asserts two separate points. First, he argues that I should reconsider my prior decision to deny him dismissal because he contends that I failed to consider his arguments that the unlawful appointment of the triumvirate (and Ms. Habba) must be presumed prejudicial such that dismissal is the only acceptable remedy.

---

[33]  *See generally Naviwala*, 2026 WL 658885.
[34]  *In re Appointment of United States Attorney for the District of New Jersey*, Standing Order 2026-03 (D.N.J. Mar. 23, 2026)
[35]  Alina    Habba    (@AlinaHabba),    X    (Mar.    23,    2026,    1:11    PM), https://x.com/AlinaHabba/status/2036128815542587439.
[36]  Doc. 321.
[37]  Doc. 322.

Second, he contends that Mr. Frazer's appointment violates section 546(d) because the conditions for appointment under that provision were not satisfied.

### A.     Reconsideration

Naviwala's request for reconsideration fails both procedurally and on the merits.

As the Government correctly notes,[38] Local Civil Rule 7.1(i) provides that "a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge."[39] The Order Naviwala challenges was filed on March 9, 2026, meaning that his deadline to seek reconsideration was March 23, 2026. But Naviwala did not raise any arguments until—at the earliest—his (court ordered) letter of March 27, 2026, which nowhere mentioned that reconsideration would be sought.[40] Because it is untimely, I need not consider this argument at all.[41] Nevertheless, I resolve the issue substantively because it is not difficult to do so.

On the merits, Naviwala contends that he is inherently prejudiced by the unlawful appointments of Ms. Habba and the triumvirate, that he need not show any

---

[38]   Doc. 324 at 1-2.

[39]   *See* L.Cr.R. 1.1 (stating that "L.Civ.R. 7.1(i)" is "applicable to criminal cases in the District of New Jersey").

[40]   Doc. 321.

[41]   *Rojas v. City of New Brunswick*, No. 04-CV-3195, 2007 WL 1101439, at *3 (D.N.J. Apr. 9, 2007).

actual prejudice, and that the presumed prejudice is so severe that dismissal of the indictment that led to his conviction is the only acceptable remedy.[42]

To the extent this issue was unaddressed in my prior decision in this matter, that is because I resolved it in my very first ruling in this leadership dispute.[43] In *United States v. Giraud*, I considered whether the Girauds were entitled to dismissal of their case if I found that Ms. Habba's appointment became invalid during their prosecution.[44] The Girauds had been indicted on November 21, 2024, and their indictment was signed by United States Attorney Philip R. Sellinger, whose authority was not in dispute.[45] Furthermore, most of the litigation in their case had occurred before any authority issues arose. Nevertheless, the Girauds argued that Ms. Habba's unlawful participation in their case required immediate dismissal.[46]

I rejected that argument, explaining that "there is no clear basis to dismiss" an indictment based on authority issues that arise only after the indictment was validly returned.[47] I reasoned that "[i]t escapes logic to contend that [an unlawful] appointment somehow retroactively taints [a lawfully returned] indictment, or any aspect of the prosecution that preceded [the appointment]."[48] Moreover, I expressly

---

[42] Doc. 323 at 5-7; *see* Doc. 325 at 4 ("[W]here there is an Appointments Clause violation, prejudice is presumed, irrebuttable, irreparable and a remedy is required.").

[43] *See* Doc. 324 at 2 (citing prior decisions).

[44] *United States v. Giraud*, No. 1:24-CR-0768, 2025 WL 2196794 (D.N.J. Aug. 1, 2025).

[45] *Id.* at *1.

[46] *Id.* at *4-5.

[47] *Id.* at *5.

[48] *Id.*

considered whether "postindictment constitutional violations can result in dismissal" and determined that dismissal is appropriate "only when the constitutional violation results in some prejudice to the defendant *and 'no lesser remedial action is available.'* So even in the constitutional context, dismissal of the indictment is a 'drastic remedy,' and the 'general rule [is] that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'"[49] Because the Girauds had timely raised their challenge to Ms. Habba's authority, "there ha[d] been no opportunity for the Government to engage in the misconduct that they fear, nor ha[d] they suffered any prejudice yet," so "the properly tailored remedy [wa]s to purge the harm of that violation by excising proceedings infected by it or preventing them from happening."[50]

Naviwala's case is entirely analogous to the Girauds', and that decision applies with equal force here. Like the Girauds, Naviwala was indicted pursuant to authority that he does not dispute. And more significantly than the Girauds, Naviwala went to trial and was convicted at a time when the Government's authority was not in question. Furthermore, here, as in *Giraud*, the Government's participation in this matter during the time when the USAO-NJ was under the supervision of

---

[49]  *Id.* at *6 (emphasis added) (quoting *United States v. Struckman*, 611 F.3d 560, 575 (9th Cir. 2010) and *United States v. Morrison*, 449 U.S. 361, 364, 365 n.2 (1981)).

[50]  *Id.* at *6.

unlawfully appointed individuals was minimal, and what action did occur was primarily focused on litigating the authority question, which is now resolved.[51] Accordingly, "dismissal is not necessary for any constitutional [or statutory] violation that may flow from [either] appointment because . . . prejudice to the [Defendant] has not occurred."[52]

Even accepting Naviwala's premise that he was inherently prejudiced by the Appointments Clause violations, it does not follow that such prejudice is automatically so severe that it cannot be remedied by anything other than dismissal.[53] Instead, precedent teaches the exact opposite: "a court's holding that there has been an Appointments Clause violation does not mean that the violation cannot be remedied by a new, proper appointment. And once there has been such an appointment, the subsequent proceeding is constitutionally suspect only if there is sufficient continuing taint arising from the first."[54] Thus, when evaluating an Appointments Clause violation, courts should tailor the remedy to purge only the proceedings that are affected by the violation.

---

[51] The only non-authority related filings during the relevant period appear to be the submission of sentencing materials, Doc. 247, and minimal argument on the issue of bail modification, Doc. 252, which ultimately resolved in Naviwala's favor. *See* Doc. 256.

[52] *Giraud*, 2025 WL 2196794, at *6; *see id.* at *7 ("In sum, where an indictment was returned by a validly composed grand jury and signed by a properly appointed United States Attorney, the illegal or unconstitutional appointment of a subsequent United States Attorney does not necessarily require dismissal of the charges. And when the defendant objects to that appointment before the questioned United States Attorney has substantially participated in his prosecution, dismissal is not the proper remedy.").

[53] *See* Doc. 325 at 2, 4 (describing the prejudice as "irreparable").

[54] *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 117 (D.C. Cir. 2015).

Naviwala's own cases confirm this targeted remedy. In *Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Board*, a panel of the United States Court of Appeals for the District of Columbia Circuit considered whether properly appointed officers' *de novo* review and ultimate affirmance of a prior proceeding that had been conducted by unconstitutionally appointed officers remained tainted by the original constitutional violation.[55] The panel concluded that the properly appointed Administrative Law Judges' ("ALJ") subsequent decision was independent and therefore not affected by the earlier Appointments Clause violation, even though the new Judges had not conducted any new proceedings and instead relied on the record created by the unlawfully appointed ALJs.[56] Additionally, in *Cirko ex rel. Cirko v. Commissioner of Social Security*, a panel of the Third Circuit held that a litigant need not show actual prejudice in order to litigate an Appointments Clause violation.[57] But the remedy the panel approved for the violation in question was a rehearing before a properly appointed official— essentially vacatur of the invalid proceedings and a do-over.[58]

---

[55]   796 F.3d 111, 117 (D.C. Cir. 2015).

[56]   *Id.* at 118-23.

[57]   948 F.3d 148, 154 (3d Cir. 2020).

[58]   *Id.* at 159-60. Naviwala's third case, *In re Kensington Int'l, Ltd.*, 368 F.3d 289 (3d Cir. 2004), does not help him at all because the remedy there was disqualification of the offending officer—a remedy Naviwala has already received. And his reliance on *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023) is entirely misplaced: that case merely held that the petitioner could immediately raise Constitutional challenges to ALJs' appointments in District Court before the administrative proceedings completed. Here, Naviwala was permitted to immediately raise his authority challenges, and the other proceedings in his case stopped while those challenges played out. So he has already received the consideration due under *Axon*.

12

Naviwala's cases do not involve criminal proceedings, so those courts did not consider the particular circumstances involved in obtaining and prosecuting a criminal indictment, nor whether the "drastic" remedy of dismissal should apply if an invalid appointment arises after the defendant is convicted. In that vein, in *Ryder v. United States*, the Supreme Court did not dismiss a court-martial conviction despite an Appointments Clause violation in the proceedings.[59] There, the judges on the intermediate Coast Guard Court of Military Review were found to be unlawfully appointed.[60] But because their participation in the case had only affected the petitioner's opportunity for appellate relief before that court, the Supreme Court remanded for "a hearing before a properly appointed panel of that court."[61] And in *Lucia v. Securities and Exchange Commission*—a quasi-criminal administrative enforcement case—the Supreme Court determined that the petitioner had been subjected to a proceeding that was overseen by an unlawfully appointed ALJ.[62] To remedy that violation, the Court ordered that the petitioner receive "a new 'hearing before a properly appointed' official."[63]

Under more extreme circumstances than the case at bar, in *Consumer Financial Protection Bureau v. Gordon*, a panel of the United States Court of

---

[59]  515 U.S. 177, 179-80, 187-88 (1995).
[60]  *Id.* at 180.
[61]  *Id.* at 188.
[62]  585 U.S. 237, 244-51 (2018).
[63]  *Id.* at 251-52.

Appeals for the Ninth Circuit affirmed the result of an enforcement action that the CFPB commenced and completed entirely during a period when its director was unconstitutionally appointed.[64] The court reasoned that the properly appointed director's subsequent ratification, though it postdated the entire proceeding, "resolve[d] any Appointments Clause deficiencies" and thus upheld the District Court's grant of summary judgment in favor of the CFPB.[65] Similarly, in *United States v. Plesinski*, an improperly appointed Special Assistant United States Attorney took several actions in the defendant's criminal case, including appearing before the grand jury as an "observer."[66] Nevertheless, a panel of the Ninth Circuit affirmed his conviction, reasoning that dismissal was unnecessary where the unlawfully appointed prosecutor did not significantly influence the prosecution, and the prosecutor was permitted to continue participating only after "the defective appointment had been cured."[67]

Additional case law clearly establishes that an Appointments Clause violation does not irrevocably poison a proceeding. Instead, Courts of Appeals across the country have repeatedly held that "[i]f a lawfully appointed official ratifies his predecessor's action and does so in accordance with the law, that ratification may 'remedy a defect arising from the decision of an improperly appointed'

---

[64]  819 F.3d 1179 (9th Cir. 2016).
[65]  819 F.3d at 1191-92.
[66]  912 F.2d 1033, 1038 (9th Cir. 1990).
[67]  *Id.* at 1039.

predecessor."[68] Courts have gone so far as to hold that a ratification "cures any initial Article II deficiencies," "even if the subsequent . . . 'review' was 'nothing more than a rubberstamp.'"[69] There is no basis for concluding that similar remedies are not sufficient in this criminal matter, and Naviwala identifies no case so holding.

The proper remedy for an Appointments Clause violation is to purge the tainted proceedings—and no more. That remedy is entirely consonant with the proposition from *Giraud* that "remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."[70] In Naviwala's case, the affected proceedings are those that occurred between July 1, 2025, and March 23, 2026, which encompasses essentially only the authority-focused litigation. Any non-authority filings from this period can be cured by independent review and approval by Mr. Frazer or his delegee.[71] The Appointments Clause violation did not affect: (1) the indictment; (2) pretrial motions; (3) the trial; (4) the conviction; and (5) post-trial filings up to July 1, 2025, and, under the above-described precedent, there is no need to interfere with any of those settled proceedings. Accordingly, dismissal is improper, and Naviwala's untimely request for reconsideration is denied.

---

[68] *Kajmowicz v. Whitaker*, 42 F.4th 138, 147 (3d Cir. 2022) (quoting *Moose Jooce v. Food & Drug Admin.*, 981 F.3d 26, 28 (D.C. Cir. 2020)).

[69] *Gordon*, 819 F.3d at 1191 (9th Cir. 2016) (quoting *Fed. Election Comm'n v. Legi-Tech, Inc.*, 75 F.3d 704, 707 (D.C. Cir. 1996)).

[70] *Giraud*, 2025 WL 2196794, at *6 (emphasis added) (quoting *Morrison*, 449 U.S. at 364, 365 n.2)

[71] See *Intercollegiate Broad. Sys.*, 796 F.3d at 118-23; *Kajmowicz*, 42 F.4th at 147-48.

## B.    Disqualification

Naviwala contends that Mr. Frazer's appointment as United States Attorney is unlawful because it does not comply with the requirements of 28 U.S.C. § 546(d). He contends that judicial appointments under that provision can only occur after "three distinct and well-defined events . . . transpire," and these three events must happen "in uninterrupted succession."[72] Although Naviwala correctly identifies the preconditions for a section 546(d) appointment, his "uninterrupted succession" requirement appears nowhere in the text. Instead, all three preconditions are met in this case, and the appointment of Mr. Frazer by the Judges of the District of New Jersey is entirely lawful.

To determine whether Mr. Frazer's appointment complies with section 546, I begin by considering the text of that provision.[73] The statutory language should be viewed in its specific context, and in "the broader context of the statute as a whole."[74] A court's duty is to "give effect, if possible, to every clause and word of [the] statute."[75] If the statute's text is unambiguous, the "inquiry begins . . . and ends there as well."[76]

---

[72]    *See* Doc. 323 at 8-12.
[73]    *Giraud*, 160 F.4th at 397 (quoting *Al-Hasani v. United States Dep't of Homeland Sec.*, 81 F.4th 291, 296 (3d Cir. 2023)).
[74]    *Id.* (quoting *Hayes v. Harvey*, 903 F.3d 32, 41 (3d Cir. 2018)).
[75]    *Id.* (quoting *Fischer v. United States*, 603 U.S. 480, 486 (2024)).
[76]    *Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 583 U.S. 109, 126-27 (2018) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality)); *Babb v. Wilkie*, 589 U.S. 399, 413 (2020) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003)).

Title 28 U.S.C. § 546 provides a procedure for addressing vacancies in the Office of the United States Attorney for a given district. Subsection (d) states that "the district court for such district may appoint a United States attorney to serve until the vacancy is filled" "if an appointment expires under subsection (c)(2)."[77] Subsection (c)(2) sets a 120-day expiration date for "appointment[s] by the Attorney General under this section," and the Attorney General's appointment power comes from subsection (a), which authorizes her to "appoint a United States attorney for the district in which the office of United States attorney is vacant."[78] Thus, as Naviwala argues, for the District Court's appointment power under section 546(d) to become available, three preconditions must be met: (1) the Office of the United States Attorney for the given district must be vacant;[79] (2) the Attorney General must have made an appointment under subsection (a);[80] and (3) the Attorney General's appointment must have expired by reaching the 120-day limit under subsection (c)(2).[81] Once those events have occurred, the District Court "may appoint a United States attorney to serve until the vacancy is filled."[82]

Contrary to Naviwala's argument, however, the statutory text contains no additional requirements for a section 546(d) appointment. The District Court is not

---

[77] 28 U.S.C. § 546(d).
[78] *Id.* §§ 546(c)(2), (a).
[79] *Id.* §§ 546(a), (d).
[80] *Id.*
[81] *Id.* §§ 546(d), (c)(2).
[82] *Id.* § 546(d); *see Naviwala*, 2026 WL 658885, at *8; *United States v. Comey*, 810 F. Supp. 3d 768, 776-77 (E.D. Va. 2025).

required to act *at all*, let alone within some specific window surrounding the subsection (c)(2) deadline: as I have stated before, "[t]here is no time limit on when the District Court may use its section 546(d) power."[83] Moreover, subsection (d) does not refer to any events that would alter or affect the District Court's power except for the point at which "the vacancy is filled" and the District Court's appointment is terminated.[84] So once the preconditions are satisfied, the permissive subsection (d) power shifts to the District Court.

Although he does not clearly frame the argument, it appears that Naviwala implicitly contends that (1) the use of another statutory provision to authorize performance of the functions and duties of the office defeats the availability of section 546(d); or (2) "§ 546(d) does not provide the judiciary with the authority to make multiple, successive appointments."[85] Neither point is statutorily supported.

As to the first point, I have already held that section 546 and the FVRA (the only other statute Naviwala identifies) are non-exclusive.[86] As I have previously explained, because the District Court's section 546(d) appointment authority has no time limit, "[i]f the time limits on the FVRA run out, 'the office shall remain vacant,' but position-specific statutes remain viable alternatives to fill the role on a temporary basis. At that point, the District Court—and only the District Court—may

---

[83] *Giraud*, 795 F. Supp. 3d at 584; *id.* at 583 (describing section 546(d) power as "permissive").
[84] 28 U.S.C. § 546(d).
[85] *See* Doc. 321.
[86] *Giraud*, 795 F. Supp. 3d at 582-84.

18

act to temporarily appoint a United States Attorney."[87] Naviwala points to no text in either section 546 or the FVRA that would prohibit a section 546(d) appointment from being made after FVRA service, as long as the section 546 preconditions were otherwise satisfied.

On the second issue, the text of section 546(d) makes clear that multiple appointments are permissible once the preconditions are met. The provision states that "the district court for such district may appoint a United States attorney to serve until the vacancy is filled"—language that is identical to that authorizing the Attorney General to make an appointment under subsection (a).[88] In previously interpreting the Attorney General's authority, I reasoned that subsection (a) permitted another appointment "even if a section 546(a) appointment has already been made, if the original appointee steps down or is removed."[89] The statute's use of the indefinite article "a" confirmed that "there is no prohibition on making a personnel change" as long as the 120-day time limit on that section had not run.[90]

---

[87] *Id.* at 584 (internal citations omitted); *see Naviwala*, 2026 WL 658885, at *3 (noting as "undisputedly legal" the option that "the Judges of the District of New Jersey may still appoint a United States Attorney to serve indefinitely until a nominee is confirmed pursuant to 28 U.S.C. § 546(d)").

[88] 28 U.S.C. § 546(a) ("the Attorney General may appoint a United States attorney").

[89] *Giraud*, 795 F. Supp. 3d at 579.

[90] *Id.*

The identical language in subsection (d) has the same meaning,[91] and thus permits personnel changes "until the vacancy is filled."[92]

Furthermore, it is clear from the text that a subsection (d) appointment does not fill the vacancy such that section 546(a) retriggers and restarts the 120-day period before another subsection (d) appointment can occur. The Honorable Cameron McGowan Currie, writing for the United States District Court for the Eastern District of Virginia, has explained that "the conjunction 'until' in subsection (d)'s main clause defines the duration of the district court's authority. It lasts from the moment the condition is first met up to the time that the vacancy is filled by a Senate-confirmed appointee."[93] Moreover, because a subsection (d) appointment lasts "until the vacancy is filled," it is clear that the subsection (d) appointment does not itself fill that "vacancy," lest the appointee's service end immediately upon appointment. With this textual point in mind, the vacancy referred to in subsection (a) is not

---

[91] *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) ("[I]dentical words and phrases within the same statute should normally be given the same meaning." (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005))).

[92] 28 U.S.C. § 546(d). Naviwala contends that the clear statement rule requires the successive appointment authority to be explicit. Doc. 325 at 5-6. But the Court is not aware of a single appointment statute that explicitly states that the appointing authority is permitted to make repetitive appointments. *See, e.g.*, 28 U.S.C. § 541(a) (stating only that "The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district."); 28 U.S.C. § 503 ("The President shall appoint, by and with the advice and consent of the Senate, an Attorney General of the United States."); 28 U.S.C. § 504 (same for Deputy Attorney General); 28 U.S.C. § 505 (same for Solicitor General); 28 U.S.C. § 506 (permitting only 11 appointments for Assistant Attorneys General). Yet there is no dispute that each of these statutes permits successive appointments in the absence of any other textual limitation. The same is true here for the textual reasons discussed in the body, and no clearer statement is required.

[93] *Comey*, 810 F. Supp. 3d at 777 (internal citation omitted).

20

resolved by a subsection (d) appointment,[94] and, accordingly, the "expiration of 120 days" after the Attorney General's subsection (a) appointment continues to be true notwithstanding the subsection (d) appointment.

Stated in simpler terms, a District Court appointment under subsection (d) does not undo the triggering of the preconditions, which do not reset until the vacancy is filled through Presidential nomination and Senate confirmation.[95]

That the District Court retains continued authority to make subsection (d) appointments also makes logical sense. Congress's decision not to set any time limit on subsection (d) appointments is significant[96] and indicates Congress's intent to provide a means to indefinitely fill the Office until a nominee wins Senate confirmation.[97] That intent holds even if the first section 546(d) appointment ends for a reason other than Senate confirmation. Consider the consequence of Naviwala's reading of the statute in the event that a section 546(d) appointee dies, resigns, is terminated, or otherwise becomes unable to serve. Section 546(a) would

---

[94] *See Powerex*, 551 U.S. at 232.

[95] *Comey*, 810 F. Supp. 3d at 777 ("[I]f, as here, a court-appointed U.S. Attorney resigns, the district court retains the authority to make another interim appointment because the triggering event—the expiration of '*an* appointment' under subsection (c)(2)—has already occurred.").

[96] *See Giraud*, 795 F. Supp. at 580-81; *Comey*, 810 F. Supp. 3d at 776-77; *United States v. Hilario*, 218 F.3d 19, 23-24 (1st Cir. 2000) (repeatedly noting as significant "[t]he absence of any temporal limit" in section 546(d)).

[97] *Hilario*, 218 F.3d at 24 ("[R]eading the statute as written establishes a sensible framework that tends to prevent the passage of lengthy periods of time without a United States Attorney in place. Congress may well have determined that it would be worse for a district to be without a United States Attorney than for the district to have one who had not been nominated and confirmed in the ordinary course, no matter how long the interim appointment lasted.").

not be available, because there is no new vacancy and the 120-day limit of subsection (c)(2) has already run.[98] Thus, there is no way to retrigger subsection (d), and, accordingly, no way to appoint someone to the office except through the PAS process. But subsection (d) itself makes clear that Congress did not intend for the office to remain vacant. Thus, Naviwala's reading cannot be reconciled with the intent expressed in the statutory text.[99]

Naviwala's concern—raised in his reply—that section 546(d) may be used to avoid the PAS requirement for United States Attorneys is both misplaced and does not really relate to his *successive* appointments argument at all.[100] First, there is no Constitutional requirement that a United States Attorney be Presidentially nominated and Senate confirmed.[101] Although it has invoked the PAS rule for that Office,[102] Congress is also free to provide for an alternative means of appointment if it wishes to do so, and it has done so here.[103] Thus, Naviwala cannot (and does not substantially) contend that the PAS process is the *only* way to fill the office.

---

[98]  *Comey*, 810 F. Supp. 3d at 776-77; *see Giraud*, 795 F. Supp. 3d at 580-81.

[99]  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56-58 (2012).

[100]  Naviwala's additional point, that the President could "convert the judiciary into his permanent U.S. Attorney screening and hiring department," Doc. 325 at 9, is both extratextual and ignores the fact that the President's only power over the District Court's appointment is termination. *See* 28 U.S.C. § 541(c). He cannot require a District Court to act nor dictate their selection, so anyone who holds the office under section 546(d) will always be someone appointed by the District Court, which is all the statute requires. Whether the Judges' selection is agreeable to the President has absolutely nothing to do with the statutory question.

[101]  U.S. Const. art. II, § 2, cl. 2; *Naviwala*, 2026 WL 658885, at *11 n.137 ("Everyone agrees that United States Attorneys are inferior officers.")

[102]  28 U.S.C. § 541(a).

[103]  *Hilario*, 218 F.3d at 24-26; 28 U.S.C. § 546(d); *see also* 28 U.S.C. § 546(a); 5 U.S.C. § 3345.

Naviwala's real complaint is that section 546(d) can be used to fill the office using non-PAS means without any time limitation.[104] In interpreting other provisions authorizing non-PAS United States Attorney appointments, I have found that prospect concerning.[105] But all of those statutes contained specific textual time limits or permitted unlimited appointments to different Offices.[106] In contrast, section 546(d) deals explicitly with the Office of the United States Attorney and sets "no limit on the duration of this service."[107] Congress's decision on this point is unambiguous, and section 546(d) validly permits appointees to serve "lengthy tenure[s]" without "contradict[ing] the statutory scheme."[108]

Given that there is no statutory time limit on section 546(d) appointments, the prospect of successive appointments raises no novel concern. If a single appointee may lawfully serve for more than six years,[109] there is no reason that two, or four, or even ten appointees could not do the same. The only salient point is Congress's decision not to place time limits on section 546(d) appointments, and I have no

---

[104]  *See* Doc. 325 at 7-8.

[105]  *See Giraud*, 795 F. Supp. 3d at 578-82; *cf. Naviwala*, 2026 WL 658885, at *36-37.

[106]  *See* 28 U.S.C. §§ 546(a), (c)(2) (120-day time limit); 5 U.S.C. § 3346 (setting time limits); *see Naviwala*, 2026 WL 658885, *28-45 (discussing statutes that did not explicitly permit appointment of United States Attorney).

[107]  *Hilario*, 218 F.3d at 23; *id.* at 24 ("The unvarnished fact is that section 546(d) does not limit the duration of the service of court-appointed interim United States Attorneys.").

[108]  *Id.* at 24.

[109]  *Id.* at 23.

authority "to rewrite the statutory scheme by inserting a temporal limit into" that provision.[110]

Turning back to what section 546(d) *does* require, and whether those preconditions are met in this case, it is obvious that they are. First, the Office became vacant upon the resignation of Philip R. Sellinger—the last PAS United States Attorney for the District of New Jersey—on January 9, 2025.[111] Second, Attorney General Bondi exercised her subsection (a) appointment power by appointing Mr. Giordano on March 3, 2025.[112] And, third, the subsection (c)(2) 120-day limit on the subsection (a) appointment expired on July 1, 2025.[113] At that point, subsection (d) became available. And because no Senate-confirmed United States Attorney has "filled" the vacancy since then, subsection (d) remains available.[114]

Finally, Naviwala's focus on the Standing Order appointing Mr. Frazer and its timing is simply irrelevant. Naviwala's insistence that a subsection (a) appointment did not expire shortly before Mr. Frazer's appointment is beside the point, because the subsection (c)(2) deadline came on July 1st of the prior year, and nothing had changed that fact in the intervening months. That the Standing Order followed shortly after the decision disqualifying the triumvirate is an entirely

---

[110]  *Id.*
[111]  *Giraud*, 795 F. Supp. 3d at 568 & n.5.
[112]  *Id.* at 569.
[113]  *Id.* at 579-82 (holding that "the 120-day clock begins running when the Attorney General first invokes section 546(a) and makes an appointment").
[114]  *See* 28 U.S.C. § 546(d).

24

atmospheric point—the triumvirate's purported authority had nothing to do with section 546. The Standing Order clearly refers to the section 546(d) appointment authority and provides that it is effective immediately. Given that the subsection (d) power was legally available, the Court needed to do no more to invoke it.[115]

As Naviwala himself acknowledges, "the office remain[ed] vacant" at the time of the District Court's Order.[116] During that same vacancy, the Attorney General had made a subsection (a) appointment, and that appointment expired under subsection (c)(2). That is all that is required for a subsection (d) appointment.

## III.   CONCLUSION

For the foregoing reasons, I conclude that Naviwala is not entitled to dismissal of his indictment and that the Judges of the District of New Jersey lawfully appointed Robert Frazer as United States Attorney pursuant to 28 U.S.C. § 546(d). Accordingly, Naviwala's second motion to dismiss and disqualify is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge for
the Middle District of Pennsylvania
Specially Presiding

---

[115] *See id.* (stating only that "[t]he order of appointment by the court shall be filed with the clerk of the court").
[116] Doc. 323 at 11.